**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT TROOGSTAD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 21-cv-5600 |
| | ) | |
| v. | ) | |
| | ) | Hon. John Z. Lee |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT GOVERNOR JB PRITZKER'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' PETITION FOR
<u>TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION</u>**

Respectfully submitted,

KWAME RAOUL
*Attorney General*
*State of Illinois*

/s/ Hal Dworkin
HAL B. DWORKIN
MARY JOHNSTON
Assistant Attorneys General
Office of the Illinois Attorney General
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-5159
Hal.Dworkin@ilag.gov
Mary.Johnston@ilag.gov

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND .................................................................................................................3

LEGAL STANDARD...........................................................................................................7

ARGUMENT ....................................................................................................................8

    I.      Plaintiffs are not likely to succeed on the merits. ....................................................8

          A.      COVID-19 testing mandates are constitutional under *Jacobson*. ...............8

          B.      The Court should apply rational basis to Plaintiffs' substantive due process and equal protection claim. ..........................................................12

          C.      EO 2021-22 has a rational basis.................................................................15

          D.      Plaintiffs are unlikely to succeed on their First Amendment claim..........26

          E.      Plaintiffs' claim that EO 2021-22 violates Illinois law is barred by the Eleventh Amendment.........................................................................30

    II.     Plaintiffs will not suffer irreparable harm without the entry of an injunction. ............................................................................................................33

    III.    The balance of hardships favors denying Plaintiffs' request for an injunction. ............................................................................................................34

CONCLUSION...................................................................................................................37

# TABLE OF AUTHORITIES

## CASES

*Bauer v. Summey*, No. 21-cv-02952, 2021 U.S. Dist. LEXIS 203204 (D.S.C. Oct. 21, 2021) .... 15

*Beckerich v. St. Elizabeth Med. Ctr.*, Case No. 21-105, 2021 U.S. Dist. LEXIS 183757 (E.D.Ky. Sep. 24, 2021) ................................................................................................................. 12

*Benning v. Bd. of Regents*, 928 F.2d 775 (7th Cir. 1991) ............................................................ 31

*Boucher v. Sch. Bd. of Sch. Dist. Of Greenfield*, 134 F.3d 821 (7th Cir. 1998) ..................... 7, 35

*Brandon v. Holt*, 469 U.S. 464 (1985) ........................................................................................ 31

*Brokaw v. Mercer County*, 235 F.3d 1000 (7th Cir. 2000) .......................................................... 31

*Buck v. Bell*, 274 U.S. 200 (1927) .............................................................................................. 11

*Cassell v. Snyders*, 458 F. Supp. 3d 981, 999 (N.D. Ill. 2020) ............................................. 32, 33

*Cassell v. Snyders*, 990 F. 3d 539 (7th Cir. 2021) ............................................................ 2, 32, 33

*Caviezel v. Great Neck Pub. Sch.*, 739 F. Supp. 2d 273 (E.D.N.Y. 2010) ................................. 29

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) ....................... 28

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ...................................................................... 27

*Cochran v. Illinois State Toll Highway Authority*, 828 F. 3d 597 (7th Cir. 2016) ................. 13, 14

*Colon v. Schneider*, 899 F. 2d 660 (7th Cir. 1990) ...................................................................... 32

*Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019) ................................................... 26

*Conn v. Gabbert*, 526 U.S. 286 (1999) ...................................................................................... 14

*Council 31 of AFSCME. v. Quinn*, 680 F.3d 875 (7th Cir. 2012) ................................................ 31

*Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261 (1990) ................................................... 10, 11

*Dahl v. Board of Trustees of Western Michigan University*, No. 21-2945, --- F.4th ---, 2021 U.S. App. LEXIS 30153* (6th Cir. 2021) .................................................................................. 29

*Doe v. Mills*, No. 21-cv-242, 2021 U.S. Dist. LEXIS 197251 (D. Me. Oct. 13, 2021) ............... 29

*Emp't Div. v. Smith*, 494 U.S. 872 (1990) ................................................................................. 28

*Ex parte Young*, 209 U.S. 123 (1908) ........................................................................................ 31

*Ezell v. City of Chicago*, 641 F.3d 684 (7th Cir. 2011) ............................................................ 26

*GEFT Outdoors, LLC v. City of Westfield*, 922 F. 3d 357 (7th Cir. 2019) .............................. 8, 32

*Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137 (N.D. Ill. Jul. 2, 2001) ........................ 33

*Hans v. Louisiana*, 134 U.S. 1 (1890) ........................................................................................ 30

*Harris v. Univ. of Mass*, 21 cv 11244, 2021 U.S. Dist. LEXIS 162444 (D. Mass. Aug. 27, 2021) ................................................................................................................................. 15, 24

*Hencey v. United Airlines, Inc.*, 21-61702-CIV, 2021 U.S. Dist. LEXIS 154513 (S.D. Fl. Aug. 17, 2021) ............................................................................................................................... 24

*Ill. Bible Colleges Assoc. v. Anderson*, 870 F.3d 631 (7th Cir. 2017) ......................................... 28

*Illinois Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) ....................................... 8, 13

*In re Court Operations Under the Exigent Circumstances Created by the Outbreak of Coronavirus Disease 2019 (COVID-19)*, 20 mc 7, 2021 U.S. Dist. LEXIS 153199 (E.D. Va. Aug. 13, 2021) ............................................................................................................................... 25

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905) ................................................................... 2, 8, 14

*Kentucky v. Graham*, 473 U.S. 159 (1985) ................................................................................. 31

*Klaassen v. Trs. of Ind. Univ.*, 21 cv 238, -- F. Supp. 3d ---, 2021 U.S. Dist. LEXIS 133300 (N.D. Ind. Jul. 18, 2021) ...................................................................................... 9, 10, 11, 24

*Klaassen v. Trustees of Indiana University*, 7 F.4th 592 (7th Cir. 2021) ............................ passim

*Korematsu v. United States*, 323 U.S. 214 (1944) ...................................................................... 11

*Lasdon v. Hallihan*, 377 Ill. 187 (1941) ...................................................................................... 15

*Listecki v. Official Committee of Unsecured Creditors*, 780 F.3d 731 (7th Cir. 2015) ............... 28

*Marcelle v. Brown County Corp.*, 680 F. 3d 887 (7th Cir. 2012) ................................................ 14

*Massachusetts Corr. Officers Federated Union v. Baker*, No. 21-11599, 2021 U.S. Dist. LEXIS 198905 (D. Mass. Oct. 15, 2021) ........................................................................................ 15, 25

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ................................................................................ 7

*Messina v. Coll. Of New Jersey*, No. 21-17576, 2021 U.S. Dist. LEXIS 198104 (D.N.J. Oct. 14, 2021) ..................................................................................................................................... 15, 25

*Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765 (7th Cir. 2011) ............................................ 34

*Norris v. Stanley*, 21-cv-756, 2021 U.S. Dist. LEXIS 168444 (W.D. Mich. Aug. 30, 2021) 12, 15, 34

*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020)........................................................................ 7, 33

Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Human Servs., 337 F. Supp. 3d 308 (S.D.N.Y. 2018) ....................................................................................... 35

*Platinum Home Mort. Corp. v. Platinum Fin. Group, Inc*., 149 F.3d 722 (7th Cir. 1998) ......... 35

*Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) .............................. 35

*Rios v. Jones*, 63 Ill.2d 488 (1976) ........................................................................................ 15

*Rizzo v. Goode*, 423 U.S. 362 (1976)..................................................................................... 35

*Roe v. Wade*, 410 U.S. 113 (1973)......................................................................................... 10

*Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63 (2020)................................................ 14, 16, 36

*Sonnleitner v. York*, 304 F.3d 704 (7th Cir. 2002) ...................................................................... 31

*St. Joan High Sch., Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F. 3d 1003 (7th Cir. 2019) ............. 15

*St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616 (7th Cir. 2007)................ 28

*Summers v. Earth Island Inst.,* 555 U.S. 488 (2009) .................................................................. 26

*Trump v. Int'l Refugee Assistance*, 138 U.S. 353 (2017) ........................................................... 35

*Valdez v. Grisham*, 21 cv 783, 2021 U.S. Dist. LEXIS 173680 (D.N.M. Sept. 13, 2021)15, 24, 36

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002).............................. 31

*Vision Church v. Vill. of Long Grove*, 468 F.3d 975 (7th Cir. 2006) .................................... 28, 29

*Watkins v. Blinzinger*, 789 F.2d 474 (7th Cir. 1986) ................................................................. 31

*Williams v. Brown*, No. 6:21-cv-01332, 2021 U.S. Dist. LEXIS 201423 (D. Or. Oct. 19, 2021)15, 24, 25

*Winter v. Nat. Res. Def. Counc.*, 555 U.S. 7, 20 (2008) ................................................... 8, 33, 34

**REGULATIONS**

77 Ill. Adm. Code § 956.30............................................................................................ 14

77 Ill. Admin. Code § 515.685 ................................................................................. 6

77 Ill. Admin. Code. § 655.210 ............................................................................... 14

77 Ill. Admin. Code. § 655.240 ............................................................................... 14

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend XIV .......................................................................................... 13

**SCIENTIFIC STUDIES, DATA, AND INFORMATION**

Assis, Rafael, *et al.*, *Distinct SARS-CoV-2 Antibody Responses Elicited by Natural Infection and mRNA Vaccination*, BIORXIV (May 19, 2021) *available at* https://www.biorxiv.org/content/10.1101/2021.04.15.440089v4.full ......................................................................... 17

Bernal, Jamie L., *et al.*, *Effectiveness of Covid-19 Vaccines against the B.1.617.2 (Delta) Variant*, THE NEW ENGLAND JOURNAL OF MEDICINE, Vol. 385 at 585-94 (Aug. 12, 2021) *available at* https://www.nejm.org/doi/full/10.1056/nejmoa2108891 .................................... 15

Cavanaugh, Alyson, *Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021*, Morbidity and Mortality Weekly Report, CENTERS FOR DISEASE CONTROL AND PREVENTION, Issue 70(32) at 1081-83 (Aug. 13, 2021) *available at* https://www.cdc.gov/mmwr/volumes/70/wr/mm7032e1.htm ................................................. 19

CDC Monitors Health Reports Submitted After COVID-19 Vaccination to Ensure Continued Safety, CENTERS FOR DISEASE CONTROL AND PREVENTION, *available at* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/pdfs/vaccine-safety-monitoring.pdf .................................... 20

*COVID Data Tracker*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#datatracker-home ................................................... 2

*COVID-19 immunity: Natural infection compared to vaccination*, BRITISH SOCIETY FOR IMMUNOLOGY (Jun. 2021) *available at* https://www.immunology.org/coronavirus/connect-coronavirus-public-engagement-resources/covid-immunity-natural-infection-vaccine ............. 5

*COVID-19 natural immunity versus vaccination*, NEBRASKA MEDICINE (Sept. 20, 2021) *available at* https://www.nebraskamed.com/COVID/covid-19-studies-natural-immunity-versus-vaccination .................................................................................................. 5

*COVID-19 Statistics*, ILLINOIS DEPARTMENT OF PUBLIC HEALTH, https://dph.illinois.gov/covid19.html ................................................................................ 2

