**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SCOTT TROOGSTAD, *et al.*,<br><br>                              Plaintiffs,<br>            v.<br>CITY OF CHICAGO and GOVERNOR JAY<br>ROBERT PRITZKER,<br><br>                              Defendants. | Case No. 21-cv-05600<br><br>Hon. Judge John Z. Lee |

# DEFENDANT CITY OF CHICAGO'S RESPONSE TO PLAINTIFFS' EMERGENCY PETITION FOR A TEMPORARY RESTRAINING ORDER <u>AND PRELIMINARY INJUNCTION</u>

## **Table of Contents**

I.  Introduction and Summary ................................................................................ 1

II.  Factual Background ......................................................................................... 2

   A.  The Covid-19 Pandemic and Importance of Vaccinations ................................. 2

   B.  The City of Chicago's Vaccination Policy ...................................................... 3

   C.  The City of Chicago's Process for Obtaining Exemptions to the Vaccination Policy ....... 5

   D.  The Impact of the Vaccination Policy on Plaintiffs .......................................... 7

III.  Argument ................................................................................................... 7

   A.  Standard for Issuance of a Temporary Restraining Order ................................. 7

   B.  Plaintiffs Cannot Show a Likelihood of Success on the Merits ........................... 8

      1.  Plaintiffs Cannot Establish a Violation of Their Substantive Due Process Rights **Error! Bookmark not defined.**

      2.  The Vaccination Policy Does Not Violate Plaintiffs' Procedural Due Process Rights  16

      3.  The City's Vaccination Policy Does Not Violate the Free Exercise Clause ............... 17

      4.  The City's Vaccination Policy does not Violate the Equal Protection Clause ........... 20

      5.  The City's Vaccination Policy Does Not Violate the Health Care Right of Conscience Act  21

   C.  Plaintiffs Cannot Demonstrate Irreparable Harm ........................................... 24

   D.  The Balance of Equities and Public Interests Strongly Favor Denial of the Injunction ... 25

IV.    Conclusion ................................................................................................... 26

## Table of Authorities

Page(s)

Cases

1:21-CV-238 DRL,
    2021 WL 3073926 (N.D. Ind. July 18, 2021).................................................. passim
1:21-CV-756,
    2021 WL 4738827 (W.D. Mich. Oct. 8, 2021) ............................................ 10
3:21-CV-1494-SI,
    2021 WL 4846060 (D. Or. Oct. 18, 2021) .......................................... 10
*4 Aces Enterprises, LLC v. Edwards*,
    No. CV 20-2150, 2020 WL 4747660 (E.D. La. Aug. 17, 2020) ............................ 17
21-CV-783 MV/JHR,
    2021 WL 4145746 (D.N.M. Sept. 13, 2021) ................................... 10, 15
21-CV-5055 (BMC),
    2021 WL 4344267 (E.D.N.Y. Sept. 23, 2021) ..................................... 15
21-CV-11244-DJC,
    2021 WL 3848012 (D. Mass. Aug. 27, 2021) ........................................... 11, 15, 17
2021 WL 4618519 (6th Cir. Oct. 7, 2021)...................................................... 19
*Aaron Kheriaty v. Regents of the Univ. of California, et al.*,
    SACV2101367JVSKESX, 2021 WL 4714664 (C.D. Cal. Sept. 29, 2021)............................. 10
*Adeyeye v. Heartland Sweeteners, LLC*,
    721 F.3d 444 (7th Cir. 2013) ...................................................... 22
*Am.'s Frontline Doctors v. Wilcox*,
    EDCV211243JGBKKX, 2021 WL 4546923, at (C.D. Cal. July 30, 2021) ................ 11, 15, 19
*Beckerich v. St. Elizabeth Med. Ctr.*,
    CIV 21-105-DLB-EBA, 2021 WL 4398027, at (E.D. Ky. Sept. 24, 2021)............................ 15
*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
    239 U.S. 441 (1915)................................................................. 17
*Buck v. Bell*,
    274 U.S. 200 (1927)................................................................. 12
*Children's Health Def., Inc. v. Rutgers State Univ. of New Jersey*,
    CV2115333ZNQTJB, 2021 WL 4398743 (D.N.J. Sept. 27, 2021)......................... 11
*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993)................................................................. 18
*Ciechon v. City of Chicago*,
    634 F.2d 1055 (7th Cir. 1980) ................................................... 25
*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985)................................................................. 13
*Cochran v. Illinois State Toll Highway Auth.*,
    828 F.3d 597 (7th Cir. 2016) .................................................... 20
*Cruzan by Cruzan v. Dir., Missouri Dept. of Health*,
    497 U.S. 261 (1990) .............................................................. 11

*Del Marcelle v. Brown County Corp.*,
  680 F.3d 887 (7th Cir. 2012) ................................................................... 20

*Dixon v. De Blasio*, 21-CV-5090 (BMC),
  2021 WL 4750187 (E.D.N.Y. Oct. 12, 2021) ................................. 10, 14

*Does 1-6 v. Mills*,
  21-1826, 2021 WL 4860328 (1st Cir. Oct. 19, 2021) ............................ 19

*Employment Div., Dept. of Human Res. of Oregon v. Smith*,
  494 U.S. 872 (1990) ................................................................................ 18

*Fallon v. Mercy Catholic Med. Ctr. of Se. Pennsylvania*,
  877 F.3d 487 (3d Cir. 2017) ............................................................. 22, 23

*FCC v. Beach Communications, Inc.*,
  508 U. S. 307 (1993) ............................................................................... 14

*Free v. Holy Cross Hosp.*,
  153 Ill. App. 3d 45 (1st Dist. 1987) ................................................. 22, 24

*Fulton v. City of Philadelphia, Pennsylvania*,
  141 S. Ct. 1868 (2021) ............................................................................ 18

*GEFT Outdoors, LLC v. City of Westfield*,
  922 F.3d 357 (7th Cir. 2019) ................................................................... 8

*Graham v. Med. Mut. of Ohio*,
  130 F.3d 293 (7th Cir. 1997) ................................................................. 24

*Helen v. Doe*,
  509 U.S. 312 (1993) ................................................................................ 14

*Hopkins Hawley LLC v. Cuomo*,
  518 F. Supp. 3d 705 (S.D.N.Y. 2021) ............................................. 17, 18

*Illinois Republican Party v. Pritzker*,
  470 F. Supp. 3d 813 (N.D. Ill. 2020) ....................................................... 7

*Jacobson v. Commonwealth of Massachusetts*,
  197 U.S. 11 (1905) .......................................................................... 1, 9, 20

*Klaassen v. Trustees of Indiana Univ.*,
  7 F.4th 592 (7th Cir. 2021) ........................................................ 1, 9, 10, 19

*Korematsu v. United States*,
  323 U.S. 214 (1944) ................................................................................ 12

*Marshall v. U.S.*,
  414 U.S. 417 (1974) ................................................................................ 14

