IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT TROOGSTAD et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 21 C 5600 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| THE CITY OF CHICAGO and | ) | |
| GOVERNOR JAY | ) | |
| ROBERT PRITZKER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Various employees of the City of Chicago have filed this case to challenge Governor J.B. Pritzker's Executive Order 2021-22 as well as the City's mandatory vaccination policy. Along with the complaint, Plaintiffs filed a motion for a temporary restraining order. The Court denied that motion on October 29, 2021. This Memorandum Opinion and Order memorializes that ruling.

## I. Factual Background

In response to the ongoing COVID-19 pandemic and the rise of the significantly more transmissible Delta variant of the virus, Illinois Governor J.B. Pritzker signed Executive Order 2021-22 ("EO 2021-22") on September 3, 2021. EO 2021-22

mandates that all health care workers[1] be fully vaccinated[2] against COVID-19 or submit to weekly COVID-19 testing by September 19, 2021. Def. Gov. J.B. Pritzker's Resp. Opp'n Pls.' Pet. TRO ("Def. J.B. Pritzker's Resp.") Ex. A (EO 2021-22) § 2(a)(i), ECF No. 14. The order provides exemptions to the vaccination requirement for persons for whom vaccination is "medically contraindicated" and for whom vaccination would require violating "a sincerely held religious belief, practice, or observance." *Id.* § 2(e). Persons who qualify for either exemption must submit to weekly testing. *Id.*

Following Governor Pritzker's order, the City of Chicago announced its own mandatory vaccination policy ("City Vaccination Policy"). Unlike EO 2021-22, the

---

[1]    EO 2021-22 defines "Health Care Worker" as

> any person who (1) is employed by, volunteers for, or is contracted to provide services for a Health Care Facility, or is employed by an entity that is contracted to provide services to a Health Care Facility, and (2) is in close contact (fewer than 6 feet) with other persons in the facility for more than 15 minutes at least once a week on a regular basis as determined by the Health Care Facility.

EO 2021-22 § 2(a)(i). (Sept. 3, 2021). It defines "Health Care Facility" as

> any institution, building, or agency, or portion of an institution, building or agency, whether public or private (for-profit or nonprofit), that is used, operated or designed to provide health services, medical treatment or nursing, or rehabilitative or preventive care to any person or persons.

*Id.* § 2(a)(ii). EO 2021-22 also implements vaccination mandates for primary and secondary school teachers and personnel; higher education teachers, personnel, and students; and employees at "State-owned or operated congregate facilities." *Id.* §§ 3–5.

[2]    Specifically, EO 2021-22 mandates that all covered persons "have, at a minimum, the first dose of a two-dose COVID-19 vaccine series or a single-dose COVID-19 vaccine by September 19, 2021, and the second dose of a two-dose COVID-19 vaccine series within 30 days following administration of their first dose in a two-dose vaccination series." *Id.* § 2(a)(i).

City's vaccine mandate covers all City employees, *see* Def. City of Chicago's Resp. Pls.' Emergency Pet. TRO ("Def. City's Resp."), Ex. B1 (City Vaccination Policy) § II, ECF No. 18, requiring them either to be fully vaccinated by October 15, 2021, or submit to biweekly COVID-19 testing. *Id.* § IV.A–B. And unlike EO 2021-22, the City Vaccination Policy contains a sunset provision that ends the option to submit to biweekly testing as an alternative to vaccination on December 31, 2021. *Id.* After that date, full vaccination (or an approved medical or religious exemption) will become a "condition of employment." *Id.* § IV.B.

Plaintiffs are employees of the City of Chicago who work for the City's Fire, Water, and Transportation Departments. *See* Compl. ¶¶ 5–139, ECF No. 1. Some Plaintiffs allege that they have already contracted COVID-19, while others do not believe they have had the virus. *See id.* Forty-five Plaintiffs have applied for a religious exemption from the City Vaccination Policy. *See* Def. City's Resp., Ex. B, Owen Decl. ¶ 13. Five of these exemptions have been denied, and the rest are still pending as of the date of the October 29, 2021 hearing. *Id.*

Plaintiffs oppose EO 2021-22 and the City Vaccination Policy because they believe requiring vaccination and testing as a condition of continued employment violates their constitutional rights and Illinois law. They bring claims against both Governor Pritzker and the City, alleging that EO 2021-22 and the City Vaccination Policy violate their substantive due process, procedural due process, and free exercise rights. Plaintiffs also bring claims against both Defendants under the Illinois Healthcare Right of Conscience Act, 745 Ill. Comp. Stat. 70/1 *et seq.*

3

To prevent the orders from taking effect, Plaintiffs seek a temporary restraining order that:

1. Enjoins the Governor from enforcing EO 2021-22's requirement that all health care workers, firefighters, EMTs, and paramedics be fully vaccinated against COVID-19, until the Court rules on their motion for a preliminary injunction or for the duration of the lawsuit;

2. Enjoins the City of Chicago from enforcing the City Vaccination Policy, which requires all City employees to be vaccinated against COVID-19 or submit to biweekly testing, and will require vaccination as a condition of employment, until the Court rules on their motion for a preliminary injunction or for the duration of the lawsuit; and

3. Enjoins the Governor and the City from terminating or taking disciplinary action against employees who refuse to be vaccinated or submit to COVID-19 testing, until the Court rules on their motion for a preliminary injunction or for the duration of the lawsuit.

## II. <u>Legal Standard</u>

As the Seventh Circuit has stated repeatedly, a temporary restraining order or a preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008)). And to obtain such drastic relief, the party seeking the relief—here, the Plaintiffs—carries the burden of persuasion by a clear showing. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

When considering a motion for temporary restraining order, the Court must employ the same test as a request for a preliminary injunction: the plaintiff has the burden to show (1) a likelihood of success on the merits; (2) irreparable harm; and (3)

that the balance of the equities and the public interest favors emergency relief. Fed. R. Civ. P. 65(b)(1)(A); *see Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 22 (2008).