*Delta Variant: What We Know About the Science*, Centers for Disease Control and Prevention (Aug. 26, 2021) https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html?s_cid=11504:is%20there%20a%20vaccine%20for%20delta%20variant:sem.ga:p:RG:GM:gen:PTN:FY21 .................................................................................................. 5

v

Elizabeth Caldwell & Matt Trotter, *Covid Reinfections Have Jumped 300% Since May*, PUBLIC RADIO TULSA (Sept. 24, 2021) *available at* https://www.publicradiotulsa.org/post/covid-reinfections-have-jumped-300-may#stream/0 ........................................................................ 19

Fowlkes, Ashely, *et al.*, *Effectiveness of COVID-19 Vaccines in Preventing SARS-CoV-2 Infection Among Frontline Workers Before and During B.1.617.2 (Delta) Variant Predominance — Eight U.S. Locations, December 2020–August 2021*, NATIONAL INSTITUTES OF HEALTH, Morbidity and Morality Weekly Vol. 70 Issue 34 at 1167-69 (Aug. 27, 2021) *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8389394/ ................................................................................ 15

Iversen, Kasper, *et al.*, *Seroprevalence of SARS-Cov-2 antibodies and reduced risk of reinfection through six months: a Danish observational cohort study of 44,000 healthcare workers*, CLINICAL MICOBIOLOGY AND INFECTION (Sept. 17, 2021) *available at* https://www.clinicalmicrobiologyandinfection.com/article/S1198-743X(21)00495-X/fulltext .................................................................................................................................... 19

*Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Oct. 4, 2021) *available at* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html ......... 21

Levin-Tiefenbrun, Matan, *et al.*, *Initial report of decreased SARS-CoV-2 viral load after inoculation with the BNT162b2 vaccine*, NATURE MEDICINE Vol. 27 at 790-92 (Mar. 29, 2021) *available at* https://www.nature.com/articles/s41591-021-01316-7 ........................................ 19

Liu, Weimin, et al., *Predictors of Nonseroconversion after SARS-CoV-2 Infection*, Emerging Infectious Diseases Vol. 27 No. 9, CENTERS FOR DISEASE CONTROL AND PREVENTION (Jun. 30, 2021) *available at* https://wwwnc.cdc.gov/eid/article/27/9/21-1042_article .......................... 18

*Post-Vaccination Outcomes: Report for August 23, 2021*, NYC DEPARTMENT OF HEALTH (Aug. 23, 2021) *available at* https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-post-vaccination-data-082321.pdf .......................................... 4

*Protecting Workers: Guidance on Mitigating and Preventing the Spread of COVID-19 in the Workplace*, OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, https://www.osha.gov/coronavirus/safework ............................................................................................................. 29

*Safety of COVID-19 Vaccines*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Sept. 27, 2021) *available at* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html ................................................................................................................ 4, 20

Self, Wesley H., *Comparative Effectiveness of Moderna, Pfizer-BioNTech, and Janssen (Johnson & Johnson) Vaccines in Preventing COVID-19 Hospitalizations Among Adults Without Immunocompromising Conditions — United States, March–August 2021*, CENTERS FOR DISEASE CONTROL AND PREVENTION, Morbidity and Mortality Weekly Report Vol. 70 Issue 38 1337-43 (Sept. 24, 2021) *available at* https://www.cdc.gov/mmwr/volumes/70/wr/mm7038e1.htm ................................................... 4

Stamatatos, Leonidas, *et al.*, *mRNA vaccination boosts crossvariant neutralizing antibodies elicited by SARS-CoV-2 infection*; Science Vol. 372 Issue 6549 at 1413–18 (Jun. 25, 2021 *available at* https://www.science.org/lookup/doi/10.1126/science.abg9175 ........................... 19

Thomas, Stephen J., *Safety and Efficacy of the BNT162b2 mRNA COvid-19 Vaccine through 6 months*, The New England Journal of Medicine (Sept. 15, 2021) *available at* https://www.nejm.org/doi/full/10.1056/NEJMoa2110345 ...................................................... 21

**MEDIA**

Court Information Release, "COVID-19 Vaccine to be Required for Employees of U.S. District Court and U.S. Bankruptcy Court for Northern District of Illinois," United States District Court, Northern District of Illinois, Eastern Division, (Aug. 3, 2021), *available at* https://www.ilnd.uscourts.gov/_assets/_news/EmployeeVaccinationAttestationFINAL.pdf .. 23

Dolgin, Elie, *The tangled history of mRNA vaccines*, Nature, Issue 597 at 318-324 (Sept. 14, 2021) *available at* https://www.nature.com/articles/d41586-021-02483-w ........................ 3, 21

*FDA Approves First COVID-19 Vaccine*, Food and Drug Administration (Aug. 23, 2021) https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine 5

*FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine*, Food and Drug Administration (Dec. 11, 2020) https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19; *Moderna COVID-19 Vaccine*, Food and Drug Administration, https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine................................. 3

*Janssen COVID-19 Vaccine*, Food and Drug Administration (Sept. 29, 2021) *available at* https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine.................................................................................................... 3

*Johnson & Johnson Announces Single-Shot Janssen COVID-19 Vaccine Candidate Met Primary Endpoints in Interim Analysis of its Phase 3 ENSEMBLE Trial*, Jannssen (Jan. 29, 2021) https://www.janssen.com/johnson-johnson-announces-single-shot-janssen-covid-19-vaccine-candidate-met-primary-endpoints ............................................................................................. 3

Kolata, Gina, *Kati Kariko Helped Shield the World From the Coronavirus*, New York Times (Apr. 8, 2021) *available at* https://www.nytimes.com/2021/04/08/health/coronavirus-mrna-kariko.html ............................................................................................................................ 21

*Moderna's COVID-19 Vaccine Candidate Meets its Primary Efficacy Endpoint in the First Interim Analysis of the Phase 3 COVE Study*, Moderna (Nov. 16, 2020 6:56 AM) https://investors.modernatx.com/news-releases/news-release-details/modernas-covid-19-vaccine-candidate-meets-its-primary-efficacy............................................................................... 3

*More than 6.88 Billion Shots Given: Covid-19 Tracker*, BLOOMBERG (Oct. 25, 2021 8:33 AM CDT) *available at* https://www.bloomberg.com/graphics/covid-vaccine-tracker-global-distribution/ ........................................................................................................................ .4, 20

*Pfizer and BioNTech announce vaccine candidate against COVID-19 achieved succsess in first interim analysis from phase 3 study*, PFIZER (Nov. 9, 2020 6:45 AM) https://www.pfizer.com/news/press-release/press-release-detail/pfizer-and-biontech-announce-vaccine-candidate-against ........................................................................................................................................ 2

*Press Briefing by White House COVID-19 Public Health Officials*, THE WHITE HOUSE (May 5, 2021, 11:03 AM EST) *available at* https://www.whitehouse.gov/briefing-room/press-briefings/2021/05/05/press-briefing-by-white-house-covid-19-response-team-and-public-health-officials-34/ .................................................................................................................. 4

Scudellari, Megan, *The sprint to solve coronavirus protein structures, and disarm them with drugs*, NATURE (May 15, 2020) *available at* https://www.nature.com/articles/d41586-020-01444-z ......................................................................................................................................... 2

Sun-Times Staff, *What you need to know about getting a COVID-19 vaccine in Chicago*, CHICAGO SUN TIMES (Aug. 10, 2021 8:42 pm CDT) *available at* https://chicago.suntimes.com/essential-coronavirus-news/2021/1/25/22249435/where-vaccine-faqs-signup-register-covid-19-seniors-walgreens-jewel-walmart-marianos ............................. 4

## DECLARATIONS

Declaration of Dr. Arti Barnes .......................................................................................... 6, 17, 20

Declaration of Dr. Susan Bleasdale ..................................................................................... passim

Defendant Governor JB Pritzker, by and through his attorney Kwame Raoul, the Illinois Attorney General, submits this response in opposition to Plaintiffs' Petition for Temporary Restraining Order or Preliminary Injunction.

## INTRODUCTION

In the midst of a continuing global pandemic, Plaintiffs, employees of the City of Chicago (the "City") including firefighters, emergency medical technicians ("EMTs"), and paramedics, ask this Court to enjoin the Governor's most recent Executive Order mandating that healthcare workers either get vaccinated for COVID-19 or otherwise submit to weekly testing. Plaintiffs argue that, because front-line healthcare workers such as firefighters, EMTs, and paramedics, have generally been exposed to COVID-19 throughout the pandemic, the Executive Order is arbitrary because it does not exempt individuals who were previously infected with COVID-19 from the testing requirement. Plaintiffs also allege that some of them have requested religious exemptions from their employers but those requested exemptions were denied.

Plaintiffs' request for a temporary restraining order should be denied. Plaintiffs' delay in filing this case demonstrates that there is no emergency. The Governor issued EO 2021-22 on September 3, 2021, and it took effect on September 19, 2021, over one month before Plaintiffs filed this lawsuit. Plaintiffs' lack of urgency in filing this lawsuit shows that they are not entitled to emergency relief.

Plaintiffs' motion fails on the merits as well. Plaintiffs' primary claim is based on an overstatement of the impact of a single study from Israel that has not been peer-reviewed, ignores the risk of transmission from healthcare workers to the public, and ignores recent binding precedent from the Seventh Circuit. Studies have shown the vaccines to be safe and effective. Other studies have shown that vaccination increases immunity even where an individual

1

previously has been infected. Plaintiffs' challenge to EO 2021-22's vaccine requirement is directly at odds with the landmark case of *Jacobson v. Massachusetts*, which upheld a requirement that the *all residents* of Massachusetts be vaccinated for smallpox under threat of criminal sanction. 197 U.S. 11, 26-27 (1905). And recently the Seventh Circuit held that *Jacobson* remains good law and binding on courts within this circuit. *Klaassen v. Trustees of Indiana University,* 7 F.4th 592, 593 (7th Cir. 2021) ("*Klaassen II*").

Indeed, the Seventh Circuit's decision in *Klaassen II* means that Plaintiffs have little chance of succeeding on the merits. "Given *Jacobson*…which holds that a state may require all members of the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination against SARS-Cov-2." *Klaassen II,* 7 F. 4th at 593. Moreover, in *Klaassen II*, the Court described testing requirements as "not constitutionally problematic." *Id*. And while Plaintiffs also claim that the Governor exceeded his emergency powers under state law, the Seventh Circuit has recently held that this precise claim is barred by the Eleventh Amendment. *Cassell v. Snyders*, 990 F.3d 539 (7th Cir. 2021) ("*Cassell II*"). Plaintiffs' claim under the Illinois Health Care Right of Conscience Act is also barred by the Eleventh Amendment. Finally, Plaintiffs' claim that some of them were denied religious exemptions is not fairly traceable to the Governor because EO 2021-22 allows for religious exemptions and the determination of whether to approve individual religious exemptions rests with Plaintiffs' employers.

Plaintiffs have failed to show that they have any chance of success on the merits of their claims, or that the nebulous harm they claim outweighs the risks of having healthcare workers who consistently interact with the most vulnerable members of the public transmit the virus due to being unvaccinated and untested. The need to contain the spread of COVID-19 clearly outweighs the minor burden placed on the Plaintiffs of either getting a safe, effective, widely available and free

vaccine, or getting tested for COVID-19 on a weekly basis. Their motion for a temporary restraining order and preliminary injunction should be denied.