*Massachusetts Correction Officers Federated Union v. Baker*,
  21-11599-TSH, 2021 WL 4822154 (D. Mass. Oct. 15, 2021) ............... 12

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) .................................................................................. 8

*Messina, et al., v. The College of New Jersey et al.*,
  CV2117576ZNQDEA, 2021 WL 4786114 (D.N.J. Oct. 14, 2021) ............ 11, 15, 16

*New Orleans v. Dukes*,
  427 U. S. 297 (1976) ............................................................................... 14

*Norris*,
  2021 WL 3891615 .................................................................................. 15

*Orr v. Shicker*,
  953 F.3d 490 (7th Cir. 2020) ................................................................. 24

*Planned Parenthood of Se. Pennsylvania v. Casey,*
    505 U.S. 833 (1992) ........................................................................... 12
*Roe v. Wade,*
    410 U.S. 113 (1973) ........................................................................... 12
*Rojas v. Martell,*
    2020 IL App (2d) 190215 ................................................................... 21
*Roman Catholic Diocese of Brooklyn v. Cuomo,*
    141 S. Ct. 63 (2020) .................................................................... 13, 19
*S. Bay United Pentecostal Church v. Newsom,*
    140 S. Ct. 1613, (2020) ..................................................................... 14
*St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.,*
    919 F.3d 1003 (7th Cir. 2019) .......................................................... 13
*Sweeney v. Pence,*
    767 F.3d 654 (7th Cir. 2014) ............................................................ 13
*U.S. v. Locke,*
    471 U.S. 84 (1985) ............................................................................ 17
*Vandersand v. Wal-Mart Stores, Inc.,*
    525 F. Supp. 2d 1052 (C.D. Ill. 2007) ............................................. 21
*Vill. of Orland Park v. Pritzker,*
    475 F. Supp. 3d 866 (N.D. Ill. 2020) ............................................... 17
*Washington v. Glucksberg,*
    521 U.S. 702 (1997) .......................................................................... 13
*Washington v. Harper,*
    494 U.S. 210 (1990) .................................................................... 11, 12
*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................... 8

Statutes

5 ILCS 315/4 ............................................................................................ 16
745 ILCS 70/3(e) ..................................................................................... 22
745 ILCS 70/5 ......................................................................................... 22

Rules

Fed. R. Evid. 201 ...................................................................................... 2

Other Authorities

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d
    ed.1995) ............................................................................................... 8

## I.  Introduction and Summary

On August 25, 2021, the City of Chicago announced a Vaccination Policy requiring all City employees to be fully vaccinated against COVID-19 by December 31, 2021, absent an approved medical or religious accommodation. Employees were required to disclose their vaccination status to the City by October 15, 2021, and employees not fully vaccinated by October 15, 2021, must submit to twice-weekly testing until they are fully vaccinated. Plaintiffs seek to block the City's Vaccination Policy, arguing that the policy is not necessary because many of them have previously been infected with COVID-19 and that the vaccine mandate violates their constitutional rights. The Seventh Circuit flatly rejected a very similar challenge to Indiana University's student vaccination policy in *Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("*Klaassen 2")*. Observing that the Supreme Court affirmed the constitutionality of vaccine mandates over 100 years ago in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), the Seventh Circuit made clear that *Jacobson* remains controlling law. Plaintiffs therefore are not likely to succeed on the merits of their constitutional claims. Likewise, Plaintiffs' claims under the Illinois Health Care Right of Conscience Act ("HCRCA") must fail, because the HCRCA was never intended to apply to this situation, and because the City's policy complies with the HCRCA.

Plaintiffs also have not demonstrated the other elements necessary for issuance of a temporary restraining order. They have not shown that they will suffer irreparable harm in the absence of an injunction. There is no constitutional right to refuse a vaccination during a pandemic. Plaintiffs offer no evidence that they are likely to suffer adverse effects from vaccination, and no one is forcing Plaintiffs to be vaccinated against their will. Plaintiffs who choose not to be vaccinated for *bona fide* medical or religious reasons can seek exemptions. Those not eligible for exemptions who still choose not to be vaccinated face the same choice as employees who object to any other

1

2952989.1

policy adopted by their employer: they can elect to comply with the policy, or they can seek other employment. Plaintiffs also have adequate remedies at law for any purported unlawful loss of employment due to their refusal to comply with the City's policy. Most importantly, the balance of harms weighs strongly against granting an injunction. Delaying the City's implementation of its Vaccination Policy will impede the City's efforts to combat COVID-19 and will result in unnecessary illness, hospitalization, and deaths. Plaintiffs' motion for a temporary restraining order should therefore be denied.

## II. Factual Background

### A. The Covid-19 Pandemic and Importance of Vaccinations

According to the U.S. Centers for Disease Control, more than 723,000 Americans have lost their lives to the COVID-19 pandemic. *See* Ex. C, U.S. Centers for Disease Control COVID Data Tracker, as of October 19, 2021.[1] Over 44 million Americans have been infected. *Id.* More than three million have been hospitalized. *Id.* As of October 22, 2021, 6,046 Chicago residents have died from COVID-19. *See Declaration of Dr. Allison Arwady*, Ex. A, ¶ 7. Of those deaths, 5,967 (99%) were people who were not fully vaccinated. *Id.* Since the start of the pandemic, Chicago has seen more than 10 residents dying every day from COVID-19, far more than die every day in Chicago from violence, drug overdose, suicide, or car crashes. *Id.*

Vaccination is the single most important weapon that our society has against this deadly disease. Since vaccines have become available, whether a Chicagoan is vaccinated is, by far, the most important predictor of whether they will be diagnosed with, hospitalized for, or die from COVID-19. Ex. A, ¶ 7. During the Delta surge over the summer and early fall of 2021, unvaccinated

---

[1] CDC COVID-19 data is publicly available at https://covid.cdc.gov/covid-data-tracker/#trends_dailydeaths and https://covid.cdc.gov/covid-data-tracker/#new-hospital-admissions, visited October 19, 2021. The Court may take judicial notice of these readily verifiable facts under Fed. R. Evid. 201.

2

Chicago residents have been more than twice as likely as vaccinated residents to be diagnosed with COVID-19, more than five times as likely to be hospitalized, and more than eight times as likely to die of COVID-19. *Id.*, ¶ 16.