The Court then weighs these factors in what the Seventh Circuit has called a "sliding scale" approach. That is, "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) (internal quotation marks omitted). And "[w]here appropriate, this balancing process should also encompass any effects that granting or denying the preliminary injunction would have on nonparties (something courts have termed the 'public interest')." *Id.*

Additionally, the Court notes that its ruling is based upon the factual record currently before it on October 29, 2021. The complaint and motion were filed on October 21, 2021. The responses were filed on October 25, 2021, and Plaintiffs' reply brief was filed on October 28, 2021. Neither side has had an opportunity for discovery regarding the various factual and scientific contentions raised in the parties' briefs, and a more fulsome factual record may shed additional light on some of the arguments raised in the case.

Furthermore, the Court notes that Plaintiffs' motion papers do not precisely define the scope of the right to bodily integrity upon which they rely. Most often, Plaintiffs rely on a right to be free from having to take vaccines. At others, Plaintiffs appear to object to being forced to perform self-administered COVID tests as part of one's employment. The Court focuses here on the first, because that is where the

parties aim most of their arguments, but the Court believes its rationale disposes of the second as well.[3]

### III. <u>Analysis</u>

### I.     Likelihood of Success on the Merits

The first factor— "likelihood of success on the merits"—requires the plaintiff to make a "strong showing that she is likely to succeed on the merits" of her claim; a mere "possibility of success is not enough" to warrant emergency relief. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). This showing "does not mean proof by a preponderance," but requires the plaintiff to provide facts and legal theories supporting "the key elements of its case." *Id.* at 763. The Court will address each of Plaintiffs' claims in turn.

### A.     Substantive Due Process Claim

Plaintiffs first allege that EO 2021-22 and the City Vaccination Policy violate substantive due process. A substantive due process claim requires the plaintiff to "allege that the government violated a fundamental right or liberty." *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019). The violation must also be "arbitrary or irrational," because "substantive due process protects against only the most egregious and outrageous government action." *Id.*

According to Plaintiffs, requiring them to be vaccinated and submit to regular testing as a condition of employment infringes their fundamental right to bodily

---

[3]     During the last hearing, Plaintiffs' counsel also talked about the right to be free from having to disclose one's medical information to one's employer. But this is nowhere to be found in Plaintiffs' pleadings or motion papers, and so the Court does not consider it to be raised in this motion.

autonomy. More specifically, Plaintiffs argue that the vaccination and testing requirements violate the fundamental right to refuse unwanted medical treatment as articulated in *Cruzan v. Director, Missouri Department of Health,* 497 U.S. 261 (1990) and *Washington v. Harper*, 495 U.S. 210 (1990). From this, they assert that, because they have identified a fundamental right at stake, the Supreme Court's decisions in *Roe v. Wade*, 410 U.S. 113 (1973) and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), require the Court to apply strict scrutiny to the vaccination orders. Plaintiffs' substantive due process argument is not likely to succeed on the merits for several reasons.

### 1. The Seventh Circuit's *Klaassen* decision

As an initial matter, Plaintiffs' argument that the Defendants' vaccine orders infringe their fundamental right to bodily autonomy runs squarely in the face of the Seventh Circuit's recent decision in *Klaassen v. Trustees of Indiana University*, 7 F.4th 592 (7th Cir. 2021). There, the Seventh Circuit upheld Indiana University's recent vaccination, masking, and testing requirements against a challenge from a group of students, who asserted nearly identical substantive due process claims. *See id.* at 593; *Klaassen v. Trs. of Ind. Univ.*, __ F. Supp. 3d __, 2021 WL 3073926, at *22 (N.D. Ind. July 18, 2021) ("The students assert a right to refuse the vaccine, saying the mandate infringes on their bodily autonomy and medical privacy."). The students, like Plaintiffs here, argued that the vaccine requirement comprised an invasion of bodily privacy that merited strict scrutiny. *Klaassen*, 2021 WL 3073926, at *17.

The Seventh Circuit in *Klaassen* soundly rejected that argument. It instructed that the Supreme Court's decision in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), "shows that plaintiffs lack" a substantive due process right not to be vaccinated against COVID-19. *Klaassen,* 7 F.4th at 593. The court further noted that the University's testing requirements "cannot be constitutionally problematic" considering the sweeping vaccine mandates that *Jacobson* authorized. *Id.*

Plaintiffs' attempts to distinguish *Klaassen* are unconvincing. Plaintiffs first assert that *Klaassen* is outdated because the pandemic is less severe now than it was when the case was decided and because "*Klaassen* . . . does not address the newest information . . . about vaccine efficacy, or the superiority of natural immunity to vaccine immunity." *See* Pls.' Reply Supp. Prelim. Inj. ("Pls.' Reply") at 10, ECF No. 25. But the severity of the pandemic at Indiana University did not materially factor into the Seventh Circuit's analysis, and the Court is not convinced that *Klaassen* would have come out differently had COVID-19 cases been at current levels. Indeed, other courts to consider the same question in more recent weeks have come to the same conclusion. *See, e.g.*, *We The Patriots USA, Inc. v. Hochul*, __ F.4th __, 2021 WL 5121983, at *18 (2d Cir. Nov. 4, 2021).

Furthermore, the questions Plaintiffs raise about the efficacy of vaccines as compared to natural immunity do not persuade the Court that Defendants' policies lack a rational basis. Nor does the Court believe the comparative efficiencies of vaccine immunity versus natural immunity (at least, as depicted on this record) would have altered the Seventh Circuit's holding.

Plaintiffs next argue that *Klaassen*, which addressed a vaccination requirement for university students, ought not apply to vaccination requirements for public employees because "the determination to terminate or not to renew a public employment contract cannot be premised upon the employee's protected activities." Pls.' Reply at 12 (quoting *Perry v. Sindermann*, 408 U.S. 593 (1972)). But this argument misinterprets *Klaassen*. *Klaassen* did not hold that *Jacobson* permitted the university to violate the fundamental right of students not to be vaccinated. Instead, *Klaassen* held that no such substantive due process right exists in the first instance. *See Klaassen*, 7 F.4th at 593 (noting that the students' "argument depends on the existence of a fundamental right ingrained in the American legal tradition. Yet *Jacobson* . . . shows that plaintiffs lack such a right.").