## BACKGROUND

The facts of the COVID-19 pandemic are well-known. In brief, between March 2020 and October 2021, the COVID-19 pandemic has resulted in more than 45,316,210 infections and 733,834 deaths nationally[1] and 1,680,908 infections and 25,590 deaths in Illinois.[2] On January 10, 2020, the genome sequence of SARS-Cov-2, the virus that causes COVID-19 infections, was posted online.[3] Pharmaceutical companies subsequently started developing vaccines.

On November 9, 2020, Pfizer announced the end of trials of a vaccine they developed with BioNTech, which showed that its vaccine was 90% effective in preventing COVID-19.[4] On November 16, 2020, Moderna announced the end of trials for its vaccine, which showed that it was 94.5% effective of preventing COVID-19.[5] Both the Pfizer and Moderna vaccines were developed utilizing messenger RNA ("mRNA"),[6] which is an emerging method of vaccination

---

[1]   *COVID Data Tracker*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited Oct. 25, 2021).

[2]   *COVID-19 Statistics*, ILLINOIS DEPARTMENT OF PUBLIC HEALTH, https://dph.illinois.gov/ covid19.html (last visited Oct. 25, 2021).

[3]   Scudellari, Megan, *The sprint to solve coronavirus protein structures, and disarm them with drugs*, NATURE (May 15, 2020) *available at* https://www.nature.com/articles/d41586-020-01444-z (last visited Oct. 24, 2021).

[4]   *Pfizer and BioNTech announce vaccine candidate against COVID-19 achieved success in first interim analysis from phase 3 study*, PFIZER (Nov. 9, 2020 6:45 AM) https://www.pfizer.com/ news/press-release/press-release-detail/pfizer-and-biontech-announce-vaccine-candidate-against (last visited Oct. 24, 2021).

[5]   *Moderna's COVID-19 Vaccine Candidate Meets its Primary Efficacy Endpoint in the First Interim Analysis of the Phase 3 COVE Study*, MODERNA (Nov. 16, 2020 6:56 AM) https://investors.modernatx.com/news-releases/news-release-details/modernas-covid-19-vaccine-candidate-meets-its-primary-efficacy (last visited Oct. 24, 2021).

[6]   *See supra* notes 4 and 5.

3

coming after more thirty years of research and development into mRNA technology.[7] On January 29, 2021, Johnson & Johnson announced the end of trials for its vaccine, which was developed utilizing a more traditional viral vector method of vaccine technology, and showed that it was 66% effective in preventing COVID-19.[8]

On December 11 and 18, 2020, the Pfizer and Moderna vaccines were granted emergency use authorization by the Food and Drug Administration ("FDA"), respectively.[9] On February 27, 2021, the Johnson & Johnson vaccine was granted emergency use authorization by the FDA.[10] The United States then engaged in a mass-vaccination effort. Vaccines are free of charge and are widely available at locations such as vaccine clinics, pharmacies, and doctors' offices.[11]

The vaccines have been proven to be safe and effective. To date, more than 6.88 billion injections have been administered worldwide, including more than 414 million doses administered

---

[7]   Dolgin, Elie, *The tangled history of mRNA vaccines*, NATURE, Issue 597 at 318-324 (Sept. 14, 2021) *available at* https://www.nature.com/articles/d41586-021-02483-w (last visited Oct. 24, 2021).

[8]   *Johnson & Johnson Announces Single-Shot Janssen COVID-19 Vaccine Candidate Met Primary Endpoints in Interim Analysis of its Phase 3 ENSEMBLE Trial*, JANSSEN (Jan. 29, 2021) https://www.janssen.com/johnson-johnson-announces-single-shot-janssen-covid-19-vaccine-candidate-met-primary-endpoints (last visited Oct. 24, 2021).

[9]   *FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine*, FOOD AND DRUG ADMINISTRATION (Dec. 11, 2020) https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19 (last visited Oct. 24, 2021); *Moderna COVID-19 Vaccine*, FOOD AND DRUG ADMINISTRATION, https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine (last visited Oct. 24, 2021).

[10]  *Janssen COVID-19 Vaccine*, FOOD AND DRUG ADMINISTRATION (Sept. 29, 2021) *available at* https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine (last visited Oct. 24, 2021).

[11]  Sun-Times Staff, *What you need to know about getting a COVID-19 vaccine in Chicago*, CHICAGO SUN TIMES (Aug. 10, 2021 8:42 pm CDT) *available at* https://chicago.suntimes.com/essential-coronavirus-news/2021/1/25/22249435/where-vaccine-faqs-signup-register-covid-19-seniors-walgreens-jewel-walmart-marianos (last visited Oct. 24, 2021).

in the United States.[12] The Centers for Disease Control ("CDC") has advised that the vaccines are safe and effective, noting that while millions of Americans have received the vaccine, serious safety problems are rare.[13] In addition to preventing infection overall, vaccines also significantly decrease the chance that a vaccinated individual who does become infected will need to be hospitalized due to COVID-19.[14]

Consequently, numerous agencies and organizations have recommended that all individuals get vaccinated, even if they have previously been infected. For example, in May 2021, during a White House briefing, Dr. Anthony Fauci gave a presentation explaining why immunity from the vaccine is superior to immunity from previous infection. In it, he advised that two doses of an mRNA vaccine resulted in an antibody response that was ten times more than when a person recovered from a natural infection.[15] He concluded his presentation by stating that vaccines "are better than the traditional response you get from natural infection."[16] The British Society for Immunology partnered with the UK Coronavirus Immunology Consortium to create an infographic

---

[12] *More than 6.88 Billion Shots Given: Covid-19 Tracker*, BLOOMBERG (Oct. 25, 2021 8:33 AM CDT) *available at* https://www.bloomberg.com/graphics/covid-vaccine-tracker-global-distribution/ (last visited Oct. 25, 2021).

[13] *Safety of COVID-19 Vaccines*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Oct. 18, 2021) *available at* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html (last visited Oct. 24, 2021).

[14] Self, Wesley H., *Comparative Effectiveness of Moderna, Pfizer-BioNTech, and Janssen (Johnson & Johnson) Vaccines in Preventing COVID-19 Hospitalizations Among Adults Without Immunocompromising Conditions — United States, March–August 2021*, CENTERS FOR DISEASE CONTROL AND PREVENTION, Morbidity and Mortality Weekly Report Vol. 70 Issue 38 1337-43 (Sept. 24, 2021) *available at* https://www.cdc.gov/mmwr/volumes/70/wr/mm7038e1.htm (last visited Oct. 24, 2021).

[15] *Press Briefing by White House COVID-19 Public Health Officials*, THE WHITE HOUSE (May 5, 2021, 11:03 AM EST) *available at* https://www.whitehouse.gov/briefing-room/press-briefings/2021/05/05/press-briefing-by-white-house-covid-19-response-team-and-public-health-officials-34/ (last visited Oct. 24, 2021).

[16] *Id.*

comparing immunity from vaccines and previous infection, demonstrating why immunity from vaccination is superior to immunity from previous infection.[17] The University of Nebraska Medical Center has advised that more than one-third of COVID-19 infections result in zero protective antibodies, that immunity from previous infection fades faster than vaccine immunity, and that immunity from previous infection alone is less than half as effective as natural immunity plus vaccination.[18] On August 23, 2021, the FDA granted the Pfizer vaccines full use authorization.[19]

Recently, however, the Delta variant of COVID-19 has become the dominant strain of the virus in Illinois and the United States in general, currently accounting for roughly 90% of COVID-19 cases. (Declaration of Dr. Susan Bleasdale, attached hereto as Exhibit A at ¶ 28).[20] This variant is more aggressive, more transmissible, and may cause more severe disease than previous strains of the virus. (*Id.* at ¶ 25). Increased COVID-19 cases due to the Delta variant have resulted in increased numbers of hospitalizations, and decreased availability of ICU beds.[21] *See Streight v.*

---

[17] *COVID-19 immunity: Natural infection compared to vaccination*, BRITISH SOCIETY FOR IMMUNOLOGY (Jun. 2021) *available at* https://www.immunology.org/coronavirus/connect-coronavirus-public-engagement-resources/covid-immunity-natural-infection-vaccine (last visited Oct. 24, 2021).

[18] *COVID-19 natural immunity versus vaccination*, NEBRASKA MEDICINE (Sept. 20, 2021) *available at* https://www.nebraskamed.com/COVID/covid-19-studies-natural-immunity-versus-vaccination (last visited Oct. 24, 2021).

[19] *FDA Approves First COVID-19 Vaccine*, FOOD AND DRUG ADMINISTRATION (Aug. 23, 2021) https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine (last visited Oct. 24, 2021).

[20] Counsel for Plaintiffs in this matter previously filed a case in this District with nearly identical claims raising similar issues. *See Halgren, et al., v. City of Naperville*, 21 cv 5039. The Governor previously responded to the *Halgren* plaintiffs' motion for preliminary injunction in that case and therein attached declarations by Dr. Suzanne Bleasdale and Dr. Arti Barnes. Because the issues presented in this matter are extremely similar to the issues in *Halgren*, the Governor attaches those declarations to this response for the Court's consideration.

[21] *Delta Variant: What We Know About the Science*, Centers for Disease Control and Prevention (Aug. 26, 2021) https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html?s_cid=11504:is%20there%20a%20vaccine%20for%20delta%20variant:sem.ga:p:RG:GM:gen:PTN:FY21 (last visited Oct. 24, 2021).

*Pritzker*, No. 21-cv-50339, 2021 U.S. Dist. LEXIS 180894 at *13 (N.D. Ill., Sept. 22, 2021). The high transmissibility of the Delta variant is likely part of the reason that with the exception of Scott County every county in Illinois is classified as a "high or substantial transmission" area under the CDC's criteria. (Declaration of Dr. Arti Barnes, attached hereto as Exhibit B, at ¶ 21).[22]

On September 3, 2021, the Governor issued Executive Order 2021-22 ("EO 2021-22"). EO 2021-22 mandates that healthcare workers obtain either the first dose of a two-dose vaccine or one dose of a single-dose vaccine no later than September 19, 2021. (ECF No. 4 at 19). EO 2021-22 provides that those who do not comply with the vaccination mandate be subject to weekly testing.[23] (ECF No. 4 at 20). Plaintiffs filed this lawsuit and seek emergency relief, despite filing this matter on October 21, 2021, approximately seven weeks after EO 2021-22 was issued and a full month *after* the vaccine requirement took effect.

**LEGAL STANDARD**

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original); *see also Boucher v. Sch. Bd. of Sch. Dist. Of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998). A preliminary injunction is "never awarded as of right" and "never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020).

A plaintiff "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

[22] *See also* COVID-19 Community Transmission Data, ILLINOIS DEPARTMENT OF PUBLIC HEALTH, https://dph.illinois.gov/covid19/data/covid-19-community-transmission-data.html (last visited Oct. 24, 2021).