City of Chicago employees have been approximately twice as likely to be infected with COVID-19 as compared with all Chicago residents. *Id.*, ¶ 10. Ultimate success in controlling the pandemic depends on developing immunity in all employees who have contact with each other and members of the public, and as such the City is mandating vaccinations for all employees, not just health care or other employees covered by the Governor's Executive Order. *Id.*, ¶ 11. City employees in most departments have frequent public contact or are in prolonged close contact with each other due to the essential nature of their work. *Id.* ¶ 12. Such employees may have frequent contact with members of the public in settings that are less controlled than hospitals or other health care facilities. *Id.*, ¶ 13. For example, first responders such as fire department employees often find themselves in unpredictable, uncontrolled close interactions with the public whose vaccination status and or COVID-19 exposure status is unknown or uncertain. *Id.*

### B. The City of Chicago's Vaccination Policy

Because vaccination is crucially important to bring this pandemic under control, on August 25, 2021, the City announced a Vaccination Policy requiring COVID-19 vaccinations for all City employees, contractors, and vendors. *Declaration of Christopher Owen,* Ex. B, ¶ 4, Ex. B1. The Vaccination Policy requires all covered City employees, contractors, and vendors to report their vaccination status through an online COVID-19 Vaccination Portal no later than October 15, 2021. Ex. B1. City employees must report their compliance with the Vaccination Policy through a con-fidential, secure Portal maintained on the City's website. All information uploaded to the portal is treated as a confidential medical record and is retained by the Department of Human Resources in

3

a separate confidential file and will only be shared in accordance with the Americans with Disabilities Act. Ex. B. ¶ 5.

In the portal, employees who are vaccinated are asked to provide information including the type of vaccine received, the date of each dose, and proof of vaccination such as a COVID-19 Vaccination Record Card or documentation from the individual's health care provider. Ex. B2. The Policy provides that employees who fail to report their vaccine status by October 15, 2021 will be placed in a non-disciplinary no-pay status until they have reported their vaccination status. Covered employees, contractors, and vendors who report that they are not vaccinated are required to submit to twice-weekly testing. The testing option is available to allow employees additional time to become fully vaccinated before December 31, 2021, at which time employees will be required to be fully vaccinated as a condition of employment, unless they are granted an accommodation. The option to submit to testing in lieu of vaccination sunsets as of December 31, 2021. Ex. B1.

The City is requiring twice-weekly testing for unvaccinated individuals until the December 31, 2021 vaccination deadline because twice weekly testing provides greater detection of potential COVID-19 exposure as compared to once a week testing. Ex. A, ¶ 18. The City is permitting unvaccinated employees to use rapid antigen testing, including home self-tests, to meet the testing requirement. *Id.* ¶ 21. The CDC recommends that these tests be done twice weekly and when used twice per week, they have been found to consistently identify COVID-19 during early stages of infection, thus significantly reducing transmission. *Id.*, ¶ 20. The shorter incubation time of the Delta variant, which remains the dominant variant in Chicago also warrants the need for twice weekly testing because there is a greater risk of not detecting an infection in sufficient time to prevent workplace exposure and transmission if only weekly testing is required. *Id.*, ¶ 19.

4

The City is requiring all employees to be fully vaccinated by December 31, 2021 because vaccination is vastly superior to testing for preventing the transmission of COVID-19. *Id.* ¶ 22. Cases, hospitalizations, and deaths are lower than they were earlier in the pandemic largely due to vaccinations. *Id.* ¶ 23. But the pandemic remains far from over, and the recent decline in COVID-19 cases and related hospitalizations and deaths provides no public health justification for easing vaccination requirements. *Id.* The City of Chicago remains at a level of substantial COVID-19 transmission under CDC criteria, with over 200 new daily cases still being reported as of October 25, 2021. *Id.* ¶ 23. Full implementation of the vaccine requirement is particularly critical as we enter the winter season. It is expected that Chicago will see higher level of influenza activity this winter season than it did last year. *Id.* ¶ 25. Adding COVID-19 hospitalizations risks stressing the hospital system to a point where the ability to provide appropriate and timely care for both COVID-19 patients and other patients will be impaired and further contribute to unnecessary deaths. *Id.* ¶ 25.

The City did not establish these deadlines and testing requirements lightly. Success in overcoming this ongoing pandemic depends upon ensuring that enough people have immunity from the virus before another variant even more virulent than Delta surfaces. Delay in implementing the City's COVID-19 vaccination requirement is highly likely to result in additional, entirely unnecessary, hospitalizations and deaths due to COVID-19. *Id.*, ¶ 26**.**

### C. The City of Chicago's Process for Obtaining Exemptions to the Vaccination Policy

The City provides exemptions to employees with a medical condition or sincerely held religious beliefs that prevent them from complying with the Vaccination Policy unless the exemption would create an undue hardship. Employees who seek an exemption from the Vaccination Policy because of a medical condition or because of a sincerely held religious belief may request an

5

accommodation by e-mailing the exemption request to vaccineexemptions@cityofchicago.org or by providing a completed exemption request form to a Human Resources Liaison for the department in which the employee works, who will then forward the request to the Department of Human Resources for evaluation. Ex. B, ¶ 6.

The City has created forms for requesting medical or religious exemptions. Ex B, ¶ 7. The forms were developed for the employees' convenience and to advise employees of the specific information needed to assess the employee's entitlement to an exemption; however, all exemption requests are being considered and evaluated by the Human Resources Department, regardless of whether these forms are used by the employee. *Id.*

Medical and religious exemption requests are considered on a case-by-case basis in the order they are received. *Id.*, ¶ 8. The Human Resources Department assesses each request using an interactive process. If the information provided in the initial exemption request is incomplete, if a signature is missing, or if the information provided is otherwise not sufficient to determine the employee's eligibility for an exemption, the employee is contacted by a human resource representative and asked to provide additional information and to further explain why the employee believes the employee is entitled to an exemption. *Id.*

Requests for an exemption pursuant to the Illinois Health Care Right of Conscience Act ("HCRCA") are considered and processed in the same manner and under the same terms as religious exemption requests. *Id.* ¶ 9. The City has received over 2000 identical "form" letters from employees that purport to request an exemption under the HCRCA. The form letters merely quote language from the statute and provides no information regarding the individual employee's religious belief or basis for objecting to the Vaccination Policy as a matter of conscious. *Id.*, ¶ 10. The City has denied exemption requests that are based solely on this form letter because the information

6

contained in the letter fails to adequately describe the religious belief or matter of conscience that would qualify the individual employee for an exemption.

As of October 25, 2021, approximately 139 medical exemption requests have been submitted and approximately 4,541 religious/HCRCA exemption requests have been submitted[2]. The vast majority of these requests are still being reviewed and are under consideration. The only religious/HCRCA requests that have been denied are the requests that rely solely on the form letter described above. *Id*., ¶ 11.

### D. The Impact of the Vaccination Policy on Plaintiffs

This lawsuit purports to be filed on behalf of 135 City of Chicago employees, in the Fire, Water, and Transportation Departments. The City, however, has no record of one of the listed Plaintiffs, Daniel Rieger. It also has no record of Plaintiff Daniel Kranz being employed by the Fire Department. (The City has records of two employees named Daniel Kranz, but both are with the Police Department, not Fire.) Seven Plaintiffs identified in the Complaint as being employed with the Fire Department are listed in the City's HR database as being employed with the Police Department. *Id.,* ¶ 12. Forty-five of the named Plaintiffs have made religious exemption requests to date. *Id.*, ¶ 13. Of these requests, 5 have been denied because the employees submitted only the form letter described above. *Id*. As of October 25, 2021, the other exemption requests remain pending. *Id*.