Plaintiffs alternatively argue that *Jacobson*, which figured heavily in *Klaassen*'s analysis, should not guide the Court's due process analysis because "it is part of a bygone era in American jurisprudence" akin to the Supreme Court's discredited decisions in *Buck v. Bell*, 274 U.S 200 (1927), and *Korematsu v. United States*, 323 U.S. 214 (1944). Pls.' Mot. TRO ("TRO Mot.") at 5, ECF No. 4. But the Supreme Court has given no indication that *Jacobson* is void, and this Court cannot ignore binding precedent simply because Plaintiffs find it to be antiquated. Indeed, just this past year, Chief Justice Roberts cited favorably to *Jacobson*. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (mem.) (Roberts, C.J., concurring in denial of application for injunctive relief). What is more, the Seventh Circuit has cited *Jacobson* numerous times throughout the course of the

pandemic as a yardstick for evaluating constitutional challenges to governmental responses to COVID-19. *See Democratic Nat'l Comm. v. Bostelmann,* 977 F.3d 639, 643 (7th Cir. 2020) (citing *Jacobson* for the proposition that "[d]eciding how best to cope with difficulties caused by disease is principally a task for the elected branches of government"); *Ill. Republican Party*, 973 F.3d at 763 ("The district court appropriately looked to *Jacobson* for guidance, and so do we."); *Elim Romanian Pentecostal Church v. Pritzker,* 962 F.3d 341, 347 (7th Cir. 2020) (citing *Jacobson*, 197 U.S. 11).[4]

### 2.    Whether a Fundamental Right Exists

But, even if the Seventh Circuit's decision in *Klaassen* did not command this result, the Court concludes that Plaintiffs have not shown that the vaccine and testing orders in question implicate their fundamental right to bodily autonomy.

Plaintiffs' reliance upon the Supreme Court's right-to-privacy cases does not support their claim that Defendants' policies infringe a fundamental right.   As Defendants point out, the issues at stake in *Roe, Casey, Cruzan,* and *Harper* were "rights to individual bodily autonomy [that] do not impact the public health."  Def. J.B. Pritzker's Resp. at 19.  When an individual's behavior directly affects the health

---

[4]      Numerous other circuit courts and district courts across the country have done the same. *See, e.g.*, *We The Patriots*, 2021 WL 5121983, at *15, *18 & *18 n.35 ("*Jacobson* is still binding precedent." *Id.* at *18 n.35); *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 466–68 (5th Cir. 2021); *Robinson v. Att'y Gen.,* 957 F.3d 1171, 1179, 1182 (11th Cir. 2020); *7020 Ent., LLC v. Miami-Dade Cnty.*, 519 F. Supp. 3d 1094, 1105 (S.D. Fla. 2021); *Tandon v. Newsom*, 517 F. Supp. 3d 922, 949 (N.D. Cal. 2021); *Mass. Corr. Officers Federated Union v. Baker,* __ F. Supp. 3d __, 2021 WL 4822154, at *6 (D. Mass. Oct. 15, 2021) (applying *Jacobson* to reject plaintiffs' substantive due process challenges to a similar vaccine mandate for Massachusetts state employees).

and welfare of others in the community, she cannot rely on the Supreme Court's longstanding protection of "intimate and personal choices," *Casey*, 505 U.S. at 851, to the utter exclusion of all other interests. *See Cassell v. Snyders*, 990 F.3d 539, 550 (7th Cir. 2021) (noting that while "[a] person's ability to make private choices affecting his or her own body and health is fundamental to the concept of individual liberty that our Constitution protects," plaintiffs who challenged capacity limits on religious services during the peak of the pandemic "[were] not asking to be allowed to make a self-contained choice to risk only their own health"); *see also We The Patriots,* 2021 WL 5121983, at *18 n.35 (rejecting plaintiffs' comparisons between refusing vaccination and the decisions in *Roe* and *Casey* because "[t]hese cases do not establish a broad fundamental privacy right for all medical decisions made by an individual— and particularly not for a decision with such broad community consequences as declining vaccination against a highly contagious disease").

The core flaw with Plaintiffs' claim that refusing vaccination is a fundamental right, then, is not that there is no privacy interest implicated when someone is required or coerced to take a vaccine that they do not want. There certainly is. Rather, the problem is that, when a person's decision to refuse a vaccine creates negative consequences (even life-threatening at times) for other people, that interest is not absolute. *See We the Patriots*, 2021 WL 5121983, at *18. As *Jacobson* demonstrated, and numerous cases over the course of the pandemic have reiterated, the right Plaintiffs assert here is limited by "reasonable conditions . . . essential to the safety, health, [and] peace" of the public. *Jacobson*, 197 U.S. at 26; *see, e.g., We*

*the Patriots*, 2021 WL 5121983, at *18 n.35 ("[T]he the urgent public health needs of the community can outweigh the rights of an individual to refuse vaccination."). Because the exigencies of the current pandemic justify the degree of intrusion at issue here, Plaintiffs have not demonstrated that Defendants' vaccine and testing policies infringe a fundamental constitutional right.

### 3. Rational Basis Review

Even though Plaintiffs have not shown that Defendants' vaccine policies infringe a fundamental constitutional right, the Court finds that Plaintiffs have shown (or are likely to show) that these policies do abridge an individual's right to liberty and bodily autonomy to a greater than *de minimis* degree, and the Court will apply rational basis review to their substantive due process claims as the district court did in *Klaassen*. 2021 WL 3073926, at *22; *see Brown v. City of Mich. City*, 462 F.3d 720, 733 (7th Cir. 2006); *Lee v. City of Chi.*, 330 F.3d 456, 466 (7th Cir. 2003). In doing so, the Court keeps in mind that rational basis review is "highly deferential," and to find that a government action lacks a rational basis in this context, a court must find the action "utterly lacking in rational justification." *Brown,* 462 F.3d at 733 (quoting *Turner v. Glickman*, 207 F.3d 419, 426 (7th Cir. 2000)).