[23] The Illinois Department of Public Health ("IDPH") has issued an emergency rule requiring bi-weekly testing in areas with high transmission. 77 Ill. Admin. Code § 515.685(d).

balance of equities tips in his favor, and that an injunction is in the public interest." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (quoting *Winter v. Nat. Res. Def. Counc.*, 555 U.S. 7, 20 (2008)). If the plaintiff satisfies all these requirements, then the court must weigh the harm that the plaintiff will incur without an injunction against the harm to the defendant if one is entered, and "consider whether an injunction is in the public interest." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotations omitted). This analysis is done on a "sliding scale"—if the plaintiffs are less likely to win on the merits, the balance of harms must weigh more heavily in their favor, and vice versa. *Id.* The court should pay "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

When ruling on a preliminary injunction, courts may take judicial notice of facts that are not subject to reasonable dispute because they are readily known or can be readily determined from sources with unquestioned accuracy. *Streight*, 2021 U.S. Dist. LEXIS 180894 at *8 (internal quotations omitted). "Courts may take judicial notice of official publications on government websites." *Id.*

## ARGUMENT

**I.** **Plaintiffs are not likely to succeed on the merits.**

To show a likelihood of success on the merits, Plaintiffs must make a "strong" showing that they will succeed on the merits, which means that Plaintiffs must demonstrate how they propose to prove the key elements of the case. *Illinois Republican Party*, 973 F. 3d at 760, 762 (7th Cir. 2020). As demonstrated below, Plaintiffs cannot meet this burden.

### A. **COVID-19 testing mandates are constitutional under *Jacobson*.**

The proper standard for analyzing the constitutionality of governmental action in a public health crisis derives from *Jacobson*, 197 U.S. 11. In *Jacobson*, the Supreme Court upheld a

Massachusetts mandate requiring all residents of the state to be vaccinated against smallpox. *Id.* at 27. The mandate was enforced by a criminal penalty of possible fine or imprisonment. *Id.* at 26. As the Supreme Court held, "the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand." *Id.* at 29.

COVID-19 is precisely the kind of public health crisis contemplated in *Jacobson*. *See Klaassen II*, 7 F.4th at 593. As such, in this instance, the actions taken by the Governor to prevent the transmission of COVID-19 should be upheld so long as there is (1) a "real or substantial relation" to public health and safety, and (2) the action does not constitute "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Jacobson*, 197 U.S. at 31. Absent arbitrary or unreasonable action that far exceeds "what [is] reasonably required for the safety of the public," courts will defer to executive exercises of authority in extraordinary times. *Id*. at 28. Plaintiffs' position that mandatory COVID-19 testing on a weekly basis for unvaccinated healthcare workers violates their Fourteenth Amendment rights clearly fails under the *Jacobson* standard.

The developments in case law since *Jacobson* were discussed at length in the recent *Klaassen* decisions where the Northern District of Indiana denied eight students' request for a preliminary injunction preventing Indiana University from enforcing a vaccine mandate. *Klaassen v. Trs. of Ind. Univ.*, 21 cv 238, -- F. Supp. 3d ---, 2021 U.S. Dist. LEXIS 133300 at *53 (N.D. Ind. Jul. 18, 2021) (*"Klaassen I"*). The district court's opinion was affirmed by the Seventh Circuit in *Klaassen II*. While the *Klaassen* opinions dealt with a vaccination requirement rather than a mandatory testing requirement, they are instructive. Ultimately, the cases relied on *Jacobson* and its holding that "a state may require all members of the public to be vaccinated against smallpox,"

and the Seventh Circuit found that there could not be a constitutional problem with a COVID-19 vaccination required by the university. *Klaassen II*, 7 F.4d at 593.

Plaintiffs ignore this binding Seventh Circuit precedent from *Klaassen II* that *Jacobson* has not been overruled and that *Jacobson* does apply to COVID-19 vaccinations and testing mandates. Instead, Plaintiffs assert—without compelling, let alone binding support—that *Jacobson* is no longer valid. (*See* ECF No. 4 at 6-10). In addition to ignoring the controlling law, Plaintiffs rely on cases that are not only inapposite, but in no way challenge the validity of *Jacobson*. Plaintiffs cite to *Roe v. Wade*, 410 U.S. 113 (1973), and *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261 (1990), to support their position that mandatory testing violates their rights to bodily autonomy. (ECF No. 4 at 5-7). However, *Roe* addressed abortion and *Cruzan* dealt with the right to refuse individual, life-sustaining medical treatment. *See generally Roe*, 410 U.S. 113; *Cruzan*, 497 U.S. 261. Neither of these issues are comparable to vaccinations or testing. Rights to individual bodily autonomy, such as those in *Roe* and *Cruzan,* do not impact the public health. In contrast, COVID-19 is a highly contagious disease that, without appropriate safety measures, will continue to spread rapidly throughout the population. (*See* Bleasdale Declaration at ¶¶ 17, 25, 56-57, 59). "Vaccines address a collective enemy, not just a an individual one," and therefore "[a] vaccine is implemented as a matter of public health, and historically hasn't been constitutionally deterred from state mandate." *Klaassen I*, 2021 U.S. Dist. LEXIS 133300 at *62.

Moreover, both *Roe* and *Cruzan* cite *Jacobson* favorably. In *Roe*, the Supreme Court noted that the right to privacy being upheld in that case cannot be said to be absolute. *Roe*, 410 U.S. at 177. Said the Court, "it is not clear to us that the claim asserted by some *amici* that one has an unlimited right to do with one's body as one pleases bears a close relationship to the right of privacy previously articulated in the Court's decisions. The Court has refused to recognize an

unlimited right of this kind in the past." *Id.* (citing *Jacobson*, 197 U.S. 11). Meanwhile in *Cruzan*, the Court noted that "the right to be free of unwanted medical intervention, like other constitutionally protected interests, may not be absolute," and cited *Jacobson* as the example case where this limitation on the constitutional right exists. *Cruzan*, 497 U.S. at 263 n. 12. Thus, even in the cases Plaintiffs cite to demonstrate the Supreme Court's evolving understanding of bodily autonomy, the Court still recognized the enduring validity of *Jacobson*.

Plaintiffs also baselessly attack *Jacobson* by citing to *Buck v. Bell*, 274 U.S. 200 (1927), and *Korematsu v. United States*, 323 U.S. 214 (1944), arguing that *Jacobson* should be regarded as a relic of different time that does not conform with modern conceptions of bodily autonomy. Plaintiffs' reliance on opinions that would not be issued today and have no similarity to this case is a blatant attempt to confuse the issue and cast doubt on *Jacobson*. The district court in *Klaassen I* addressed *Buck* specifically and clarified that "[t]his case isn't *Buck*; and [an] over-extension of *Jacobson* merely counsels once more that the Constitution cannot be cut loose even now, in a pandemic's seeming twilight." *Klaassen*, 2021 U.S. Dist. LEXIS 133300 at *53. *Klaassen I* discussed the developments in constitutional jurisprudence since *Jacobson* and explained that while *Jacobson* predates the current levels of constitutional scrutiny, it, in effect, endorsed "rational basis review of a government's mandate during a health crisis." *Klaassen I* at *54. *Klaassen I* further clarified that "[n]o Supreme Court opinion has overruled or abrogated *Jacobson*." *Id.*

In light of the Seventh Circuit's pronouncement that a vaccination mandate—which is more intrusive than a testing mandate—is constitutionally acceptable under *Jacobson*, Plaintiffs cannot establish that the testing regime they complain of is unconstitutional. Plaintiffs have not shown that weekly (or even twice-weekly) COVID-19 testing amounts to a palpable violation of

11

their fundamental rights, and, considering *Klaassen*, they cannot do so. *See Klaassen II*, 7 F.4th at 593 (noting that plaintiffs having to wear masks and be tested were "requirements that are not constitutionally problematic."). In the weeks since *Klaassen II*, its holding has been applied to deny requests for injunctions regarding vaccine or testing mandates across the country. *See Streight*, 2021 U.S. Dist. LEXIS 180894 at **11-12 (denying preliminary injunction regarding college's testing mandate because "[w]hen one undertakes a job or enrolls in a college or university, he '*voluntarily* trades away some of his privacy for other goods'—here, access to on-campus resources."); *Beckerich v. St. Elizabeth Med. Ctr.*, No. 21-105, 2021 U.S. Dist. LEXIS 183757, *26 (E.D. Ky. Sep. 24, 2021) (denying motion for temporary restraining order to prevent employer from enforcing a vaccine mandate); *Norris v. Stanley*, No. 21-cv-756, 2021 U.S. Dist. LEXIS 168444, *4-5 (W.D. Mich. Aug. 30, 2021) (holding that vaccine mandates at state university are constitutional under *Jacobson*). For these reasons, the challenged COVID-19 testing is reasonable under *Jacobson*, and Plaintiffs' claim should be dismissed.

**B. The Court should apply rational basis to Plaintiffs' substantive due process and equal protection claim.**

Count I of the Complaint alleges violations of substantive due process, while the second Count II[24] of the Complaint alleges that EO 2021-22 violates the equal protection clause because it treats employees who are willing to disclose their vaccination status arbitrarily and singles them out for disparate treatment. (ECF No. 1 at ¶ 200). Although Plaintiffs' Motion does not explicitly raise this equal protection claim, it does allude to it by arguing that the mandate "discriminates arbitrarily against those with only natural immunity in favor of those with only vaccine immunity." (ECF No. 4 at 7).

---

[24] The Complaint lists two counts titled "Count II." (ECF No. 1 at 29). The second Count II is the claim under the equal protection clause.

At the outset, Plaintiffs' equal protection claim is not redressable. The Seventh Circuit recognized this issue in *Illinois Republican Party*, where the plaintiffs challenged the Governor's limit of 50-person gatherings last summer that made an exemption for gatherings for the free exercise of religion. 973 F. 3d at 771. The premise of the plaintiffs' lawsuit was that if the court found them to be exempt from the 50-person cap on gatherings, they would be able to gather in whatever numbers they wished. *Id.* "But when disparate treatment of two groups occurs, the state is free to erase that discrepancy in any way that it wishes . . . . In other words, the state is free to 'equalize up' or to 'equalize down.'" *Id.* Thus, if there was a problem with the exemption for religious gatherings, the State would be entitled to keep the 50-person limit but remove the exemption, leaving the plaintiffs no better off. *Id.* Likewise, even if the requirement that unvaccinated individuals be subjected to weekly (or twice-weekly) testing were found to be unconstitutional under the equal protection clause, the Governor could simply require that all healthcare workers submit to weekly testing, regardless of vaccination status, meaning Plaintiffs would *still* need to submit to weekly testing.

To the extent that the Court engages in an equal protection analysis, rational basis scrutiny applies. The equal protection clause of the Fourteenth Amendment provides that states shall not deny persons within their jurisdictions "equal protection of the laws." U.S. Const. amend XIV. The equal protection clause generally protects people who are treated differently because of membership in a suspect class or who have been denied a fundamental right. *Cochran v. Illinois State Toll Highway Authority*, 828 F. 3d 597, 601 (7th Cir. 2016). It is well-established that unless a classification interferes with a fundamental right or is based upon inherently suspect distinction such as race, religion, or alienage, courts "presume the constitutionality of the statutory

discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Marcelle v. Brown County Corp.*, 680 F. 3d 887, 911 (7th Cir. 2012).

There is no fundamental right at issue in this case. As discussed, there is no fundamental right to refuse to be vaccinated. *See Jacobson*, 197 U.S. at 24-25. Moreover, as discussed, the requirement that unvaccinated individuals submit to testing is "not constitutionally problematic." *Klaassen II*, 7 F.4th at 593. And the classification at issue here is not based on any suspect classification; rather, it is based on the choices of individuals. *Cf. Cochran*, 828 F.3d at 601 ("Use or non-use of a transponder does not involve a protected status or a fundamental right. Thus, defendants need only show that the differing treatment was rationally related to a legitimate state interest.").