## III. Argument

### A. Standard for Issuance of a Temporary Restraining Order

The standards for granting a TRO are the same as those that apply to a preliminary injunction.

---

[2] The above approximations reflect only those submissions the City has logged as of the date of this Declaration and does not reflect the total number of submissions received as of the date of this Declaration.

*See Illinois Republican Party v. Pritzker*, 470 F. Supp. 3d 813, 820 n.6 (N.D. Ill. 2020). Such relief "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A TRO or preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997), *quoting* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed.1995) (emphasis added; footnotes omitted). Plaintiffs seeking a TRO or preliminary injunction must show (1) they have some likelihood of success on the merits, (2) they have no adequate remedy at law, and (3) they will suffer irreparable harm if the injunction is not granted. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). If the moving party fails to establish any of these elements, the motion must be denied. *Id.*

If the moving party establishes these threshold elements, the court must balance the irreparable harms that the moving party seeks to prevent through the injunction against the harm that granting the injunction would cause to the nonmoving party or the public. *Id.* The Seventh Circuit applies a "sliding scale" approach to this analysis: the stronger the plaintiff's case on the merits, the less heavily the balance of harms must weigh in the plaintiff's favor; the weaker the plaintiff's claims, the more the balance must weigh in the plaintiff's favor. *Id.* In conducting this analysis, the court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

### B. Plaintiffs Cannot Show a Likelihood of Success on the Merits

#### 1. Plaintiffs are Not Likely to Succeed on Their Substantive Due Process Claims

##### a. The City's Vaccination Policy Does Not Deprive Plaintiffs of Any Fundamental Constitutional Right

2952989.1

Controlling U.S. Supreme Court and Seventh Circuit case law makes clear that state and local governments can implement vaccine mandates to combat infectious disease outbreaks without violating the Constitution. *Jacobson*, 197 U.S. 11; *Klaassen*, 7 F.4th at 593. *Jacobson* involved a far more sweeping mandate than this case. There, the City of Cambridge adopted a regulation requiring all inhabitants of the city to be vaccinated or revaccinated against smallpox. The Supreme Court upheld the state's authority enforce this vaccine mandate for the "protection of the public health and the public safety, confessedly endangered by the presence of a dangerous disease" (i.e., smallpox). *Id.* at 27, 39. Individuals who failed to follow the vaccination mandate were subject to fine or imprisonment. *Id.* at 26. The Supreme Court held that the vaccination mandate was permissible. The Court "distinctly recognized the authority of a state to enact quarantine laws and 'health laws of every description" and declared, "the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand." *Id.* at 25, 29.

COVID-19 is precisely the kind of public health crisis contemplated in *Jacobson*. The Seventh Circuit confirmed this in *Klaassen 2*, where the court applied the rational basis standard from *Jacobson* to a claim by Indiana University students that the University's COVID-19 vaccine mandate violated their substantive due process rights. The court rejected plaintiffs' substantive due process claim, finding that *Jacobson* was controlling law and that the students' case was "easier than *Jacobson*" because the university's policy provided for religious and medical exemptions, and because it did not apply to all citizens, but only as a condition of attending the university. *Id.* at 593; *See also Klaassen v. Trustees of Indiana Univ.*, 1:21-CV-238 DRL, 2021 WL 3073926, at *24 (N.D. Ind. July 18, 2021) ("*Klaassen 1*") (collecting cases demonstrating "the consistent use of rational basis review to assess mandatory vaccination measures," and, in light of "a century's

worth of rulings," declining to "extend substantive due process to recognize" a fundamental right to be free from COVID-19 vaccination requirements).

The court's reasoning in *Klaassen 2* applies equally here. The City of Chicago is not requiring all its residents to be vaccinated against COVID-19. The mandate applies only to City employees, and employees of City vendors and contractors who are in regular contact with City employees. Like Indiana University's policy, the City's policy also allows for exemptions for medical and religious reasons. Accordingly, from a constitutional standpoint, this is an "easy" case.

Other federal courts considering challenges to COVID-19 vaccine mandates for employees, students, and even members of the general public have consistently rejected the substantive due process arguments that Plaintiffs raise in this case, citing *Jacobson* and *Klaassen 2*. *See Dixon v. De Blasio*, 21-CV-5090 (BMC), 2021 WL 4750187, at *8 (E.D.N.Y. Oct. 12, 2021) (denying preliminary injunction to block enforcement of New York City executive orders requiring proof of vaccination for entry into facilities including restaurants, entertainment venues, and gyms and fitness venues, rejecting the plaintiffs' appeal to the right to the "freedom of bodily health and integrity" and explaining that the "right to refuse vaccination is not a fundamental right"); *Johnson et al. v. Brown et al.*, 3:21-CV-1494-SI, 2021 WL 4846060, at *14 (D. Or. Oct. 18, 2021) (denying motion for temporary restraining order to block enforcement of state vaccination mandate for health care providers, school employees, and state employees, and holding that the right to refuse FDA-authorized vaccine is not a fundamental right); *Valdez v. Grisham*, 21-CV-783 MV/JHR, 2021 WL 4145746, at *5 (D.N.M. Sept. 13, 2021)(applying rational basis test to mandate requiring congregate care facility workers, hospital works, and employees of the Governor's office be fully vaccinated); *Norris v. Stanley*, 1:21-CV-756, 2021 WL 4738827, at *1 (W.D. Mich. Oct. 8, 2021) (denying university employee's motion for temporary restraining order to block vaccine mandate);

*Aaron Kheriaty v. Regents of the Univ. of California, et al.*, SACV2101367JVSKESX, 2021 WL 4714664, at *6 (C.D. Cal. Sept. 29, 2021) (same); *Harris v. Univ. of Massachusetts, Lowell*, 21-CV-11244-DJC, 2021 WL 3848012, at *6 (D. Mass. Aug. 27, 2021) (in considering a policy that required on-campus students to be COVID-19 vaccinated, noting that "Fourteenth Amendment challenges to generally applicable public health measures" call for a "deferential standard"); *Messina, et al., v. The College of New Jersey et al.,* CV2117576ZNQDEA, 2021 WL 4786114, at *9 (D.N.J. Oct. 14, 2021) (finding right to refuse unwanted medical treatment is not absolute and given the verity of the ongoing COVID-19 pandemic and number of COVID-19-related deaths, there is a real and substantial relation between the Mandate and the need to protect the public health); *Children's Health Def., Inc. v. Rutgers State Univ. of New Jersey*, CV2115333ZNQTJB, 2021 WL 4398743, at *6 (D.N.J. Sept. 27, 2021); *Am.'s Frontline Doctors v. Wilcox*, EDCV211243JGBKKX, 2021 WL 4546923, at *4 (C.D. Cal. July 30, 2021).Clearly, COVID-19 vaccination regimes fall well within the State's police power—despite the element of infringement of bodily control inherent in mandatory vaccination programs.