On the present record, Defendants have demonstrated that their vaccination policies have a rational justification. Defendants have submitted a substantial amount of evidence supporting the public health necessity of vaccination and testing in abating the ongoing COVID-19 pandemic. For example, Defendants cite to the findings of the Centers for Disease Control and Prevention ("CDC") that

12

"recommend[] that everyone aged 12 years and older gets vaccinated as soon as possible" and maintain that "vaccines are playing a crucial role in limiting spread of the virus and minimizing severe disease."[5] And Defendants cite numerous peer-reviewed studies bolstering their claims that widespread vaccination is effective at reducing the spread of COVID-19.[6]

Defendants also submitted declarations from government health professionals, attesting that widespread vaccination and testing are instrumental in reducing the severity of the COVID-19 pandemic. *See, e.g.*, Def. J.B. Pritzker's Resp., Ex. A, Bleasdale Decl. ¶ 59; Def. City's Resp., Ex. A, Arwady Decl. ¶¶ 18–22, ECF No. 18-1. These officials, who helped to create and administer the challenged policies, include Dr. Allison Arwady, Chief Medical Officer of the Chicago Department of Public Health; Christopher Owen, Commissioner of Human Resources for the City of Chicago; and Dr. Arti Barnes, Medical Director and Chief Medical Officer of the Illinois Department of Public Health. *See generally* Arwady Decl.; Owen Decl.; Def. J.B. Pritzker's Resp., Ex. B, Barnes Decl. The declarations have presented the scientific rationale behind the vaccine and testing orders at issue, and the Court finds

---

[5]     *Delta Variant: What We Know About the Science*, CDC (August 26, 2021) https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html?s_cid=11504:is%20 there%20a%20vaccine%20for%20delta%20variant:sem.ga:p; *see generally, e.g.*, *Rates of COVID-19 Cases and Deaths by Vaccination Status*, CDC, https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status (last visited November 13, 2021).

[6]     *See, e.g.*, Jamie L. Bernal et al., *Effectiveness of Covid-19 Vaccines Against the B.1.617.2 (Delta) Variant*, 385 N. ENG. J. MED. 585 (2021) https://www.nejm.org/doi /full/10.1056/nejmoa2108891; Ashley Fowlkes et al., *Effectiveness of COVID-19 Vaccines in Preventing SARS-CoV-2 Infection Among Frontline Workers Before and During B.1.617.2 (Delta) Variant Predominance — Eight U.S. Locations, December 2020–August 2021*, 70 MORBIDITY AND MORTALITY WKLY. REP. 1167 (2021) https://www.ncbi.nlm.nih.gov/ pmc/articles/PMC8389394.

that their statements are credible and provide ample rational justification for the policies.

For example, Dr. Arwady notes that City employees are "approximately twice as likely" to be infected with COVID-19 than residents of Chicago as a whole. Arwady Decl. ¶ 10. She explains that the job duties of City employees often require them to be in close contact with the public in unpredictable situations where the COVID-19 exposure status or vaccination status of the resident is not known. *Id.* ¶ 13. Thus, "developing immunity in all employees who have contact with each other and members of the public" is a key component of the City's strategy to reduce the spread of COVID-19. *Id.* ¶ 11. Furthermore, Dr. Bleasdale explains that vaccines provide a high degree of protection against both contracting COVID-19, *see* Bleasdale Decl. ¶¶ 34–37, and—as suggested by preliminary research—transmitting the virus to others. *Id.* ¶ 42. She therefore concludes that mandating vaccination or weekly testing for healthcare workers, who frequently meet populations especially vulnerable to COVID-19, will help prevent "an increase in sickness and quite possibly death" in the state resulting from the significantly more transmissible Delta variant. *Id.* ¶ 44; *see id.* ¶¶ 25–32.

In response, Plaintiffs argue that Defendants' vaccination policies have no rational basis, because there is evidence that "natural immunity" against COVID-19 is more effective than vaccine-created immunity in preventing transmission. And to support this contention, Plaintiffs rely upon two academic sources. The first is a study that, while showing that prior infection from COVID-19 results in some degree

14

of immunity, does not compare natural immunity with vaccine-created immunity.[7] The second is an unpublished, non-peer reviewed study conducted in Israel in January and February 2021,[8] to which Defendants have raised serious questions regarding its methodological rigor and reliability. *See* Bleasdale Decl. ¶¶ 46–52; Barnes Decl. ¶ 32. This is the sum total of Plaintiff's evidence.

When the Court weighs the slim evidence presented by Plaintiffs against the substantial evidence presented by Defendants (particularly the declarations by the medical professionals), the Court finds on this record that Plaintiffs have not met their burden to show that EO 2021-22 and the City Vaccination Policy are "arbitrary or irrational," *Campos*, 932 F.3d at 975, or "utterly lacking in rational justification," *Brown,* 462 F.3d at 733.

That said, even if there were robust scientific debate about whether natural immunity is more effective than vaccine-created immunity in preventing the contraction and transmission of COVID-19 (as Plaintiffs contend), this still would not be enough for Plaintiffs to prevail. For a government regulation to have a rational basis, the state need not prove the premises upon which it based the action to a degree of scientific certainty. Rather, the government need only show that its rationale is supported by a "reasonably conceivable state of facts." *Minerva Dairy, Inc. v.*

---

[7]     *See* Jennifer M. Dan et al., *Immunological Memory to SARS-CoV-2 Assessed for up to 8 Months After Infection*, SCIENCE (Jan. 6, 2021) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7919858/pdf/abf4063.pdf.

[8]     *See* Sivan Gazit et al., *Comparing SARS-CoV-2 Natural Immunity to Vaccine-Induced Immunity: Reinfections Versus Breakthrough Infections* (August 25, 2021) (unpublished manuscript) https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1.full.pdf

*Harsdorf*, 905 F.3d 1047, 1053 (7th Cir. 2018) (quoting *Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318 (7th Cir. 2013)).  This is a low bar.  *See id.*; *Monarch Beverage Co., Inc. v. Cook*, 861 F.3d 678, 683 (7th Cir. 2017) (noting that under rational basis review, the government's "proffered rationale for the law . . . can be 'based on rational speculation unsupported by evidence or empirical data'" (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993))).  And, in relying on federal and state public health recommendations, credible academic sources, and the expertise of its own health officials, Defendants have met this burden, even if there might be some scientific disagreement on the issue.  *See Vasquez v. Foxx*, 895 F.3d 515, 525 (7th Cir. 2018) (rejecting argument that sex-offender registration policy lacked a rational basis because "scant evidence" supported it, since "[the Court's] role is not to second-guess the legislative policy judgment by parsing the latest academic studies on sex-offender recidivism").