As Justice Gorsuch recognized in his concurrence in *Roman Catholic Diocese v. Cuomo*, although *Jacobson* pre-dated the modern tiers of scrutiny, the *Jacobson* court essentially applied rational basis. 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring). In Justice Gorsuch's view, this was appropriate because the "imposition on Mr. Jacobson's claimed right to bodily integrity…was avoidable and relatively modest," given he had the option to accept the vaccine, pay the fine, or identify the basis for an exemption. *Id.* at 71. Justice Gorsuch noted that the mandate in *Jacobson*, "easily survived rational basis review, and might even have survived strict scrutiny, given the opt-outs available to certain objectors." *Id.* Likewise, Plaintiffs in this case have the option to take the vaccine, claim an exemption and get tested, or find different employment. And while Plaintiffs have made a generalized claim about the ability to earn a living being a fundamental right (ECF No. 4 at 5), it is well-recognized that the right to choose one's field of employment is "a right which is nevertheless subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 292 (1999). And the courts have long recognized that the State has broad authority to regulate

14

the health care professions because "services customarily rendered by those engaged in such professions are so closely related to the public health, welfare and general good of the people, that regulation is deemed necessary to protect such interests." *Lasdon v. Hallihan*, 377 Ill. 187, 193 (1941); *see also Rios v. Jones*, 63 Ill.2d 488, 497 (1976) ("The States have a compelling interest in the practice of professions within their boundaries, and as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.").

Recently, courts across the country have followed the Seventh Circuit in *Klaassen II* and applied rational basis in rejecting challenges to vaccine mandates. These have included the District of South Carolina (*Bauer v. Summey*, No. 21-cv-02952, 2021 U.S. Dist. LEXIS 203204 at *33 (D.S.C. Oct. 21, 2021)), the District of Oregon (*Williams v. Brown*, No. 6:21-cv-01332, 2021 U.S. Dist. LEXIS 201423 at *15 (D. Or. Oct. 19, 2021)), the District of Massachusetts (*Massachusetts Corr. Officers Federated Union v. Baker*, No. 21-11599, 2021 U.S. Dist. LEXIS 198905 at *16-22 (D. Mass. Oct. 15, 2021); *Harris v. Univ. of Mass*, No. 21-cv-11244, 2021 U.S. Dist. LEXIS 162444 at * 17-18 (D. Mass. Aug. 27, 2021)), the District of New Jersey (*Messina v. Coll. Of New Jersey*, No. 21-17576, 2021 U.S. Dist. LEXIS 198104 at *18-29 (D.N.J. Oct. 14, 2021)), the District of New Mexico (*Valdez v. Grisham*, No. 21-cv-783, 2021 U.S. Dist. LEXIS 173680 at *28 (D.N.M. Sept. 13, 2021)), and the Western District of Michigan (*Norris*, 2021 U.S. Dist. LEXIS 168444 at *5). The proper level of scrutiny to apply to EO 2021-22 is rational basis.

**C. EO 2021-22 has a rational basis.**

Under rational basis review, courts invalidate governmental actions only if there is no rational relationship between the action and "some legitimate government purpose." *St. Joan High Sch., Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F. 3d 1003, 1010 (7th Cir. 2019). Government actions are generally valid as long as the rational basis is plausible. *See id.* "Rational-basis review tolerates

overinclusive classifications, underinclusive ones, and other imperfect means-ends fits." *Id.* The standard imputes a "strong presumption of validity" on the government action. *Id.*

Here, the government interest is the protection of public health in the face of the COVID-19 pandemic. As Plaintiffs recognize, there is no doubt that this is a legitimate government interest. (ECF No. 4 at 11). *See also Roman Catholic Diocese*, 141 S. Ct. at 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest…."). Instead, Plaintiffs argue that there is not a rational relationship between the promotion of public health and the vaccination of healthcare workers. Plaintiffs are wrong.

Vaccine mandates are not new. As discussed, it was a mandate that Massachusetts citizens get the smallpox vaccine that was upheld in *Jacobson*. Children are required to be vaccinated against numerous diseases such as polio, measles, rubella, and mumps to be allowed to attend day-care and public school. 77 Ill. Adm. Code §§ 655.210 & 655.240. Illinois also requires healthcare workers to obtain vaccination against influenza. 77 Ill. Adm. Code § 956.30.

EO 2021-22 lists several reasons for its implementation on its face. These reasons include: 1) a recent rise in cases both in Illinois and nationally with the emergence of the Delta variant; 2) a recent rise in occupancy in hospitals and intensive care units both in Illinois and nationally with the emergence of the Delta variant; 3) the fact that the Delta variant is more aggressive, severe, and transmissible than other variants; 4) the fact that heath care workers, particularly those involved in direct patient care, face an increased risk of COVID-19 exposure; and 4) the evidence that requiring vaccinations or regular testing can help prevent the spread of outbreaks, and reduce transmission to vulnerable individuals who may be at risk of severe disease. (ECF No. 4 at 18-19).

As discussed above, the COVID-19 vaccines themselves have been proven to be safe and effective. *See supra* 4-5. And while vaccines are slightly less effective against the Delta variant of

16

COVID-19, they still remain highly effective against it (88% effective against the Delta variant compared to 93.7% effective against the Alpha variant).[25] Indeed, they have specifically been found to be effective at preventing infections of front-line workers both before and during the emergence of the Delta variant.[26]

Nonetheless, Plaintiffs make three arguments as to why EO 2021-22's vaccine requirement for healthcare workers lacks a rational basis. *First*, they argue that "natural immunity," *i.e.*, immunity conferred from previous infection, is superior to the immunity conferred from vaccines. Plaintiffs primarily base this argument on a single study that has not been peer reviewed. *Second*, they argue that they should not be forced to take risks with their health because of supposed risks with the vaccines. Plaintiffs base this argument on anecdotal news reports, not studies or research. And *third*, they argue they should not be forced to take "extremely novel" vaccines, ignoring the fact that mRNA vaccines have been in development for decades and that, in any event, the Johnson & Johnson vaccine is not an mRNA vaccine. As explained below, all three of Plaintiffs' arguments as to why the vaccine mandate for healthcare workers lack a rational basis fail.

### 1. Plaintiffs cite two studies, one that did not study vaccine immunity, and one that is not peer reviewed and has flawed methodology.

Plaintiffs allege that the vaccine mandate and the requirement that unvaccinated individuals submit to weekly testing are arbitrary because, Plaintiffs claim, prior infection without vaccination provides greater protection against COVID-19 than vaccination without prior infection. (ECF No.

---

[25]    Bernal, Jamie L., *et al.*, *Effectiveness of Covid-19 Vaccines against the B.1.617.2 (Delta) Variant*, THE NEW ENGLAND JOURNAL OF MEDICINE, Vol. 385 at 585-94 (Aug. 12, 2021) *available at* https://www.nejm.org/doi/full/10.1056/nejmoa2108891 (last visited Oct. 24, 2021).

[26]    Fowlkes, Ashely, *et al.*, *Effectiveness of COVID-19 Vaccines in Preventing SARS-CoV-2 Infection Among Frontline Workers Before and During B.1.617.2 (Delta) Variant Predominance — Eight U.S. Locations, December 2020–August 2021*, NATIONAL INSTITUTES OF HEALTH, Morbidity and Morality Weekly Vol. 70 Issue 34 at 1167-69 (Aug. 27, 2021) *available at* https://www.ncbi. nlm.nih.gov/pmc/articles/PMC8389194/ (last visited Oct. 24, 2021).

4 at 7-8). Plaintiffs frame this as if it is an undisputable fact. It is not. To support this novel proposition, Plaintiffs cite only two sources. The first is a summary of a study from the National Institute of Health from January 26, 2021, shortly after the Pfizer and Moderna vaccines received emergency use authorization and before they were widely available, indicating that prior infection results in some form of lasting immunity. (ECF No. 4 at 2 n. 2). This study did not compare vaccine immunity to immunity from prior infection. Accordingly, this study does little to support Plaintiffs' claim that immunity from prior infection is superior to immunity from vaccination.

Plaintiffs' second citation is to a non-peer reviewed, pre-print copy of a study from Israel indicating that immunity from prior infection could prevent breakthrough infections better than vaccine-based immunity. Because this study is not peer reviewed, it should be given little to no weight. The goal of pre-print posting is to gain feedback prior to submission to a peer-reviewed journal. (Bleasdale Declaration at ¶ 46). Pre-print studies are often retracted or replaced. (*Id.* at ¶ 47). To date there have been 143 retractions to literature regarding COVID-19. (*Id.* at ¶ 48).

But to the extent that the Court considers non-peer reviewed studies, the finding of this particular study is hardly conclusive. At least one non-peer reviewed study indicated the opposite. That study, from April 2021, showed that two doses of either the Pfizer or Moderna vaccines resulted in a much more robust antibody response compared with those who have immunity from prior infection.[27]

Moreover, the Israel study Plaintiffs rely on has several notable flaws in its methodology. It is an observational retrospective cohort study, meaning that it relied on self-reporting of those in the study. (Bleasdale Declaration at ¶ 50). It did not utilize a randomized control trial. (*Id.*). As

---

[27] Assis, Rafael, *et al*., *Distinct SARS-CoV-2 Antibody Responses Elicited by Natural Infection and mRNA Vaccination*, BIORXIV (May 19, 2021) *available at* https://www.biorxiv.org/content/10.1101/2021.04.15.440089v4.full (last visited Oct. 24, 2021).

the study points out, discrepancies between the groups studied may be explained by individuals' personal choices as to whether to get tested. (*Id.*). This lack of control regarding testing means that the study may have missed asymptomatic or mild cases where the infected individual did not get tested for COVID-19. (*Id.*). The study also did not control for individual social behaviors such as social distancing and masking. (*Id.*). Observational retrospective cohort studies are not as robust and reliable as a randomized control trial where the above factors are controlled for. (*Id.*).

Dr. Arti Barnes, the Medical Director and Chief Medical Officer of the Illinois Department of Public Health, reviewed the Israel study and noted several specific problems with the methodology as well. The study looked at three groups of individuals, or Models, and compared outcomes. (Barnes Declaration at ¶ 32). Model-1 compared individuals who had been previously infected with individuals who had been previously vaccinated within the same two-month period. (*Id.*). This was the most robust Model, but because it relied on self-reporting, it did not control for when individuals were tested and cases could have gone undetected if the participant did not seek testing or treatment. (*Id.* at ¶ 33). The data from the Model-1 group shows that vaccination protects against hospitalizations. (*Id.*) Moreover, according to Dr. Barnes, the Israel study's odd-ratio calculations appear to be flawed and she estimates that unvaccinated group actually had 1.5 times higher odds of hospitalization. (*Id.*) Model-2, which compared those who had been previously infected with those who were previously vaccinated at any time prior, was flawed because it failed to take into account how the timing of immunity affects re-infection and therefore should be disregarded. (*Id.* at ¶¶ 32, 35).

Additionally, this study looked only at individuals whose first event, be it vaccination or infection, occurred in January or February of 2021 with a follow-up period of June 1, 2021 to August 14, 2021. (Bleasdale Declaration at ¶ 52). Accordingly, this study did not measure

immunity levels for periods of greater than eight months following the first event. (*Id.*). It is possible that immunity levels of previously infected individuals may drop off more than eight months after infection. (*Id.*).