Plaintiffs ignore *Klaassen 2* and cannot distinguish *Jacobson*. Instead, they rely on inapposite cases that neither overturn *Jacobson* nor address the validity of public health mandates. For example, Plaintiffs assert that the Vaccination Policy infringes on their liberty interest in declining unwanted medical treatment under *Cruzan by Cruzan v. Dir., Missouri Dept. of Health*, 497 U.S. 261, 278 (1990) and *Washington v. Harper*, 494 U.S. 210 (1990). These cases involved delicate questions regarding the right to refuse medical treatment but have no application here.

In *Cruzan*, the Court held that Missouri permissibly applied a "clear and convincing" evidence standard to evaluating evidence that an incompetent person would have wished to decline lifesaving medical treatment and nutrition. *Cruzan* has nothing to do with this case because, among other

reasons, the medical care at issue in that case had "no ramifications to the physical health of others." In contrast, "[v]accines address a collective enemy, not just an individual one" and are "implemented as a matter of public health." *Klaassen*, 2021 WL 3073926, at \*22–26; *Massachusetts Correction Officers Federated Union v. Baker*, 21-11599-TSH, 2021 WL 4822154, at \*7 (D. Mass. Oct. 15, 2021) (finding plaintiffs' appeal to *Cruzan* misplaced because "Cruzan's holding … was limited to an individual's choice related to the refusal of lifesaving medical care and nutrition, with no impact on the health of others or the public"). In *Harper,* the Court held that, while bodily autonomy is a significant liberty interest, that interest has limits when it intersects with the health and safety of others. The Court therefore found that the state's policy with respect to involuntarily administering antipsychotic medication to an inmate was a rational mean of serving a legitimate state interest where the inmate posed threat to the health and safety of other inmates and prison staff. 494 U.S. at 225. Nothing in *Harper* conflicts with *Jacobson* or supports Plaintiffs' claim that they have a constitutional right to refuse vaccination under the City's policy.

Plaintiffs' reliance on *Roe v. Wade*, 410 U.S. 113 (1973), *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833 (1992), *Buck v. Bell*, 274 U.S. 200 (1927), or *Korematsu v. United States*, 323 U.S. 214 (1944) fares no better because none of these opinions involve testing or vaccinations or impact public health. Indeed, Plaintiffs' attempt to analogize COVID-19 vaccination and testing to the discredited *Korematsu* decision upholding the forced relocation of U.S. Japanese citizens confirms the lack of any legal basis for their claims. Moreover, the court in *Roe* expressly cited *Jacobson* to illustrate an example of a constitutionally permissible government mandate. *See Roe*, 410 U.S. at 154 ("a State may properly assert important interests in safeguarding health, in maintaining medical standards, and in protecting potential life. . . The privacy right involved, therefore, cannot be said to be absolute. In fact, it is not clear to us that the claim asserted by some

12

amici that one has an unlimited right to do with one's body as one pleases bears a close relationship to the right of privacy previously articulated in the Court's decisions. The Court has refused to recognize an unlimited right of this kind in the past [citing *Jacobson*] (vaccinations)." Again, as the Seventh Circuit found in *Klaassen 2*, *Jacobson* remains controlling law, and squarely holds that vaccine mandates are constitutionally permissible.

### b. Imposing Covid-19 Testing and/or Vaccinations as a Condition of Employment has a Rational Basis

Because the right to be free from a COVID-19 vaccination or testing as a condition of employment does not implicate a "fundamental right", the City's Vaccination Policy survives constitutional due process scrutiny as long as it has a "rational basis." *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997); *Sweeney v. Pence*, 767 F.3d 654, 668 (7th Cir. 2014). Under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Courts only invalidate governmental actions if there is no rational relationship between the action and "some legitimate government purpose." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1010 (7th Cir. 2019). Government actions are generally valid as long as the rational basis is plausible. *See id.* "Rational-basis review tolerates overinclusive classifications, underinclusive ones, and other imperfect means-ends fits." *Id.* The standard imputes a "strong presumption of validity" on the government action. *Id.*

Here, the City has a compelling interest in the protection of public health in the face of the COVID-19 pandemic. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest…."). The Vaccination Policy was enacted in response to number of COVID-19 cases and hospitalizations throughout Illinois and is therefore rationally related to the protection of public health. Plaintiffs'

13

assertions that weekly testing and vaccination requirements are unrelated to the promotion of public health because those who have natural immunity are superior to those who have not been vaccinated are wholly unsupported. Given the highly contagious nature of the Delta variant and its proven ability to inflict severe illness, hospitalization, long-term health consequences, and death, the CDC has recommended vaccinations for everyone.

The fact that the City's policy differs from the Governor's Executive Order as to type of employees covered, testing frequency, or the lack of a testing option after January 1, 2022 does not call into question the constitutionality of the City's Policy. Rational basis review does not require uniformity among the policies adopted at different levels of government to address legitimate governmental interests, and it "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Helen v. Doe*, 509 U.S. 312, 319 (1993) *citing FCC v. Beach Communications, Inc.,* 508 U. S. 307, 313 (1993). Nor does the rational basis review authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *New Orleans v. Dukes*, 427 U. S. 297, 303 (1976) (per curiam). When elected officials "act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, (2020) (*citing Marshall v. U.S.*, 414 U.S. 417, 247 (1974)). Unless those limits are "exceeded, they should not be subject to second-guessing by an 'unrelated federal judiciary,' which lacks the background, competence and expertise to assess public health and is not accountable to the people." *Id.*

The City's policy is based upon the best available medical evidence and is amply justified by the need to protect both the general public and City employees from the unnecessary risk of exposure and threat of hospitalization and death resulting from COVID-19. The public health

14

justification for the City's measured response to the pandemic is frankly overwhelming. *See Dixon*, 2021 WL 4750187, at \*5 (finding that the rise of the COVID-19 Delta variant, the potential for the disease to overwhelm healthcare infrastructure, and the increased prevalence of breakout cases provide rational justifications for a vaccine mandate); *Klaassen*, 2021 WL 3073926, at \*27 (noting that, in light of the fact that the "vaccination campaign has markedly curbed the pandemic," "University insisting on vaccinations for its campus communities," thereby "stemming illness, hospitalizations, or deaths at the university level[,] hardly proves irrational"); *Harris*, 2021 WL 3848012, at \*6 (holding the university's decision to mandate vaccines was based "upon both medical and scientific evidence and research and guidance, and thus is at least rationally related to" the "legitimate interests" of curbing the spread of COVID-19 and "returning students safely to campus"); *Wilcox*, 2021 WL 4546923, at \*3–5 (holding that "there is clearly a rational basis for defendants to institute the Policy requiring vaccination" to further the goal of facilitating the "protection of the health and safety of the University community,"); *Messina,* 2021 WL 4786114, at \*9 (finding a real and substantial relation between the Mandate and the need to protect the public health); *Valdez*, 2021 WL 4145746, at \*7 (D.N.M. Sept. 13, 2021).