Numerous courts have come to the same conclusion for substantially similar reasons.  *See Does 1-6 v. Mills*, 16 F.4th 20, 32 (1st Cir. 2021) (a state vaccine mandate "easily" passed rational basis review), *application for injunctive relief denied sub nom. Does 1-3 v. Mills*, __ S. Ct. __, 2021 WL 502177 (mem.) (Oct. 29, 2021); *We The Patriots*, 2021 WL 5121983, at *15 (same); *Norris v. Stanley*, __ F. Supp. 3d __, 2021 WL 4738827, at *3–4 (W.D. Mich. Oct. 8, 2021) (holding that, in response to a similar argument that Michigan State University failed to consider natural immunity in imposing a vaccine mandate, "even if there is vigorous ongoing discussion about the effectiveness of natural immunity, it is rational for MSU to rely on present federal

16

and state guidance in creating its vaccine mandate," *id.* at *3); *Kheriaty v. Regents of Univ. of Cal.*, No. SACV 21-01367 JVS (KESx), 2021 WL 4714664, at *8 (C.D. Cal. Sept. 29, 2021) (rejecting claim that university's choice not to exempt previously infected students from vaccine mandate lacked a rational basis because "merely drawing different conclusions based on consideration of scientific evidence does not render the Vaccine Policy arbitrary and irrational").

Because Plaintiffs cannot show that Defendants' vaccination policies infringe a fundamental constitutional right and cannot show that Defendants' policies lack a rational basis, the Court finds that Plaintiffs are unlikely to succeed on the merits of their substantive due process claim.

**B.      Procedural Due Process Claim**

Plaintiffs next claim that EO 2021-22 and the City Vaccination Policy violate procedural due process. A procedural due process claim requires the plaintiff to show that the government deprived them of a protected interest with "constitutionally deficient procedural protections" surrounding the deprivation. *Tucker v. City of Chi.*, 907 F.3d 487, 491 (7th Cir. 2018). Plaintiffs are unlikely to succeed here as well.

**1.      Procedural Due Process Claim Against the City**

Plaintiffs raise two procedural due process arguments against the City. First, they argue that the City Vaccination Policy violates procedural due process because Chicago Mayor Lori Lightfoot exceeded her authority by imposing the policy "unilaterally" without the approval of the city council. TRO Mot. at 11. The problem with Plaintiffs' first argument is that the Chicago Municipal Code does authorize the

17

Mayor to enact policies through an "administrative officer, subject to the direction and control of the mayor, . . . [to] supervise the administrative management of all city departments, boards, commissioners and other city agencies," and to "supervise the conduct of all of the officers of the city." Chi. Mun. Code 2-4-020. By their plain language, these provisions grant the Mayor broad policymaking discretion over City employees.

Additionally, even if Mayor Lightfoot's implementation of the City Vaccination Policy did comprise a traditionally legislative function, this would not raise any constitutional concerns. At its core, Plaintiffs' argument relies on a strict separation-of-powers theory that is not applicable to local governments. *See Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992) (noting that in the context of local government, "[e]xecutive officials sometimes exercise legislative powers . . . [and] executive officials may have the power to set policy . . . when the legislature is silent."); *see also* Helen Hershkoff, *State Courts and the "Passive Virtues": Rethinking the Judicial Function*, 114 Harv. L. Rev. 1833, 1884 (2001) ("[L]ocal governments are . . . not required to conform to federal-style separation of powers and, for the most part, do not.").

Accordingly, the Court cannot say on this record that Mayor Lightfoot's actions in announcing the City Vaccination Policy were *ultra vires*. Furthermore, the Court takes judicial notice of the fact that, on the same day as the TRO hearing, the City

Council voted to keep the City Vaccination Policy in place, removing one of the core bases of Plaintiffs' argument.[9]

Plaintiffs' second argument asserts that the policy violates Plaintiffs' due process rights, because it "fundamentally changes the nature of Plaintiffs' contracts with . . . the City." TRO Mot. at 11. This argument too is unpersuasive, for two primary reasons.

First, the mere alteration of an employment contract, standing alone, does not violate procedural due process. Plaintiffs must identify some liberty or property interest of which they are being deprived in order to make out a procedural due process claim. *See Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 752 (7th Cir. 2012); *Brown*, 462 F.3d at 728. To the extent that Plaintiffs argue that the vaccination policy deprives them of their ability to work for the City without being vaccinated, this deprivation is not a violation of procedural due process, because (as the Seventh Circuit has held) Plaintiffs do not have a liberty or property interest in not being vaccinated. *See Klaassen,* 7 F.4th at 593; *see also*, *e.g.*, *We The Patriots*, 2021 WL 5121983, at *18.

Second, many of Plaintiffs' employment contracts are governed by collective bargaining agreements between the City and public employee unions. Thus, any alleged procedural deficiency in the alteration of Plaintiffs' employment contracts is properly aggrieved under Illinois labor law. Moreover, grievance procedures in

---

[9] *See Chicago City Council Turns Down Attempt to Repeal Vaccine Mandate*, NBC CHI. (Oct. 29, 2021 5:42 PM) https://www.nbcchicago.com/news/local/chicago-city-council-turns-down-attempt-to-repeal-vaccine-mandate/2662116/.

collective bargaining agreements "can (and typically do) satisfy" the requirements of procedural due process for terminated public employees. *Calderone v. City of Chi.*, 979 F.3d 1156, 1166 (7th Cir. 2020) (quoting *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 630 (7th Cir. 1995)). Plaintiffs have not garnered any evidence to the contrary.

### 2. Procedural Due Process Claim Against the Governor

As for EO 2021-22, Plaintiffs first assert that Governor Pritzker violated their procedural due process rights by exceeding the limitations on his emergency powers under the Illinois Emergency Management Agency Act ("EMAA"), 20 Ill. Comp. Stat. 3305/1 *et seq.* They claim that because "the Governor's power is not unlimited [and] . . . [t]he legislature has remained silent on the subject of vaccine mandates," EO 2021-22 "violates Plaintiffs' rights under the US Constitution and under Illinois law." TRO Mot. at 11. For several reasons, this procedural due process claim against the Governor is not viable.