There are other reasons why vaccination is superior to immunity from prior infection. The degree of immunity conferred appears to depend on how severe the infection was in the first place. Those who had mild cases appear to be less immune than those who had severe cases. One study from the CDC showed that some persons who tested positive for COVID-19 but had a low viral load were less likely to mount a systemic immune response.[28] Indeed, one of the study's authors, Dr. Weimin Lui, cautioned, "RT-PCR positive persons who experienced COVID-19 symptoms might be less inclined to seek vaccination, believing they are protected, but our results caution against this assumption."[29] A different study from Denmark indicated that individuals whose immunity due to previous infection wore off (referred to as seroreversion) were often older or reported milder illness when they were infected.[30] One study from March 2021 showed that individuals who were vaccinated had a significantly reduced viral load of the virus when infected as little as twelve days after the first dose of a two-dose vaccine.[31] Meanwhile, data from Oklahoma

---

[28]   Liu, Weimin, et al., *Predictors of Nonseroconversion after SARS-CoV-2 Infection*, Emerging Infectious Diseases Vol. 27 No. 9, CENTERS FOR DISEASE CONTROL AND PREVENTION (Jun. 30, 2021) *available at* https://wwwnc.cdc.gov/eid/article/27/9/21-1042_article (last visited Oct. 24, 2021).

[29]   *Id.*

[30]   Iversen, Kasper, *et al.*, *Seroprevalence of SARS-Cov-2 antibodies and reduced risk of reinfection through six months: a Danish observational cohort study of 44,000 healthcare workers*, CLINICAL MICOBIOLOGY AND INFECTION (Sept. 17, 2021) *available at* https://www.clinicalmicrobiologyandinfection.com/article/S1198-743X(21)00495-X/fulltext (last visited Oct. 24, 2021).

[31]   Levin-Tiefenbrun, Matan, *et al.*, *Initial report of decreased SARS-CoV-2 viral load after inoculation with the BNT162b2 vaccine*, NATURE MEDICINE Vol. 27 at 790-92 (Mar. 29, 2021) *available at* https://www.nature.com/articles/s41591-021-01316-7 (last visited Oct. 24, 2021).

indicates that reinfection rates per 100,000 people who were previously infected is outpacing fully-vaccinated breakthrough cases per 100,000 people by a rate of about 2:1.[32]

Moreover, even among those who have immunity from prior infection, adding vaccination makes it less likely they will become re-infected. A recent CDC study from August 2021 showed that among those who previously had COVID-19, those who were unvaccinated were more than twice as likely to become reinfected as those who subsequently got the vaccine.[33] A different study reported similar results, showing that those who were previously infected and then vaccinated had increased protection against different variants of the virus.[34] The Israel study that Plaintiffs rely on also supports this conclusion. Model-3 of the study, which compared those who were vaccinated after being infected (otherwise known as "hybrid immunity") with those who had only a prior infection, showed a lower rate of hospitalizations in the vaccinated group, suggesting that hybrid immunity is more effective than immunity from prior infection alone. (Barnes Declaration at ¶¶ 32, 36).

**2. Plaintiffs' allegations about the risks of the vaccines are based on anecdotes, not science. The vaccines have been proven to be safe.**

Plaintiffs also argue that the EO 2021-22 lacks a rational basis because they should not be compelled to take a vaccine that has had some adverse reactions. Plaintiffs cite a few anecdotal

---

[32] Elizabeth Caldwell & Matt Trotter, *Covid Reinfections Have Jumped 300% Since May*, PUBLIC RADIO TULSA (Sept. 24, 2021) *available at* https://www.publicradiotulsa.org/post/covid-reinfections-have-jumped-300-may#stream/0 (last visited Oct. 24, 2021) (citing data from the Oklahoma State Department of Health).

[33] Cavanaugh, Alyson, *Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021*, Morbidity and Mortality Weekly Report, Centers for Disease Control and Prevention, Issue 70(32) at 1081-83 (Aug. 13, 2021) *available at* https://www.cdc.gov/mmwr/volumes/70/wr/mm7032e1.htm (last visited Oct. 24, 2021).

[34] Stamatatos, Leonidas, *et al*., *mRNA vaccination boosts crossvariant neutralizing antibodies elicited by SARS-CoV-2 infection*; Science Vol. 372 Issue 6549 at 1413–18 (Jun. 25, 2021 *available at* https://www.science.org/lookup/doi/10.1126/science.abg9175 (last visited Oct. 24, 2021).

news reports where notable adverse reactions have been reported. (ECF No. 4 at 8-9). But Plaintiffs

do not cite any studies showing that severe adverse reactions are at all widespread or common.

Nor can they. As discussed, worldwide there have been over 6.88 billion doses of the vaccines

administered.[35] If adverse reactions were *at all* common, then studies would indicate this by now.

But studies show just the opposite, that the vaccines are safe. For instance, the CDC has advised

that the COVID-19 vaccines are "safe and effective," noting that 408 million doses of COVID-19

have been administered in the United States from December 14, 2020 through October 18, 2021

and that serious safety problems are rare.[36] In support of this claim, the CDC noted that the

COVID-19 vaccines "are part of the most intensive vaccine safety monitoring effort in U.S.

history."[37] Moreover, a recent study published by the New England Journal of Medicine confirmed

that the Pfizer mRNA vaccine "had a favorable safety profile and was highly efficacious in

preventing Covid-19" through six months after administration.[38]

### 3. Plaintiffs' argument about the novelty of the vaccines ignores more than three decades of research and development into mRNA technology.

Finally, Plaintiffs argue that the EO lacks a rational basis because they should not have to

take what they describe as an "extremely novel" vaccine. (ECF No. 4 at 8). This argument is flawed

---

[35]   *More than 6.88 Billion Shots Given: Covid-19 Tracker*, BLOOMBERG (Oct. 25, 2021 8:33 AM CDT) *available at* https://www.bloomberg.com/graphics/covid-vaccine-tracker-global-distribution/ (last visited Oct. 25, 2021).

[36]   Safety of COVID-19 Vaccines, CENTERS FOR DISEASE CONTROL AND PREVENTION (Oct. 18, 2021) *available at* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html (last visited Oct. 25, 2021).

[37]   CDC Monitors Health Reports Submitted After COVID-19 Vaccination to Ensure Continued Safety, CENTERS FOR DISEASE CONTROL AND PREVENTION, *available at* https://www.cdc.gov/ coronavirus/2019-ncov/vaccines/pdfs/vaccine-safety-monitoring.pdf (last visited Oct. 24, 2021).

[38]   Thomas, Stephen J., *Safety and Efficacy of the BNT162b2 mRNA COvid-19 Vaccine through 6 months*, THE NEW ENGLAND JOURNAL OF MEDICINE (Sept. 15, 2021) *available at* https://www.nejm.org/doi/full/10.1056/NEJMoa2110345 (last visited Oct. 24, 2021).

22

for two reasons. *First*, even if mRNA technology is new (it is not), the Johnson & Johnson vaccine was developed using the traditional viral vector, not mRNA, technology.[39] If Plaintiffs are concerned about mRNA vaccines, they can still get the Johnson & Johnson vaccine.

*Second*, while the use of mRNA technology in vaccines is a new development, mRNA technology itself is not novel. "In reality, the path to mRNA vaccines drew on the work of hundreds of researchers over more than 30 years."[40] The full history of this research is too extensive to describe here, but it has been reported on in detail in outlets such as *Nature*[41] and the *New York Time*s.[42] Suffice to say, while these particular mRNA vaccines were developed rapidly and represent an emerging method of vaccination, the underlying method itself has been researched and developed over the course of decades.

> **4.  Several courts have recently upheld vaccine mandates, and other courts, including the Northern District of Illinois, have implemented vaccine mandates for their employees.**

To summarize the above arguments, while Plaintiffs present a single non-peer reviewed study, this study should be given little weight as it is not peer-reviewed and it is inconsistent with most of the scientific literature on the subject. There are multiple published studies indicating that vaccination will boost the immunity of individuals, even those who have already been infected

---

[39]  *Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Oct. 4, 2021) *available at* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html (last visited Oct. 24, 2021).

[40]  Dolgin, Elie, *The tangled history of mRNA vaccines,* NATURE, Issue 597 at 318-324 (Sept. 14, 2021) *available at* https://www.nature.com/articles/d41586-021-02483-w (last visited Oct. 24, 2021) (citing Ostro, Marc J., *Evidence for translation of rabbit globin mRNA after liposomemediated insertion into human cell line,* NATURE, Issue 274 at 921-23 (Aug. 31, 1978) *available at* https://www.nature.com/articles/274921a0 (last visited Oct. 24, 2021)).

[41]  *Id.*

[42]  Kolata, Gina*, Kati Kariko Helped Shield the World From the Coronavirus*, NEW YORK TIMES (Apr. 8, 2021) *available at* https://www.nytimes.com/2021/04/08/health/coronavirus-mrna-kariko.html (last visited Oct. 24, 2021).

23

with COVID-19. And while Plaintiffs cite a few anecdotal instances of adverse reactions to the vaccine, these few anecdotes are dwarfed by the evidence that billions of shots have been administered worldwide without incident. And while Plaintiffs may be hesitant to take the Pfizer and Moderna vaccines because they perceive mRNA technology as new, this does not explain why Plaintiffs refuse to take the Johnson & Johnson vaccine, which is a more traditional vaccine. Plaintiffs' arguments cannot overcome rational basis scrutiny. Recent decisions from around the country demonstrate this.

The District of New Mexico recently addressed this exact argument in a case challenging New Mexico's requirement that healthcare workers receive vaccination. *Valdez v. Grisham*, 21 cv 783, 2021 U.S. Dist. LEXIS 173680 at *28 (D.N.M. Sept. 13, 2021). The court reasoned:

> Plaintiffs decry the basis for the PHO as "technocratic selective science," and argue that it fails to take into account that "Covid-recovered individuals have equal to or better immunity response than vaccinated individuals." But Plaintiffs' "disputes over the most reliable science" are of no moment to the instant analysis, as "the court doesn't intervene so long as [Defendants'] process is rational in trying to achieve public health."

*Id.* (quoting *Klaassen I*, 2021 U.S. LEXIS 133300 at *38). Consistent with *Valdez* and *Klaassen*, courts across the country have denied motions to enjoin COVID-19 vaccine requirements, finding that these requirements do have a rational basis. *See, e.g.*, *Harris*, 21-cv-11244, 2021 U.S. Dist. LEXIS 162444 at * 17-18; *Norris*, 2021 U.S. Dist. LEXIS 168444 at *5; *cf. Hencey*, 21-61702-CIV, 2021 U.S. Dist. LEXIS 154513 at *5 n. 3.

Very recently, three more courts have rejected claims similar to Plaintiffs' claims here. The District of Oregon denied a motion for preliminary injunction challenging the Oregon Governor's vaccine mandate for government employees, finding that there is no fundamental right to refuse to be vaccinated. *Williams*, 2021 U.S. Dist. LEXIS 201423 at *15. This claim included a challenge to an administrative rule by the Oregon Health Authority mandating that healthcare providers and

staff be fully vaccinated. *Id.* at *5. Notably, this matter also involved a claim under the equal protection clause. *Id.* at *22. The court applied rational basis and found that the executive order and administrative rule satisfied that standard and that the plaintiffs did not show "even serious questions to the merits of that claim." *Id.* at *22-25. Similarly, the Massachusetts District Court denied a motion for preliminary injunction challenging the Massachusetts Governor's vaccine mandate for all executive department employees, finding that there is no fundamental right to refuse to be vaccinated. *Mass. Corr. Officers Federated Union*, 2021 U.S. Dist. LEXIS 198905 at *16-22. And the New Jersey District Court denied a preliminary injunction seeking to enjoin the College of New Jersey's vaccine mandate for its students. *Messina*, 2021 U.S. Dist. LEXIS 198104 at *18-29.