Rational basis review is a relatively low bar, one that the Vaccination Policy easily clears. Accordingly, Plaintiffs' TRO must be denied because Plaintiffs are unlikely to succeed on the merits of their substantive due process claim. *See Beckerich v. St. Elizabeth Med. Ctr.*, CIV 21-105-DLB-EBA, 2021 WL 4398027, at \*3 (E.D. Ky. Sept. 24, 2021) (denying TRO to prevent employer from enforcing a vaccine mandate); *Norris*, 2021 WL 3891615 (denying an employees' petition for injunctive relief against COVID-19 vaccine mandate based on *Jacobson*); *Maniscalco v. New York City Dep't of Educ.*, 21-CV-5055 (BMC), 2021 WL 4344267, at \*1–2 (E.D.N.Y. Sept. 23, 2021) (denying preliminary injunction to prevent vaccine mandate because there was no

15

likelihood of success on the merits due to the rational basis for the mandate); *Wilcox*, 2021 WL 4546923, at *4 (denying TRO to prevent employer from enforcing COVID-19 mandate, which required proof of vaccination subject to subject to limited exemptions based on medical exception, disability, or religious exemptions); *Messina*, 2021 WL 4786114, at *1 (denying TRO to prevent university from implementing COVID vaccine mandate, which requires all students be fully vaccinated).

### 2. The Vaccination Policy Does Not Violate Plaintiffs' Procedural Due Process Rights

Plaintiffs also argue that the City's Vaccination Policy violates their right to procedural due process because it was "unilaterally announced" by the Mayor's Office and "fundamentally changes the nature of Plaintiffs' contracts'" with the City. Plaintiffs cite no case law or evidentiary support for these assertions, and they have no basis in fact or law.

First, the City's Municipal Code vests the Mayor with broad authority to "supervise the conduct of all the officers of the city." Chicago Mun. Code 2-4-020. The Mayor's "administrative officer, subject to the direction and control of the mayor, shall supervise the administrative management of all city departments, boards, commissioners and other city agencies established by this code and the laws of the state." *Id.*

Plaintiffs offer no factual allegations regarding their "contracts" with the City and no evidence for their assertion that the City's Vaccination Policy violates those contracts. With respect to bargaining unit employees, including firefighters, Section 4 of the Illinois Public Labor Relations Act gives the City broad authority over matters of inherent managerial policy, providing that "Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as … standards of services …." 5 ILCS 315/4. Likewise, the City's collective bargaining agreements with each of its unions include broad management rights

16

clauses that permit the City to adopt a wide range of supervisory measures, including the Vaccination Policy at issue here. To the extent that there is any disagreement on this front, Plaintiffs and their exclusive bargaining representatives have legal recourse under Illinois labor law.

From a constitutional standpoint, because the Vaccination Policy "is generally applicable" to all City employees, Plaintiffs "are not entitled to [process] above and beyond the notice provided by the enactment and publication of the [Vaccination Policy] itself." *Harris*, 2021 WL 3848012, at *5; *See also U.S. v. Locke*, 471 U.S. 84, 108 (1985) ("In altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements."); *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) (It is black letter law that a person is not entitled to procedural due process protections against government action that is legislative in nature); *Hopkins Hawley LLC v. Cuomo*, 518 F. Supp. 3d 705, 714 (S.D.N.Y. 2021) (governor's executive orders in response to COVID-19 did not violate procedural due process as it was clearly legislative given that it applied generally to all residents and applied prospectively); *Vill. of Orland Park v. Pritzker*, 475 F. Supp. 3d 866, 883 (N.D. Ill. 2020) (finding no constitutional procedural due process right to state-mandated procedures); *4 Aces Enterprises, LLC v. Edwards,* No. CV 20-2150, 2020 WL 4747660 (E.D. La. Aug. 17, 2020), *aff'd sub nom. Big Tyme Invs., L.L.C. v. Edwards*, No. 20-30526, 2021 WL 118628 (5th Cir. Jan. 13, 2021) (finding procedural due process was not required: The COVID-19 pandemic demanded that Governor Edwards take swift action to slow the virus' spread).

### 3. The City's Vaccination Policy Does Not Violate the Free Exercise Clause

2952989.1

When a religiously neutral and generally applicable law incidentally burdens free exercise rights, the law need only be rationally related to a legitimate governmental interest to withstand a constitutional challenge. *See Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1876 (2021) (*citing Employment Div., Dept. of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878–82 (1990)). When a law is not neutral or generally applicable, it must be narrowly tailored to achieve a compelling governmental interest. *Id*. at 1881 (*citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)).

To be neutral, a law may not single out religion or religious practices. *See Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 532–534. "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton*, 141 S. Ct. at 1877. To be generally applicable, a law may not selectively burden religiously motivated conduct while exempting comparable secularly motivated conduct or "prohibit religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 542–46.

The Vaccination Policy is facially neutral. It applies equally to all employees, regardless of religious affiliation or belief. The Vaccination Policy does not single out or burden any religious belief. To the contrary, it provides exemptions for legitimate religious beliefs. It is generally applicable as it does not require the City to exercise discretion in evaluating individual requests for exemptions. Unlike the contract as issue in *Fulton*, which permitted exceptions to the requirement at the sole discretion of the Commissioner, the Vaccination Policy does not include a mechanism of entirely discretionary exceptions.

Plaintiffs' reliance on *Cuomo* is misplaced. In *Cuomo,* the Supreme Court addressed whether a state could prohibit religious gatherings while allowing secular activities involving everyday

18

2952989.1

commerce and entertainment. It concluded that those activities posed a similar risk to physical health (by risking spread of the virus) as the prohibited religious activities. *Cuomo*, 141 S. Ct. at 66–68. Here, the City's policy allows for *bona fide* religious exemptions, so this is not a case in which the City is denying religious exemptions while approving "other comparable exemptions."

Similarly, the Vaccination Policy is materially different from the policy in *Dahl v. Bd of Trustees of Western Michigan Univ.* In *Dahl*, the vaccine mandate only applied to student-athletes, not the thousands of other students with whom the athletes would live, study, eat, and socialize with. 2021 WL 4618519, at *5 (6th Cir. Oct. 7, 2021). The court found that the policy was underinclusive to achieve the university's compelling interest in preventing the spread of COVID because it still permitted the vast majority of students to remain unvaccinated. Here, the Policy is not underinclusive because it encompasses all City employees.