First, Plaintiffs' procedural due process claim is likely barred by the Eleventh Amendment, under which "absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Va. Office for Prot. and Advocacy v. Stewart*, 563 U.S. 247, 254 (2011); *see Cassell v. Snyders*, 458 F. Supp. 3d 981, 999 (N.D. Ill. 2020), *aff'd*, 990 F.3d 539 (7th Cir. 2021). In *Cassell*, a church and its pastor sued the Governor and other Illinois state officials to enjoin the state's stay-at-home orders that placed capacity limitations on religious services. *See* 458 F. Supp. 3d at 987. The *Cassell* plaintiffs alleged the state officials violated, *inter alia*, the state

20

statutory limitations of the EMAA on the Governor's emergency powers. *See id.* This Court denied the injunction as to the EMAA claim because the Governor and state officials had properly raised sovereign immunity. *Id.* at 999.

Like the plaintiffs in *Cassell*, Plaintiffs here are suing the Governor for alleged violations of the EMAA, and the Governor has invoked sovereign immunity. Because "a claim that [a] state official[] violated state law in carrying out [his] official responsibilities" is "a claim against the State that is protected by the Eleventh Amendment," the Eleventh Amendment precludes Plaintiff's procedural due process claim against the Governor. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 101, 121 (1984); *see Cassell*, 458 F. Supp. 3d at 999.

Furthermore, setting aside Eleventh Amendment concerns, Plaintiffs cannot bring a federal procedural due process claim to compel state officials to follow state law because "there is no federal constitutional right to state-mandated procedures." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 366 (7th Cir. 2019), *cert denied*, 140 S. Ct. 268 (2019); *see also Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013). A state's decision not to follow its own procedural rules may create a cause of action under state law, but it does not violate federal due process protections. *See Charleston*, 741 F.3d at 773. Put simply, any grievances Plaintiffs may have with the way Governor Pritzker did or did not follow state law should be raised in the state courts. *See River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166–67 (7th Cir. 1994) ("Failure to implement state law violates that state law, not the Constitution; the remedy lies in state court.").

That said, in their reply brief, Plaintiffs shift the framing of their procedural due process claim. They now contend that they are suing the Governor to enjoin him from violating the Constitution, not Illinois state law, and that their suit thus is permitted under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908). Specifically, Plaintiffs appear to mount an "unconstitutional conditions" challenge to the policies on the principle that "the government may not deny a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (citations omitted); *see also Klaassen*, 2021 WL 3073926, at *23. But Plaintiffs' attempt to recharacterize their original claim is unprevailing, both procedurally and on its merits.

First, Plaintiffs' remodeled procedural due process claim, which centers on the Governor's alleged interference with their "liberty to follow a trade, profession, or other calling," Pls.' Reply at 16 (citing *Vill. of Orland Park v. Pritzker*, 475 F. Supp. 3d 866, 884 (N.D. Ill. 2020)), is nowhere to be found in their earlier pleadings. Plaintiffs' Complaint and Motion for Temporary Restraining Order both rest on the Governor's alleged failure to comply with the EMAA. For example, the Motion's discussion of Plaintiffs' "procedural due process" claim is entitled "The Governor exceeded his authority under Illinois law in enacting Executive Order 2021-22," TRO Mot. at 10, and the section goes on to cite the EMAA and invoke this Court's previous invitation to challenge the propriety of the Governor's exercises of emergency powers pursuant to that statute. *See id.* (first citing the EMAA, 20 Ill. Comp. Stat. 3305/1 *et seq.*, and then citing *Cassell*, 458 F. Supp. 3d at 981 (noting that future parties will

22

be able to bring an EMAA challenge "[s]hould this or any future Governor abuse his or her authority by issuing emergency declarations after a disaster subsides")); *see also* Compl. ¶ 199 (stating, in pleading the procedural due process claim, that because "the Governor did not have the authority to enter the Executive Order[,] . . . [t]he imposition on Plaintiff health care workers – including the members of the Fire Department who perform health care services – was therefore taken without due process of law"). Plaintiffs cannot amend their claims in a reply brief.

But, even if the Court were to consider Plaintiffs' new approach, their "unconstitutional conditions" procedural due process claim against the Governor still would fall short, because, as the Seventh Circuit has held, Defendants do not have a fundamental constitutional right to refuse COVID-19 vaccinations. *See Klaassen*, 7 F.4th at 593. Put another way, Plaintiffs are correct that they have "the right to hold specific private employment and to follow a chosen profession free from *unreasonable* governmental interference," *Greene v. McElroy*, 360 U.S. 474, 492 (1959), but the vaccine policies in question are not unreasonable, because they satisfy the rational basis test. *See Turner*, 207 F.3d at 426.

What is more, a procedural due process claim requires a plaintiff to allege a deprivation of constitutional rights. *See Tucker*, 907 F.3d at 491. But, here, none of the Plaintiffs subject to the Governor's order has been fired or disciplined as of the hearing date.[10]

---

[10]     This is not to say that, were any Plaintiffs to be disciplined or terminated for failure to comply with the vaccination requirement, a procedural due process claim would be viable. On the contrary, under the three-factor balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), used to evaluate procedural due process claims, Plaintiffs' interest in

For the reasons set forth in this section, the Court finds that it unlikely that Plaintiffs will prevail on their procedural due process claims against the City or the Governor.

### C.  Free Exercise Claim

Next, Plaintiffs assert that EO 2021-22 and the City Vaccination Policy violate the Free Exercise Clause of the First Amendment.  They contend that the policies unconstitutionally burden their free exercise rights by forcing them either to be vaccinated in violation of their sincerely held religious beliefs or lose their jobs.  They also claim that the City violated the Free Exercise Clause by denying, or refusing to grant, religious exemptions to them.

A free exercise claim requires a plaintiff to show that a government action has burdened her exercise of a sincerely held religious belief.  *See Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021).  Under *Employment Division v. Smith*, 494 U.S. 872 (1990), neutral laws of general applicability that only incidentally burden religion are not subject to strict scrutiny.  *Fulton*, 141 S. Ct. at 1876 (citing *Smith*, 494 U.S. at 878–82).  Government action that satisfies *Smith* receives rational basis review, *see Ill. Bible Colls. Ass'n v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2020), while government action that is not neutral or generally applicable must pass strict scrutiny.  *Fulton*, 141 S. Ct. at 1881.