Moreover, one month before the Governor issued EO 2021-22, this very district court mandated that *its* employees be vaccinated, or otherwise get tested twice a week.[43] As Chief Judge Pallmeyer stated when announcing the Northern District's vaccination requirement, "COVID-19 vaccinations are the very best available line of defense against this virus. Many of us work directly with the public, and all of us have a responsibility not only to one another, but also to the members of our community who come before us."[44] The Eastern District of Virginia also has instituted a similar vaccine mandate for its employees. *In re Court Operations Under the Exigent Circumstances Created by the Outbreak of Coronavirus Disease 2019 (COVID-19)*, No. 2:20-mc-7, 2021 U.S. Dist. LEXIS 153199 (E.D. Va. Aug. 13, 2021).

---

[43]  Court Information Release, "COVID-19 Vaccine to be Required for Employees of U.S. District Court and U.S. Bankruptcy Court for Northern District of Illinois," United States District Court, NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, (Aug. 3, 2021), *available at* https://www.ilnd.uscourts.gov/_assets/_news/EmployeeVaccinationAttestationFINAL.pdf (last visited Oct. 24, 2021).

[44]  *Id.*

This Court should follow the science, the decisions of other district courts around the country, and the mandate that this District has given to its own employees, and find that EO 2021-22's vaccine mandate for health care workers has a rational basis. Accordingly, Plaintiffs have not shown they have a likelihood of success on the merits of either their substantive due process or equal protection claim.

### D. Plaintiffs are unlikely to succeed on their First Amendment claim.

Plaintiffs' motion for preliminary injunction and the underlying Complaint do not clearly state that Plaintiffs have brought their First Amendment claim against the Governor. (*See generally* ECF Nos. 1 and 4). If Plaintiffs intend to bring their First Amendment claims against the Governor, that claim fails for two reasons. *First*, Plaintiffs lack standing to bring their First Amendment claim against the Governor. *Second*, even if Plaintiffs had standing to bring the claim, EO 2021-22 does not violate the Free Exercise clause.

### 1. Plaintiffs do not have standing to bring their First Amendment claim against the Governor.

It is well established that "Article III restricts the judicial power to actual 'Cases' and 'Controversies,' a limitation understood to confine the federal judiciary to 'the traditional role of [the] courts, which is to redress or prevent actual or imminently threatened injury. . . .'" *Ezell v. City of Chi.*, 641 F.3d 684, 694-95 (7th Cir. 2011) (citing *Summers v. Earth Island Inst.,* 555 U.S. 488, 491 (2009)). Accordingly, to satisfy the standing requirements for injunctive relief, the plaintiffs must show that they are "under an actual or imminent threat of suffering a concrete and particularized 'injury in fact'"; that this injury is fairly traceable to the defendant's conduct; and that it is likely that a favorable judicial decision will prevent or redress the injury." *Common Cause Ind. v. Lawson*, 937 F.3d 944, 947 (7th Cir. 2019) (citing *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009)). The alleged threatened injury-in-fact must be "actual and imminent, not

conjectural or hypothetical." *Summers*, 555 U.S. at 493. When multiple types of relief are sought, this threshold "does not fragment the standing inquiry into a series of discrete questions about the plaintiff's stake in each of the particular types of relief sought." C*ity of Los Angeles v. Lyons*, 461 U.S. 95, 128 (1983). Instead, it asks "simply whether the plaintiff has a sufficient stake in seeking a judicial resolution of the controversy." *Id*.

Here, some, but not all, Plaintiffs allege that they sought religious exemptions from the City. (*See* ECF No. 1). Other than the fact that both the State and the City have issued vaccine mandates, Plaintiffs have failed to explain how EO 2021-22 has had any direct impact on Plaintiffs or why Plaintiffs have brought this claim against the Governor. Plaintiffs are not employed by the State, did not seek a religious exemption from EO 2021-22 from the State, and were not denied religious exemption by the State. It is worth noting that Plaintiffs have neither identified what their religious exemption is, nor provided corroborating evidence for their claim that they actually did seek an exemption. Plaintiffs also do not allege that the Governor can override the Cook County Executive Order to require that they receive religious exemptions to the Cook County vaccine mandate. (*See id*). In short, Plaintiffs have failed to plead that they have had any interaction with the State or the implementation of the Order. Plaintiffs have failed to show that EO 2021-22 has injured them in any away and therefore, they lack standing to bring this action against the Governor. Further, their perfunctory pleadings against the State fail to state a First Amendment claim pursuant to Federal Rules of Civil Procedure 12(b)(6) or 8(a) (requiring "a short and plaint statement of the claim showing that the pleader is entitled to relief").

> **2.      Even if Plaintiffs could bring their First Amendment claims against the Governor, EO 2021-22 does not violate the free exercise clause.**

Even if this Court applied a traditional First Amendment analysis, rather than the more deferential analysis required under *Jacobson*, Plaintiffs are unlikely to succeed on the merits of

their First Amendment claim. Free exercise claims are governed by the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S. 872 (1990). In *Smith*, the Court held that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.* at 879 (citations omitted). In other words, "a neutral law of general applicability is constitutional if it is supported by a rational basis." *Ill. Bible Colleges Assoc. v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017). This is true even where a law has "the incidental effect of burdening a religious practice." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 631 (7th Cir. 2007).

To determine whether a law is neutral, courts first "examine the object of the law." *Id.* "A law is not neutral if 'the object of the law is to infringe upon or restrict practices because of their religious motivation.'" *Id.* (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)). Courts must also assess the "general applicability" of a law, which "forbids the government from imposing burdens only on conduct motivated by religious belief in a 'selective manner.'" *Id.*

Finally, the Seventh Circuit also requires courts to review the law's burden on religious practices because "[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 996 (7th Cir. 2006) (internal quotation admitted); *see also Listecki v. Official Committee of Unsecured Creditors*, 780 F.3d 731, 744 (7th Cir. 2015).

In short, if a law is not neutral or generally applicable, or if the law unduly burdens the free exercise of religion, the law "must be justified by a compelling governmental interest and must be

narrowly tailored to advance that interest." *Vision Church*, 468 F.3d at 996 (internal quotations omitted). Otherwise, a law is only subject to rational basis review.

Here, EO 2021-22 is a neutral law of general applicability. EO 2021-22 applies broadly to all healthcare workers. Plaintiffs rely on the recent Sixth Circuit decision in *Dahl v. Board of Trustees of Western Michigan University*, No. 21-2945, --- F.4th ---, 2021 U.S. App. LEXIS 30153* (6th Cir. 2021), where the Sixth Circuit determined that the university's vaccination mandate for college athletes burdened the plaintiff's First Amendment rights. The mandate at issue in *Dahl* only applied to college student athletes and did not apply to other on-site students or workers. *See Dahl*, --- F.4th ---, 2021 U.S. App. LEXIS 30153* at *1. Here, EO 2021-22 has a broad application to all healthcare workers with the goal of protecting those employees and the medically vulnerable population that they interact with through their employment. As such, EO 2021-22 is not under-inclusive and does not target any religion in its application. Instead, it is more similar to the vaccination policy at issue in *Klaassen*, which upheld a vaccination mandate as a neutral law of general applicability because it applied to all students, religious or not, and did not discriminate against any religion. *Klaassen II*. *See Klaassen II*, 7 F.4th at 593.

Even if EO 2021-22 did not include a religious exemption, the vaccine mandate would be constitutional. *See Doe v. Mills*, No. 21-cv-242, 2021 U.S. Dist. LEXIS 197251, *33 (D. Me. Oct. 13, 2021) (upholding vaccine mandate for healthcare workers after religious exemption was removed); *Caviezel v. Great Neck Pub. Sch.*, 739 F. Supp. 2d 273, 284 (E.D.N.Y. 2010) (holding that the free exercise clause does not provide a right for religious exemptions to the New York school system's vaccine requirements). But EO 2021-22 does provide a religious exemption where "vaccination would require the individual to violate or forgo a sincerely held religious belief, practice, or observance." EO 2021-22, § 2(e). This religious exemption—for which Plaintiffs did

29

not apply—provides an additional layer of protection against any alleged free exercise claim. Therefore, EO 2021-22 does not violate the free exercise clause of the First Amendment.

### E. Plaintiffs' claim that EO 2021-22 violates Illinois law is barred by the Eleventh Amendment.

Plaintiffs also claim that they are entitled to a preliminary injunction under the theory that the Governor exceeded his authority under the Illinois Emergency Management Act, 20 ILCS 3305/1, *et seq.*, in enacting EO 2021-22 and that EO 2021-22 violates the Illinois Health Care Right of Conscience Act. ECF No. 1. at Count V and ECF No. 4 at 13. However, it is well-established that these claims are barred by the Eleventh Amendment, and Plaintiffs therefore have no chance of success on the merits of these claims.

Turning briefly to the merits of Plaintiffs' Health Care Right of Conscience Act claim, this claim cannot succeed because EO 2021-22 contains a religious exemption. Plaintiffs are not employed by the State, have not requested an exemption from vaccination on sincere religious grounds from the State, and have not been denied an exemption by the State. As EO 2021-22 allows for the religious exemption referenced by the Act and no contrary action has been taken by the State in this matter, it cannot be reasonably argued that the State has violated this Act, or discriminated against Plaintiffs in any way.

Moreover, both state-law claims are unequivocally barred by the Eleventh Amendment. The Eleventh Amendment is an "affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Article III [of the Constitution]." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97 (1984). Under *Pennhurst*, sovereign immunity applies to bar suits against a state because federal jurisdiction over suits against nonconsenting states was not contemplated when establishing the judicial power of the United States. *Id*.; *Hans v. Louisiana*, 134 U.S. 1 (1890). The sovereign immunity bar also prevents claims against state officials in their

official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and further, "[i]t is *not* a suit against the official personally, for the real party in interest is the entity"); *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000).

There are three exceptions to sovereign immunity: (1) when Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so through a valid exercise of congressional power; (2) when a state has waived its immunity and consented to the suit; and (3) when the suit is one for prospective injunctive relief pursuant to *Ex parte Young*, 209 U.S. 123 (1908). *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002). None of these exceptions applies here.

Although the Eleventh Amendment does not bar claims for injunctive relief against state officials to stop an ongoing violation of *federal* law, *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002), this exception does not extend to allowing claims based on alleged violations of state law. "A federal Court's grant of relief against state officials on the basis of state law … does not vindicate the supreme authority of federal law." *Id*. at 107. In holding that the Eleventh Amendment bars suits against state officials to compel them to conform their conduct to state law, the *Pennhurst* Court noted that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* The Eleventh Amendment similarly bars state-law claims for declaratory relief. *Watkins v. Blinzinger*, 789 F.2d 474, 483–84 (7th Cir. 1986); *Benning v. Bd. of Regents*, 928 F.2d 775, 778 (7th Cir. 1991). A declaratory judgment cannot be used to avoid the Eleventh Amendment when monetary and injunctive relief would be barred. *Council 31 of AFSCME. v. Quinn*, 680 F.3d 875, 884 (7th Cir. 2012).