The Vaccination Policy is most akin to the vaccine mandate at issue in *Klaassen*. There the mandate applied to all students and provided for a religious exemption to the requirement. *Klaassen*, 2021 WL 3073926, at *25, *aff'd*, 7 F.4th 592 (7th Cir. 2021). The court found the vaccine mandate to be a neutral rule of general applicability. *See also Does 1-6 v. Mills*, 21-1826, 2021 WL 4860328 (1st Cir. Oct. 19, 2021) (finding no Free Exercise Clause violation to Maine's COVID-19 vaccination mandate); *Wilcox*, 2021 WL 4546923, at *4 (finding University's COVID-19 policy, which requires proof of full vaccination subject to limited exemptions based on medical exception, disability, or religious exemptions to be neural and generally applicable and therefore subject to a rational basis standard). The Policy is generally applicable, and for the reasons stated above, satisfies the rational basis review.

For these reasons, the Plaintiffs' TRO must be denied because Plaintiffs are unlikely to succeed on the merits of their Free Exercise Clause claim. *See Klaassen*, 2021 WL 3073926, at

*25, *aff'd*, 7 F.4th 592 (7th Cir. 2021); *Does 1-6*, 2021 WL 4860328; *Wilcox*, 2021 WL 4546923, at *4.

### 4. The City's Vaccination Policy does not Violate the Equal Protection Clause

Although Plaintiffs' Motion does not explicitly rely on the Equal Protection theory, it does allude to it by arguing that the mandate "discriminates arbitrarily against those with only natural immunity in favor of those with only vaccine immunity." The Equal Protection Clause generally protects people who are treated differently because of membership in a suspect class or who have been denied a fundamental right. *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 601 (7th Cir. 2016). Unless a classification burdens a fundamental right or targets a suspect class (i.e., race, religion, national origin or alienage), courts "presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 911 (7th Cir. 2012).

As discussed above, the Vaccination Policy does not burden a fundamental right. Nor does it target a suspect class, as it does not categorize persons based on suspect classifications, such as race and national origin. Accordingly, the Court should apply a rational basis review, asking whether the City's classification bears a rational relation to some legitimate end. As explained above in the context of Plaintiffs' substantive due process claims, the Vaccination Policy meets the rational basis test. The Vaccination Policy, including its classification of individuals as to whom vaccination requirements apply, is grounded in medicine and science, and thus is rationally related to the City's legitimate purpose of protecting its employees and Chicagoans "against an epidemic of disease [that] threatens the safety of its members." *Jacobson*, 197 U.S. at 27. Accordingly, Plaintiffs are unlikely to succeed on the merits of their equal protection claims.

20

### 5. The City's Vaccination Policy Does Not Violate the Health Care Right of Conscience Act

Plaintiffs assert that the City's Vaccination Policy violates their rights under the Illinois Health Care Right of Conscience Act ("HCRCA"). Plaintiffs do not have a likelihood of success on this claim.

First, the HRCRA, was intended to protect health care providers and patients from discrimination based on religious and/or conscientious beliefs related to abortion and contraception. 80th Ill. Gen. Assem., House Proceedings, May 17, 1977 at 94 (statements of Representative Kucharski); 80th Ill. Gen. Assem., Senate Proceedings, June 22, 1977 at 377 (statements of Senator Rock) (attached as Exhibit D). The cases cited by Plaintiffs apply the Act solely to health care providers objecting to performing abortion related services. *Vandersand v. Wal-Mart Stores, Inc.*, 525 F. Supp. 2d 1052 (C.D. Ill. 2007) (applying the HCRCA to a pharmacist who objected to dispensing emergency contraceptives); *Rojas v. Martell*, 2020 IL App (2d) 190215 (health department did not violate the HCRCA by transferring licensed practical nurse to position where she would not have to dispense birth control). Plaintiffs cite no case law or other legal authority applying the statute to COVID 19 vaccination or testing.

Moreover, even if the HCRCA applies to the refusal to submit to COVID-19 vaccinations or testing, the City's Policy complies with the statute. The City is accepting and reviewing exemption requests that rely on this statute as a basis for an exemption, (Ex. B, ¶ 9), and no Plaintiff has been wrongfully denied an exemption under the HRCRA.

The HCRCA provides in relevant part that:

> It shall be unlawful for any person, public or private institution, or public official to discriminate against any person in any manner, including but not limited to, licensing, hiring, promotion, transfer, staff appointment, hospital, managed care entity, or any other privileges, because of such person's conscientious refusal to receive, obtain, accept, perform, assist, counsel, suggest, recommend, refer or

21

participate in any way in any particular form of health care services contrary to his or her conscience.

745 ILCS 70/5.

The "HCRCA" defines "conscience" entitled to protection under the statute as "a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." 745 ILCS 70/3(e). This definition is substantively identical to the definition of a sincere "religious" belief that courts apply in determining whether an employee is entitled to an accommodation of a religious belief under Title VII of the Civil Rights Act, which asks is whether "a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God." *See Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013).

In *Free v. Holy Cross Hosp.*, 153 Ill. App. 3d 45, 49 (1st Dist. 1987), the court rejected the HCRCA claim of a nurse who alleged she was terminated because as an act of "conscience she refused to evict a bedridden patient from the hospital." The court held that the HCRCA did not protect "ethical concerns as opposed to sincerely held moral convictions arising from religious beliefs." *Id.*

Although no reported decision has applied the HCRCA to vaccinations, the Third Circuit Court of Appeals, applying the substantively identical definition of a "religious belief" under Title VII held that an employee failed to state an actionable religious discrimination claim when an employer refused to grant an employee a religious exemption from a flu vaccine mandate. *See Fallon v. Mercy Catholic Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017). The plaintiff in that case described his protected "religious belief" as follows:

> He believes that "one should not harm their [sic] own body and strongly be-
> lieves that the flu vaccine may do more harm than good." He concludes that if
> he yielded to coercion and consented to the hospital mandatory policy, he would
> violate his conscience as to what is right and what is wrong. Consequently, he
> must follow his conscience and refuse the influenza vaccine.

*Id.* The court held that this was not a "religious belief" protected by Title VII, reasoning that

the plaintiff:

> simply worries about the health effects of the flu vaccine, disbelieves the scien-
> tifically accepted view that it is harmless to most people, and wishes to avoid
> this vaccine. In particular, the basis of his refusal of the flu vaccine—his concern
> that the flu vaccine may do more harm than good—is a medical belief, not a
> religious one. He then applies one general moral commandment (which might
> be paraphrased as, "Do not harm your own body") to come to the conclusion
> that the flu vaccine is morally wrong. This one moral commandment is an "iso-
> lated moral teaching"; by itself, it is not a comprehensive system of beliefs about
> fundamental or ultimate matters.