---

not being terminated for refusing vaccination would likely be outweighed by the public's interest in preventing the spread of COVID-19 and the cost to the public's safety of requiring additional procedures.  *See Vill. of Orland Park*, 475 F. Supp. 3d at 883 (noting that "the second and third factors in the *Mathews* test weigh heavily against the need for pre-deprivation process" in the context of a procedural due process challenge to COVID-19 mitigation measures).

Plaintiffs argue that the Court should apply strict scrutiny to the City Vaccination Policy, mainly relying on the Sixth Circuit's decision in *Dahl v. Bd. of Trustees of Western Michigan University*, 15 F.4th 728 (6th Cir. Oct. 7, 2021), where the court applied strict scrutiny to Western Michigan University's denial of religious exemptions to its vaccination requirement for student athletes. *Id.* at 734. This too does not win the day for Plaintiffs.

First, whatever the rule may be in the Sixth Circuit, this Court must follow the dictates of the Seventh Circuit's ruling in *Klaassen*, which applied rational basis review to *all* of the plaintiffs' claims against Indiana University's vaccine requirement, including the free exercise claim. *See Klaassen*, 7 F.4th at 593; *see also Klaassen*, 2021 WL 3073926, at *25–26. And, as the Court has repeatedly noted, the vaccine orders pass the rational basis test.

Second, Plaintiffs' free exercise challenge is distinguishable from the free exercise claim in *Dahl*, because Plaintiffs here do not state a claim for an as-applied challenge to any specific employee's denial of a religious exemption. In *Dahl*, the plaintiffs alleged specific facts suggesting that the university failed to accommodate their sincerely held religious beliefs, *See Dahl*, 15 F.4th at 733–34. By contrast, Plaintiffs here baldly assert that the City Vaccination Policy's religious exemption has not been administered properly. *See* Pls.' Reply at 19–20. They do not plead the particularized facts present in *Dahl*.

To be clear, if a particular employee is denied a religious exemption, she may challenge that denial, based on the particular facts of her case, as a violation of her

free exercise rights. But no Plaintiffs have been denied a religious exemption on grounds other than failing to adequately articulate their individual circumstances, as the City Vaccination Policy requires. *See* Def. City's Resp., Ex. B4, City of Chicago COVID-19 Vaccine Religious Exemption Request Form ("City Religious Exemption Form") (requiring a reason for the request and an explanation of the principle of the applicant's religion that conflicts with taking the vaccine). The City notes that "the only Plaintiffs who have been denied an exemption sought under either statute submitted [a] form letter that did nothing other than quote the HCRCA definition of 'conscience.'" Def. City's Resp. at 23, *see generally* Def. City's Resp., Ex. B5 (scans of the denied applications). Because every denial before the Court at the present time fails to comply with the basic requirements of the City Vaccination Policy's religious exemption process, these denials do not raise free exercise concerns. *Cf. Baer-Stefanov v. White*, 773 F. Supp. 2d 755, 759–60 (N.D. Ill. 2011) (plaintiffs who had not complied with the requirements for applying for a religious exemption could not bring a free exercise claim challenging the constitutionality of the exemption process). And, tellingly, Plaintiffs have not challenged any of these determinations in their motion, nor have they provided the individualized facts necessary to conduct such a review. Thus, on this record, Plaintiffs are not likely to succeed on their free exercise challenge to the City Vaccination Policy.[11]

---

[11] Plaintiffs also seem to argue that the religious exemption in the City Vaccination Policy is unconstitutionally narrow because it requires the signature of a religious leader to verify the sincerity of the applicant's religious objections. The only authority Plaintiffs cite for this proposition is a dissenting opinion in a Title VII case from another circuit. *See* TRO Mot. at 12–13 (quoting *Davis v. Fort Bend Cnty*, 765 F.3d 480, 497 (5th Cir. 2014) (Smith, J.,

Because Plaintiffs' free exercise claims are either not fully developed or receive rational basis review, the Court finds that Plaintiffs are unlikely to succeed on the merits of their free exercise claims.

### D. Illinois Healthcare Right of Conscience Act (HCRCA)

Plaintiffs' final claims arise under the Illinois Healthcare Right of Conscience Act (HCRCA), 745 Ill. Comp. Stat. 70/1 *et seq.* Generally, this statute protects the rights of Illinoisans to refuse to provide, receive, or participate in the administration of health care services "contrary to [their] conscience."[12] *Id.* § 70/2. And the particular provisions at issue prohibit "discrimination against any person in any manner . . . because of such person's conscientious refusal to receive . . . any particular form of health care services contrary to his or her conscience." *Id.* § 70/5; *see also id.* § 70/7 (prohibiting employment discrimination based on refusal to receive or provide health care services contrary to one's conscience).

Plaintiffs argue that EO 2021-22 and the City Vaccination Policy discriminate against them based on their "vaccination status." TRO Mot. at 13. In support of this contention, they cite several cases purporting to show that "employees [cannot] be terminated for their deeply held beliefs concerning health matters." *Id.* (first citing *Vandersand v. Wal-Mart Stores, Inc.*, 525 F. Supp. 2d 1052 (C.D. Ill. 2017), and then

---

dissenting)). But the Court is not persuaded that it should read this requirement into the First Amendment, especially under the present record.

[12] The HCRCA defines "conscience" to include both religious and secular or philosophical objections. *See* 745 Ill. Comp. Stat. 70/3 ("conscience" is "a sincerely held set of moral convictions arising from belief in and relation to God, or . . . from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths").

citing *Rojas v. Martell*, 161 N.E.3d 336 (Il. App. Ct. 2020)). For the reasons discussed below, the Court concludes that Plaintiffs' HCRCA claims are unlikely to succeed on the merits.