To determine that Plaintiffs' state-law arguments are barred by the Eleventh Amendment, the Court need only conduct the straightforward inquiry mandated by *Verizon Maryland* and ask whether their state-law claims seek prospective relief to stop an ongoing violation of *federal* law. The answer is "no." It is irrelevant that Plaintiffs' other arguments allege violations of federal law. The limits on federal jurisdiction over state-law claims cannot be evaded by making those claims pendant to federal claims. *Pennhurst*, 465 U.S. at 119–21.

The Seventh Circuit recently considered a nearly identical claim in *Cassell II*, 990 F. 3d at 551.[45] The plaintiffs in *Cassell* alleged that the Governor exceeded his authority under the Emergency Management Act by issuing executive orders limiting the number of people who may gather to slow the spread of COVID-19. *Id.* at 552. Applying *Pennhurst*, the Seventh Circuit upheld this Court's decision and held it was prevented "from entertaining the plaintiffs' request to enjoin Governor Pritzker from…misusing his emergency powers." *Id.*

Plaintiffs' attempt to cast their Emergency Management Act claim under the guise of procedural due process does not turn their state-law claim into a claim under federal law. (*See* ECF No. 4 at 12). Plaintiffs' procedural due process argument is based solely on the Governor allegedly exceeding his authority under the Emergency Management Act. "But there is no constitutional procedural due process right to state-mandated procedures." *GEFT Outdoors, LLC v. City of Westfield*, 922 F. 3d 357, 366 (7th Cir. 2019); *see also Colon v. Schneider*, 899 F. 2d 660, 673 (7th Cir. 1990) (noting that *Pennhurst* explicitly states that the Eleventh Amendment prohibits federal courts from issuing orders directing state employees not to violate state law).

---

[45] Curiously, Plaintiffs cite to this Court's decision in *Cassell*, which rejected a similar claim that the Governor exceeded his powers under the Emergency Management Act. *Cassell v. Snyders*, 458 F. Supp. 3d 981, 999 (N.D. Ill. 2020) (Lee, J.) ("*Cassell I*"). However, this was only after this Court found that "the Eleventh Amendment almost certainly forecloses plaintiff's state law claims here." *Id.*

While the courts do not appear to have considered this issue with regard to the Health Care Right of Conscience Act, the courts have routinely dismissed claims based on Illinois state law. *See, e.g.*, *Cassell II*, 990 F. 3d at 551; *Cassell I*, 458 F. Supp. 3d at 999 ("[T]he Eleventh Amendment almost certainly forecloses Plaintiffs' state law claims here."); *Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137, at *9-10 (N.D. Ill. Jul. 2, 2001) (Illinois RFRA claim barred by Eleventh Amendment). Thus, any Health Care Right of Conscience Act claim against the Governor is barred by the Eleventh Amendment as well.

Because Plaintiffs seek relief based on state law, which is expressly prohibited by *Pennhurst,* such claims are barred by the Eleventh Amendment. Accordingly, Plaintiffs do not have a likelihood of success on the merits of the claim under Illinois law.

## II.    Plaintiffs will not suffer irreparable harm without the entry of an injunction.

Plaintiffs have also failed to establish that they will suffer irreparable harm if the Court denies their motion. *Winter*, 555 U.S. at 2 ("possibility" of irreparable harm is not enough; plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction") (emphasis in original). Plaintiffs allege that any infringement on their Fourteenth Amendment rights automatically constitutes irreparable harm. (ECF No. 4 at 13). This argument is unpersuasive because Plaintiffs are unlikely to show that their constitutional rights have been violated, and it is well established that the *possibility* of irreparable harm is not sufficient to warrant a preliminary injunction. *Orr*, 953 F.3d at 502.

The consequence of Plaintiffs not being vaccinated is that they must be tested for COVID-19. (ECF No. 4 at 20). As discussed above, the Seventh Circuit has found testing to be "not constitutionally problematic." *Klaassen II*, 7 F. 4th at 593. Consequently, the testing requirement cannot constitute irreparable harm. To the extent that Plaintiffs allege that they may be required to pay for COVID testing or that they could lose their jobs if they refuse to submit to testing, these

concerns also do not constitute irreparable harm. "An irreparable harm is an extraordinary harm—one that cannot be fully compensated by money damages." *Norris*, 2021 U.S. Dist. LEXIS 168444 at *8 (citing *Winters*, 555 U.S. at 22). Plaintiffs' claim under the Health Care Right of Conscience Act is barred by the Eleventh Amendment, but even if it were not, Plaintiffs cannot show that any alleged violation under the Health Care Right of Conscience Act would constitute irreparable harm because the Act itself provides for damages. *See* 745 ILCS 70/12. Further, if Plaintiffs suffer any actionable monetary losses in the future due to EO 2021-22, they can attempt to seek relief for those losses without the extraordinary remedy of injunctive relief. *Id.*

Moreover, Plaintiffs' allegations that they have suffered irreparable harm are undermined by their delay in filing this motion. The EO 2021-22 was issued on September 3, 2021, and the testing requirement for unvaccinated healthcare workers did not go into effect until September 19, 2021. (ECF No. 4 Ex. A at 18, 20). However, Plaintiffs did not file this motion until October 21, 2021. *See id.* Plaintiffs' decision to wait over a month before filing this motion, ignoring the period between the issuance of the executive order and the effective date of the testing requirement, and their lack of urgency in getting the motion before the Court, directly contradict their position that they will suffer irreparable harm. Given that the Plaintiffs did not feel it was necessary to promptly challenge the executive order to prevent the alleged irreparable harm, it would be "inconsistent with the [Supreme Court's] characterization of injunction relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" to grant Plaintiffs' request. *Winter*, 555 U.S. at 22.

## III.    The balance of hardships favors denying Plaintiffs' request for an injunction.

Under the "balance of harms" portion of the analysis, Plaintiffs must establish that "the harm they would suffer without the injunction is greater than the harm that preliminary relief would inflict on the defendants." *Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765, 769 (7th Cir. 2011).

As Plaintiffs' claims are unlikely to succeed on their merits, Plaintiffs "must compensate for the lesser likelihood of prevailing by showing the balance of harms tips *decidedly* in favor of the movant." *Boucher*, 134 F.3d at 826 n. 5 (emphasis in original). The court also should consider whether a preliminary injunction would cause harm to the public interest. *Platinum Home Mort. Corp. v. Platinum Fin. Group, Inc*., 149 F.3d 722, 726 (7th Cir. 1998).

When this Court balances the hardships where "the Government is the opposing party, the final two factors in the temporary restraining order analysis—the balance of the equities and the public interest—merge." *Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018); *Trump v. Int'l Refugee Assistance*, 138 U.S. 353 (2017) ("As the district court did, we consider the balance of the equities and the public interest factors together."); *see also Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) ("The government's interest *is* the public interest.") (emphasis in original).

Plaintiffs' requested relief goes against the public interest and would interfere with the State's ability to manage a public health crisis. In *Rizzo v. Goode*, 423 U.S. 362 (1976), the Supreme Court instructed that to obtain injunctive relief on a matter traditionally reserved to the discretion of a state or local government agency, a plaintiff must overcome the steep hurdle set by "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Id.* at 378–79 (quotations omitted). This instruction to issue injunctions only "sparingly" is particularly important in Section 1983 cases, like this one. *Id.* at 378. This strong preference against such intrusive injunctive relief is primarily founded on "delicate issues of federal state relationships" (*id*. at 380 (quotation omitted)), which are premised on "the principles of equity, comity, and federalism." *Id*. at 379 (quotation omitted).

"The governmental purpose of stemming the spread of COVID-19, especially in the wake of the Delta variant, is not only [a] legitimate, but is 'unquestionably a compelling interest.'" *Valdez*, 2021 U.S. Dist. LEXIS 173680 at *25 (quoting *Roman Catholic Diocese*, 141 S. Ct. at 67). Currently, the Occupational Safety and Health Administration recommends testing unvaccinated employees.[46] Screening testing is important to identify asymptomatic cases before transmission to minimize outbreaks. (Bleasdale Declaration at ¶ 59). Testing can help limit transmission because people can be most contagious before they show signs of the disease. (*See id.*). With the Delta variant spreading quickly among unvaccinated people, the consequence of not implementing the CDC guidance under those circumstances regarding screening testing would very likely increase sickness, including serious illness, and quite possibly death.

Moreover, the Complaint alleges that only *some*, but not *all*, of the Plaintiffs have previously tested positive for COVID-19. Accepting these allegations as true for the purpose of the present motion, roughly half of the named Plaintiffs have alleged that they do not believe they previously contracted COVID-19. (ECF No. 1 at ¶¶ 5-139).

Thus, even if Plaintiffs' argument that immunity from prior infection is superior to vaccination is accepted as true, Plaintiffs still have not shown that this point applies to roughly half of them. Accordingly, about half of the named Plaintiffs ask for an injunction against a vital public health measure on the basis of an argument that *might not actually apply to them*. It is possible that they never contracted COVID-19 and are seeking this injunction despite having no immunity whatsoever.

---

[46] *Protecting Workers: Guidance on Mitigating and Preventing the Spread of COVID-19 in the Workplace*, OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, https://www.osha.gov/coronavirus/safework (last visited Oct. 24, 2021).

Regarding the Plaintiffs who allege that they previously tested positive for COVID-19, as discussed above, the level of immunity can vary based on viral load and the severity of the infection. If Plaintiffs' infections were early in the pandemic, then their immunity may have waned and vaccination is necessary to boost their immune response. If their cases were mild, then they might not have any immunity at all. Considering the nature of Plaintiffs' jobs, they not only are at a higher risk of either infection or reinfection, but there is a higher risk that they will spread the disease as well. (Bleasdale Declaration at ¶¶ 56-57).

The potential harm to the State and the people of Illinois strongly outweighs any alleged harm that Plaintiffs may suffer if the testing requirement continues. As such, Plaintiffs have not satisfied a single factor required to obtain a preliminary injunction and their motion should be denied.

## CONCLUSION

A preliminary injunction is a form of extraordinary relief, not to be granted lightly. Plaintiffs have fallen far short of the standard for its entry. They lack a likelihood of success on the merits in light of *Jacobson*, the vaccine requirement having a clear rational basis, EO 2021-22 complying with the First Amendment, and the Eleventh Amendment foreclosing their state-law claims. They have not demonstrated they will suffer irreparable harm. And the balance of the hardships clearly favors the State given its effort to stem the spread of a pandemic that has lasted nearly two years. This is especially true in light of Plaintiffs' jobs as frontline healthcare workers who are at a higher risk of contracting the disease as well as spreading it. Plaintiffs' Petition For a Temporary Restraining Order and Preliminary Injunction should be denied.

Respectfully submitted,

KWAME RAOUL                          /s/ Hal Dworkin
*Attorney General*                   HAL B. DWORKIN
*State of Illinois*                   MARY JOHNSTON
                                     Assistant Attorneys General
                                     Office of the Illinois Attorney General
                                     100 W. Randolph Street, 13th Floor
                                     Chicago, Illinois 60601
                                     (312) 814-5159
                                     Hal.Dworkin@ilag.gov
                                     Mary.Johnston@ilag.gov