*Id.*

Because the standards for identifying a protected "religious belief" under Title VII and "con-

science" under the HCRCA are substantively identical, the City is using the same process and

standard for HCRCA exemption requests as religious exemption requests. Ex. B, ¶ 9. To date, the

only Plaintiffs who have been denied an exemption sought under either statute submitted the fol-

lowing form letter that did nothing other than quote the HCRCA definition of "conscience":

> Please be advised that, pursuant to the Illinois Health Care Right of Conscience
> Act, 745 ILCS70 ("Act"), I have a genuine and sincere wish to be exempt from
> the   . . .vaccine mandate. This request is based on my deeply and sincerely held
> religious, moral , and/or philosophical convictions that are based on belief in and
> relation to God, or which, though not so derived, arises from a place my life that
> is parallel to that filled by God among adherents to religious faiths. On the basis
> of my moral convictions, I do not believe that health and disease should be con-
> trolled by vaccination, or, furthermore, that governments should coerce citizens
> into receiving medical interventions. My refusal to accept a mandatory booster
> vaccine is not only grounded in my conscience, but also sanctioned and permit-
> ted by this law.

*See* Ex. B, ¶ 10, 11. The fact that these five individuals are among several thousand other

23

employees who submitted an identical letter confirms that they lack a sincere belief that entitles them to protection under the HCRCA and justifies denial of the requests in and of itself. Ex. B, ¶ 10, 13. Moreover, at best, these form letters articulate a mere moral or political conviction and not a sincerely held set of moral convictions "arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." *See Free*, 153 Ill. App. 3d at 49. Forty Plaintiffs have submitted religious and/or HCRCA exemption requests that are still being processed, and Plaintiffs provide no facts or evidence establishing that the City has denied or will deny well founded exemption requests. Accordingly, Plaintiffs cannot show a likelihood of success on their HCRCA claims.

### C. Plaintiffs Cannot Demonstrate Irreparable Harm

"Irreparable harm" means harm that "'cannot be repaired' and for which money compensation is inadequate." *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020), *quoting Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997). The moving party must show that irreparable harm is likely in the absence of injunctive relief. The mere possibility of harm is insufficient to justify a preliminary injunction or TRO. *Id.*

Plaintiffs contend that they have established irreparable harm because "violations of individuals' constitutional rights constitute irreparable harm as a matter of law." Document # 4 at 14. As discussed in detail above, Plaintiffs are not likely to succeed on the merits of their constitutional claims, and therefore have not established irreparable harm based upon purported violation of their constitutional rights.

The record does not support other purported harms that Plaintiffs claim will result in the absence of an injunction. Plaintiffs' assertion that "the vaccines pose potential harms to Plaintiffs"

misconstrue available scientific evidence. First, nobody is forcing Plaintiffs to be vaccinated. Plaintiffs can seek exemptions from the City's Vaccination Policy for religious and medical reasons, as discussed above. If any of the Plaintiffs are found not to be eligible for an exemption, the available scientific evidence strongly suggests that Plaintiffs are *far* more likely to benefit from vaccination than to suffer any adverse health effects. *See* Ex. A, ¶¶ 7-18, 23-27. Crucially, Plaintiffs have not offered evidence that *any* public health expert recommends against vaccination, even for individuals previously infected with COVID-19.

Further, if Plaintiffs decline to be vaccinated notwithstanding the clear evidence supporting vaccination, at worst, they face a loss of employment and income. Any harm resulting from loss of employment is not "irreparable," as Plaintiffs could, if they prevailed, be ordered reinstated with back pay and other damages to make them whole for any loss, in the unlikely event that a court ultimately finds that their constitutional or statutory rights were infringed in any manner. *Ciechon v. City of Chicago*, 634 F.2d 1055, 1057–58 (7th Cir. 1980) (district court erred in finding that loss of wages, employee benefits, and opportunity for promotion during suspension constituted irreparable injury, given the availability of proceedings to challenge the suspension and recover back pay and other compensatory relief).

Those Plaintiffs who seek and are granted exemption from the City's vaccination policy also cannot show irreparable harm. At most, they will have to submit to twice-weekly testing. While they may find testing inconvenient, it does not rise to the level of irreparable harm. *Klaassen 1*, 2021 WL 3073926 at *42 (being required to submit to COVID-19 testing did not constitute irreparable harm for purposes of preliminary injunction).

### D. The Balance of Equities and Public Interests Strongly Favor Denial of the Injunction

Plaintiffs emphasize their right to bodily integrity and to make choices about their own health.

25

Nobody denies that these are important values worthy of protection. However, in focusing exclusively on their own rights, Plaintiffs ignore impact of their choice to refuse vaccination upon others, including their coworkers, coworkers' families, and members of the public with whom they come in contact through their work for the City. City employees, particularly first responders in the fire and police departments, go into homes, businesses, and other public places in the City on a daily basis. They interact with members of the public in a wide range of settings and circumstances – often in situations that make COVID-19 mitigation measures difficult or impossible, or otherwise pose a heightened risk of spreading the virus. Ex. A, ¶ 13. Many of the residents with whom City employees come into contact are not vaccinated and in many cases do not even have the option of getting vaccinated due to age, medical condition, or other factors. In many cases, members of the public do not choose these encounters. They come into contact with City employees as a result of emergencies or the City's necessary exercise of its governmental responsibilities. *Id*. ¶ 12, 13.

In contrast, Plaintiffs made a choice to enter public service. Having done so, they undertook certain obligations: following instructions from their supervisors; obeying dress code policies and uniform rules; reporting for work when required; refraining from using drugs or alcohol in a manner that violates City policy; complying with the City's ethical rules; *etc*. The City's Vaccination Policy is fundamentally no different than these requirements. Nothing in the Constitution precludes the City from adopting reasonable requirements for its employees where it deems such measures necessary to protect the health and safety of employees and the public.

## IV. Conclusion

Plaintiffs' request for a temporary restraining order should be denied. The City of Chicago and the rest of the world remain locked in the grip of a deadly pandemic. The Supreme Court and

2952989.1

Seventh Circuit have unequivocally affirmed that state and local governments may impose vaccination requirements both on citizens generally and as a condition of participating in certain aspects of public life, including employment. Plaintiffs have shown no evidence that they will be harmed if required to comply with the City's Vaccination Policy. Conversely, granting Plaintiffs' motion is highly likely to result in additional unnecessary illness, hospitalization, and death from COVID-19. Defendants therefore respectfully ask the Court to deny Plaintiffs' motion for a temporary restraining order in its entirety.

Dated: October 25, 2021

Respectfully submitted,

**THE CITY OF CHICAGO**

By:＿＿＿/s/Michael A. Warner, Jr.＿＿＿
             One of Its Attorneys

Celia Meza
Corporation Counsel
City of Chicago – Department of Law
Celia.Meza@cityofchicago.org
City of Chicago – Department of Law
121 N. LaSalle Street – Room 600
Chicago, IL 60602
(312) 744-0220

Michael A. Warner, Jr. (maw@franczek.com)
William R. Pokorny (wrp@franczek.com)
Erin K. Walsh (ekw@franczek.com)
Jason Patterson (rjp@franczek.com)
FRANCZEK P.C.
300 S. Wacker Dr., Ste. 3400
Chicago, Illinois 60606
(312) 986-0300
(312) 986-9192 (Fax)

2952989.1