### 1. HCRCA Claims Against the Governor

Plaintiffs' HCRCA claims against the Governor must be dismissed at the outset, because Governor Pritzker has properly invoked sovereign immunity. *See* Def. J.B. Pritzker's Resp. at 30. As noted above, the Eleventh Amendment bars suits for injunctive relief against state officials for violations of state law when the state is the "real, substantial party in interest." *Pennhurst*, 465 U.S. at 106. Here, Plaintiffs again are suing the Governor under a state statute based on his official action taken in his official capacity. Thus, their claim is barred. *Id.*

### 2. HCRCA Claims Against the City

The Eleventh Amendment does not prohibit Plaintiffs' claims against the City, but they still fall short of the showing required for a temporary restraining order. In their papers, Plaintiffs appear to be marshalling a facial challenge to the City Vaccination Policy under the HCRCA; they quote the statute and argue simply that the vaccine policy is "squarely a violation of the Act." *See* TRO Mot. at 13. And Plaintiffs might well be correct, if the City Vaccination Policy did not contain any avenue for religious exemptions.

But the City Vaccination Policy does provide a detailed religious exemption process that protects anyone who holds sincere religious objections to being vaccinated. *See generally* City Religious Exemption Form. In fact, the religious

exemption included in the City Vaccination Policy safeguards the same religious objections to medical treatment that the HCRCA protects. *Compare id.* (granting exemptions for those with "a sincerely held set of moral convictions arising from belief in and relation to religious beliefs"), *with* 745 Ill. Comp. Stat. 70/3 (defining "conscience" as "a sincerely held set of moral convictions arising from belief in and relation to God, or . . . from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths"). Accordingly, the Court concludes that the City Vaccination Policy on its face does not violate the HCRCA and that Plaintiffs have not demonstrated more than "a mere possibility of success" on the merits of their HCRCA claim. *Ill. Republican Party*, 973 F.3d at 762.

In summary, the Court finds that Plaintiffs have not shown a likelihood of success as to any of their claims. This alone is enough to deny their motion for a temporary restraining order. *See GEFT Outdoors*, 922 F.3d at 364 ("If the plaintiff fails to meet any of the[] threshold requirements, the court must deny the injunction." (quoting *Girl Scouts of Manitou Council*, 549 F.3d at 1086)). However, the Court will briefly touch on the remaining factors for the sake of completeness.

## II.     Irreparable Harm

To show that they would suffer irreparable harm absent injunctive relief, Plaintiffs must demonstrate more than a possibility of harm; they must prove that such harm is likely. *Winter*, 555 U.S. at 2 (plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction"). To this end, Plaintiffs argue that "violations of individuals' constitutional rights constitute irreparable

29

harm as a matter of law," TRO Mot. at 13 (citing *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004)).  However, because Plaintiffs lack a fundamental constitutional right to decline vaccinations during times of pandemic, *see Klaassen*, 7 F.4th at 593, they cannot rely upon the abridgment of that right to establish irreparable harm.

Not to be deterred, Plaintiffs argue that a finding that they have no fundamental right not to be vaccinated does not preclude a finding of irreparable harm, because Defendants' alleged violations of procedural due process also comprise constitutional injury.  But Plaintiffs' procedural due process argument likewise hinges upon a finding that they have a fundamental constitutional right to refuse COVID vaccinations.  *See Greene*, 360 U.S. at 492 (requiring "*unreasonable government interference*" to state a claim for a procedural due process violation stemming from termination of employment (emphasis added)).[13]

Moreover, even assuming that EO 2021-22 and the City Vaccination Policy inflict a greater than *de minimis* constitutional injury, there is no evidence in this record that any of the Plaintiffs has been fired or disciplined because he or she has refused to take a vaccine. And if Plaintiffs were to be suspended without pay or lose their jobs pursuant to the Governor or the City's vaccination policies, Plaintiffs would have an adequate relief at law—they could seek money damages.  *See D.U. v.*

---

[13]     Alternatively, Plaintiffs could establish that EO 2021-22 and the City Vaccination Policy are "unreasonable" for purposes of their procedural due process claim if they could show that the policies lack a rational basis.  *See Turner*, 207 F.3d at 426.  But as the Court has already stated, *see supra* section I.A.3, Defendants' policies survive rational basis scrutiny on the current record.

*Rhoades*, 825 F.3d 331, 339 (7th Cir. 2016) (money damages can generally provide complete redress for termination of employment).[14]

## III. Balance of the Equities

Lastly, Plaintiffs have not shown that the balance of the equities and the public interest, which "merge when the [g]overnment is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009), favors the issuance of a temporary restraining order. In assessing this factor, the Court must weigh the interests favoring an injunction against "the consequences of granting or denying the injunction to non-parties." *Abbott Labs v. Mead & Johnson Co.*, 971 F.2d 6, 11 (7th Cir. 1992). Here, the Court finds that the public's interest in reducing the transmission of COVID-19 weighs heavily against granting the temporary restraining order, and numerous other courts agree. *See, e.g.*, *Does 1–6*, 16 F.4th at 37 (finding that public interest weighed in state government's favor in affirming denial of injunctive relief to healthcare workers challenging state vaccine mandate); *We the Patriots*, 2021 WL 5121983, at *20; *Klaassen*, 2021 WL 3073926, at *43–44; *Cassell*, 458 F. Supp. 3d at 1003.

Although Plaintiffs have disputed the efficacy of vaccination in preventing transmission of COVID-19, under the rational basis standard, the Court may not second-guess the informed and rational scientific judgments upon which Defendants base their policies, especially without the benefit of discovery. *See generally*, *e.g.*,

---

[14]    The Seventh Circuit has indicated that there are circumstances where termination of employment may lead to irreparable harm, but only when the particular injuries alleged "really depart from the harms common to most discharged employees." *Bedrossian v. Northwestern Memorial Hosp.*, 409 F.3d 840, 845 (7th Cir. 2005). Plaintiffs here have not alleged any such extraordinary injuries.

Bleasdale Decl.; Owen Decl.; *see also Minerva Dairy*, 905 F.3d at 1055 (noting that courtroom fact-finding is inappropriate on rational basis review); *Vasquez*, 895 F.3d at 525 (same); *Klaassen*, 2021 WL 3073926, at *46 ("Given a preliminary record such as today's, the court must exercise judicial restraint in superimposing any personal view in the guise of constitutional interpretation."). Thus, the Court finds that the public interest factor weighs against granting Plaintiffs the emergency relief they seek.

## Conclusion

For the reasons stated above, Plaintiffs' motion for a temporary restraining order is denied.

**IT IS SO ORDERED.**          **ENTERED: 11/24/21**

**John Z. Lee**
**United States District Judge**