IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT TROOGSTAD et al., | ) |
| Plaintiffs, | ) |
| | ) No. 21 C 5600 |
| v. | ) |
| | ) Judge John Z. Lee |
| THE CITY OF CHICAGO and GOVERNOR JAY ROBERT PRITZKER, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Illinois Governor J.B. Pritzker and the City of Chicago ("City") (collectively "Defendants") enacted policies requiring certain healthcare workers and public employees to be vaccinated against COVID-19 by the end of 2021 or be subject to disciplinary action and termination. Plaintiffs, comprising over 100 employees in the City's Fire, Water, and Transportation Departments, claim that these policies violate their substantive due process, procedural due process, and free exercise rights under the United States Constitution, as well as Illinois law. As such, they seek a preliminary injunction against the policies. For the following reasons, Plaintiffs' motion is denied.

## Background

The Court assumes familiarity with the factual record of this case from its previous written opinion denying Plaintiffs' petition for a temporary restraining order. *See* Mem. Op. Order, *Troogstad v. City of Chi.*, __ F. Supp.3d __, 2021 WL

5505542, at *1–2 (N.D. Ill. Nov. 24, 2021) ("TRO Order"), ECF No. 35. A brief summary of the more salient facts follows.

With the Delta variant of COVID-19 spiking across the country, Illinois Governor J.B. Pritzker signed Executive Order 2021-22 ("EO 2021-22") on September 3, 2021. EO 2021-22 requires all healthcare workers—defined as persons who work in "health services, medical treatment or nursing, or rehabilitative or preventive care"—in the state to be vaccinated against COVID-19 or submit to weekly COVID-19 testing. Def. Gov. J.B. Pritzker's Resp. Opp'n Pls.' Pet. TRO ("Def. J.B. Pritzker's Resp. TRO"), Ex. A (EO 2021-22) § 2(a)(i), ECF No. 14. EO 2021-22 contains a religious exemption to the vaccination requirement for covered persons whose "sincerely held religious belief[s], practice[s], or observance[s]" conflict with being vaccinated. *Id.*

After Governor Pritzker's order, the City followed with its own mandatory vaccination policy ("City Vaccination Policy"), which requires all City employees to be fully vaccinated (or have an approved exemption) by December 31, 2021 as a "condition of employment." Def. City of Chicago's Resp. Pls.' Emergency Pet. TRO ("Def. City's Resp. TRO"), Ex. B1 (City Vaccination Policy) §§ II–IV, ECF No. 18.[1] Like EO 2021-22, the City Vaccination Policy contains a religious exemption protecting those with "a sincerely held set of moral convictions arising from belief in and relation to religious beliefs" that conflict with COVID-19 vaccination. *See* Def.

---

[1] Before the December 31 deadline, the City Vaccination Policy requires City employees either to be vaccinated or to submit to biweekly COVID-19 testing. City Vaccination Policy § IV.A–B.

2

City's Resp. TRO, Ex. B4, City of Chicago COVID-19 Vaccine Religious Exemption Request Form ("City Religious Exemption Form").  Exemption requests are considered on an individual basis and require the applicant to fill out a form stating the reason for the exemption and the principle of their religion that conflicts with being vaccinated, and including the signature of a religious leader. *See id.*

Plaintiffs are City employees, who contend that EO 2021-22 and the City Vaccination Policy violate their rights to bodily autonomy as protected by the constitutional doctrines of substantive due process, procedural due process, and free exercise of religion.  They also assert that these policies infringe upon their right of conscience as protected by the Illinois Healthcare Right of Conscience Act ("HCRCA"), 745 Ill. Comp. Stat. 70/1 *et seq*.  Upon filing this suit, Plaintiffs petitioned the Court for a temporary restraining order against enforcement of the policies.  *See* Pls.' Mot. TRO ("TRO Mot."), ECF No. 4.  The Court denied that petition in an oral ruling, *see* Hr'g Tr., *Troogstad*, No. 21 C 5600 (Oct. 29, 2021), ECF No. 31, which subsequently was memorialized in a written order.  *See* TRO Order.

Plaintiffs then informed the Court that they wished to proceed with their motion for preliminary injunction, seeking to enjoin Governor Pritzker and the City from enforcing EO 2021-22 or the City Vaccination Policy.  Accordingly, the Court provided Plaintiffs with an opportunity to supplement the factual record with witnesses and additional evidence.  The Court also granted Plaintiffs leave to engage in limited discovery of Defendants' factual contentions.

In the end, Plaintiffs stated that they did not need discovery and would not be presenting any witnesses, but requested an opportunity to file a supplemental brief to support their preliminary injunction motion. The Court agreed and set a schedule for the submission of supplemental briefs. Now, relying on the factual record before it, the Court considers Plaintiffs' motion for a preliminary injunction.

## **Legal Standard**

As the Seventh Circuit has stated, a preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008)). And to obtain such drastic relief, the party seeking the relief—here, the Plaintiffs—carries the burden of persuasion by a clear showing. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

To succeed on a motion for preliminary injunction, the plaintiff has the burden to show (1) a likelihood of success on the merits; (2) irreparable harm; and (3) that the balance of the equities and the public interest favors emergency relief. Fed. R. Civ. P. 65(b)(1)(A); *see Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 22 (2008).

The Court then weighs these factors in what the Seventh Circuit has called a "sliding scale" approach. That is, "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) (internal quotation marks omitted). And "[w]here appropriate, this

4

balancing process should also encompass any effects that granting or denying the preliminary injunction would have on nonparties (something courts have termed the 'public interest')." *Id.*

## Analysis

### I. Likelihood of Success on the Merits

The first factor—"likelihood of success on the merits"—requires the plaintiff to make a "strong showing that she is likely to succeed on the merits" of her claim; a mere "possibility of success is not enough" to warrant emergency relief. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). This showing "does not mean proof by a preponderance," but requires the plaintiff to provide facts and legal theories supporting "the key elements of its case." *Id.* at 763. The Court will address each of Plaintiffs' claims in turn.

#### A. Substantive Due Process

Plaintiffs first allege that EO 2021-22 and the City Vaccination Policy violate substantive due process. A substantive due process claim requires the plaintiff to "allege that the government violated a fundamental right or liberty." *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019). The violation must also be "arbitrary or irrational," because "substantive due process protects against only the most egregious and outrageous government action." *Id.*

According to Plaintiffs, the vaccine policies offend their fundamental right to bodily autonomy. In support, they cite numerous Supreme Court cases holding that individuals have a fundamental right to refuse unwanted medical treatment, *see, e.g.,*

5

*Cruzan v. Dir., Mo. Dep't of Health,* 497 U.S. 261 (1990); *Washington v. Harper*, 495 U.S. 210 (1990), and argue that, because a right to decline vaccinations is a fundamental constitutional right, the Court should apply strict scrutiny when evaluating the policies.

### 1. Whether a Fundamental Right Exists

In its ruling on Plaintiffs' TRO motion, the Court discussed its views on this issue at length, *see* TRO Order at *3–5, and sees no reason to alter its reasoning now. As previously noted, the Seventh Circuit's decision in *Klaassen v. Trustees of Indiana University*, 7 F.4th 592 (7th Cir. 2021), forecloses Plaintiffs' claim that requiring vaccination against COVID-19 encroaches upon a fundamental right. In *Klaassen*, a group of Indiana University students challenged the university's vaccination, masking, and testing requirements on similar grounds. *Id.* at 593. The students, like Plaintiffs here, argued that the university's mandate violated their right to bodily autonomy; the Seventh Circuit disagreed. Citing *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), the unanimous panel held that "plaintiffs lack such a right" when it comes to COVID-19 vaccination requirements. *Klaassen*, 7 F.4th at 593. As a result, the court endorsed *Jacobson*'s rational basis standard of review for challenges to COVID-19 vaccine mandates under substantive due process. *See id.*; *see also Klaassen v. Trs. of Ind. Univ.*, __ F. Supp.3d __, 2021 WL 3073926, at *22 (N.D. Ind. July 18, 2021).

*Klaassen* controls here. And because there is no fundamental constitutional right at stake when people are required to be vaccinated during a pandemic, Plaintiffs' substantive due process challenge to COVID-19 vaccination policies

6

receives rational basis review. Other courts in this district[2] and across the country[3] agree. Furthermore, Plaintiffs' supplemental brief does not raise any new arguments on this point. Thus, the Court will apply rational basis review.

### 2. Rational Basis Review

Rational basis review of a substantive due process claim requires the challenged action to be "rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997). This standard is "highly deferential" to the government. *Brown v. City of Mich. City*, 462 F.3d 720, 733 (7th Cir. 2006) (quoting *Turner v. Glickman*, 207 F.3d 419, 426 (7th Cir. 2000)).

Rational basis review places the burden on the plaintiff to show that there is no "conceivable basis which might support" the government's action. *Minerva Dairy, Inc., v. Harsdorf*, 905 F.3d 1047, 1055 (7th Cir. 2018) (quoting *Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015)). Put differently, the plaintiff must prove irrationality; "it is not the [government's] obligation to prove rationality with evidence." *Hayden ex. rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 576 (7th Cir. 2014); *see also F.C.C. v. Beach Commc'ns*, 508 U.S. 307, 315 (1993) ("[A] legislative choice is not subject to courtroom

---

[2] *See, e.g.*, Mem. Op. Order at 5–6, *Cisneroz v. City of Chi.*, Case No. 21-cv-5818 (N.D. Ill. Dec. 1, 2021), ECF No. 21; Hr'g Tr. at 5:18-20, *Lukaszycyk v. Cook Cnty.*, No. 21 C 5407 (N.D. Ill. Nov. 17, 2021), *appeal docketed*, No. 21-3200 (7th Cir. Nov. 24, 2021).

[3] *See, e.g.*, *Gold v. Sandoval*, No. 3:21-cv-00480-JVS-CBL, 2021 WL 5762190, at *2 (D. Nev. Dec. 3, 2021); *Rydie v. Biden*, No. DKC 21-2696, 2021 WL 5416545, at *4 (D.Md. Nov. 19, 2021); *McCutcheon v. Enlivant ES, LLC*, No. 5:21-cv-00393, 2021 WL 5234787, at *3 (S.D.W.Va. Nov. 9, 2021); *Smith v. Biden*, No. 1:21-cv-19457, 2021 WL 5195688, at *7 (D.N.J. Nov. 8, 2021); *see also* TRO Order at *7 (collecting other cases).

fact-finding and may be based on rational speculation unsupported by evidence or empirical data."). Thus, the question is not whether Plaintiffs have the better argument—it is whether there is any rational justification for the policies at issue. *See Minerva Dairy*, 905 F.3d at 1054–55; *Hayden*, 743 F.3d at 576; *see also, e.g., Gold*, 2021 WL 5762190, at *3 ("While [Plaintiff] cites to numerous studies that he alleges show that the Policy is misguided, that does not mean that his challenge is likely to succeed . . . [u]nder rational basis review . . . ."); *Kheriaty v. Regents of Univ. of Cal.*, No. SACV 21-01367 JVS (KESx), 2021 WL 4714664, at *8 (C.D. Cal. Sept. 29, 2021) (rejecting substantive due process challenge to university's vaccine policy because "merely drawing different conclusions based on consideration of scientific evidence does not render the Vaccine Policy arbitrary and irrational").

To this end, Defendants argue that requiring healthcare workers and public employees to be vaccinated is rationally related to reducing the spread of COVID-19 in Illinois and Chicago. Combating the COVID-19 pandemic is "unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (holding that abating the COVID-19 pandemic satisfied the much stricter "compelling interest" test under the Free Exercise Clause). The sole question, then, is whether EO 2021-22 and the City Vaccination Policy are "rationally related" to preventing increased sickness and death from COVID-19 Illinois and Chicago. *Glucksberg*, 521 U.S. at 728. For reasons more fully explained in the Court's previous order, the answer is yes. *See* TRO Order at *6.

8

Defendants have submitted credible evidence to justify these policies—in particular, declarations from the public health officials who designed and implemented them.[4] These medical professionals explain in great detail how healthcare workers and City employees face increased risks of contracting and transmitting COVID-19, and how requiring vaccination will reduce those risks—both to the employees themselves and to the public with whom they come into contact. *See id.* (first citing Arwady Decl. ¶¶ 10–13, and then citing Bleasdale Decl. ¶¶ 25–44). This alone would suffice to clear the low bar of rational basis review, *see Minerva Dairy*, 905 F.3d at 1053, but Defendants go beyond what the Constitution requires and cite research from the Centers for Disease Control ("CDC") and peer-reviewed studies from major scientific journals supporting the efficacy of vaccines in abating the pandemic's spread. *See* TRO Order at *6 & *6 nn. 5–6.

Plaintiffs failed to rebut Defendants' justifications at the TRO stage, and their arguments fare no better now. Plaintiffs' supplemental brief supporting their preliminary injunction petition contains little if any legal argument. Instead, Plaintiffs "update the court with some recent scientific findings," Pls.' Suppl. Br. Supp. Pet. Prelim. Inj. ("Pls.' Suppl. Br.") at 1, ECF No. 32, that purportedly bolster their critique of COVID-19 vaccines and their efficacy. But the rational basis test

---

[4] These officials include Dr. Allison Arwady, Chief Medical Officer of the Chicago Department of Public Health, *see* Def. City's Resp. TRO, Ex. A, Arwady Decl., ECF No. 18-1; Christopher Owen, Commissioner of Human Resources for the City of Chicago, *see* Def. City's Resp. TRO, Ex. B, Owen Decl., ECF No. 18-1; Dr. Susan Bleasdale, Associate Professor of Clinical Medicine at the University of Illinois at Chicago, *see* Def. J.B. Pritzker's Resp., Ex. A, Bleasdale Decl.; and Dr. Arti Barnes, Medical Director and Chief Medical Officer of the Illinois Department of Public Health, *see* Def. J.B. Pritzker's Resp. TRO, Ex. B, Barnes Decl., ECF No. 14-1.

does not allow courts to "second-guess . . . policy judgment[s] by parsing the latest academic studies." *Vasquez v. Foxx*, 895 F.3d 515, 525 (7th Cir. 2018). And even if it did, Plaintiffs have not presented any expert witnesses or conducted any discovery (despite the opportunity to do so) that would allow the Court to evaluate the scientific merits of the articles on which they rely. *Cf. Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993) (noting that the introduction of scientific evidence "is premised on the assumption" that the evidence, through introduction by a qualified expert, will have "a reliable basis in the knowledge and experience of [the] discipline" from which it arises).

What is more, even on the most generous reading of their evidence, Plaintiffs have shown only the existence of some scientific debate surrounding the degree of immunity provided by vaccines and whether "natural immunity" from prior COVID-19 infection provides comparable (or, as Plaintiffs assert, superior) protection from the virus. *See* TRO Order at *7. But the existence of debate would mean, by definition, that Defendants' policies are not "arbitrary or irrational." *Campos*, 932 F.3d at 975; *see* TRO Order at *7 (explaining that "even if there were robust scientific debate about whether natural immunity is more effective than vaccine-created immunity . . . this still would not be enough for Plaintiffs to prevail"). Therefore, Plaintiffs' additional studies and scientific arguments do not alter the Court's conclusion that EO 2021-22 and the City Vaccination Policy survive rational basis review.

Because Plaintiffs have not identified a fundamental right at stake and because the challenged policies satisfy the rational basis test, the Court finds that Plaintiffs are unlikely to succeed on the merits of their substantive due process claims.

### B. Procedural Due Process[5]

Plaintiffs next contend that Defendants' policies violate procedural due process. A procedural due process claim requires a plaintiff to show that the government deprived them of a constitutionally protected interest with "constitutionally deficient procedural protections" surrounding the deprivation. *Tucker v. City of Chi.*, 907 F.3d 487, 491 (7th Cir. 2018). Plaintiffs, however, have not established that Defendants' enactment or implementation of their vaccine policies violate Plaintiffs' procedural due process rights.

#### 1. Procedural Due Process Claims Against the Governor

As to the Governor, Plaintiffs argue that EO 2021-22 is procedurally invalid because it was issued in violation of Governor Pritzker's statutory authority under the Illinois Emergency Management Agency Act ("EMAA"), 20 Ill. Comp. Stat. 3305/1 *et seq*. However, Plaintiffs do not identify what procedures they believe the Governor owed them. The closest they come is a suggestion that only the state legislature can enact such restrictions under Illinois law. *See* TRO Mot. at 4 (stating that "[t]he legislature has remained silent on the subject of vaccine mandates"). But, even if

---

[5] The parties have not addressed Plaintiffs' procedural due process, free exercise, or HCRCA claims in their supplemental briefs on the preliminary injunction petition. Thus, the conclusions reached in the TRO Opinion, which contains a more comprehensive treatment of those claims, remain unchanged.

Plaintiffs were correct as a matter of state law, "there is no federal constitutional right to state-mandated procedures." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 366 (7th Cir. 2019), *cert denied*, 140 S. Ct. 268 (2019). And, in any case, this argument is foreclosed by the Eleventh Amendment, which bars any "claim that [a] state official[ ] violated state law in carrying out [his] official responsibilities." *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 121 (1984).

In the alternative, Plaintiffs argue that EO 2021-22 unconstitutionally conditions their employment on being vaccinated. In support, they recite the maxim that the government cannot condition their public employment on exercising a constitutional right and assert that EO 2021-22 violates their procedural due process rights on this basis alone. But identifying an alleged constitutional violation is only one half of the test—Plaintiffs must also point to specific procedural shortcomings surrounding the violation, which they have not done here. *See Tucker*, 907 F.3d at 491.[6] Moreover, despite nearly two months having passed since EO 2021-22 took effect, Plaintiffs have not alleged on this record that any of them have been terminated, or even disciplined, pursuant to the Governor's order. For these reasons, the Court finds that Plaintiffs' procedural due process claims against the Governor are unlikely to succeed on the merits.

---

[6] Plaintiffs have not alleged sufficient constitutional shortcomings to warrant a *Mathews* analysis, but as the Court noted in its prior ruling, were one needed, "Plaintiffs' interest in not being terminated for refusing vaccination would likely be outweighed by the public's interest in preventing the spread of COVID-19 and the cost to the public's safety of requiring additional procedures." TRO Order at 23 n.10 (citing *Vill. of Orland Park v. Pritzker*, 475 F. Supp. 3d 866, 883 (N.D. Ill. 2020) (conducting a *Mathews* analysis and concluding that "the second and third factors in the *Mathews* test weigh heavily against" the plaintiff in a challenge to COVID-19 mitigation measures)).

### 2. Procedural Due Process Claims Against the City

Plaintiffs' procedural due process claims also fail as to the City. Plaintiffs first contend that Mayor Lightfoot exceeded her authority in promulgating the City Vaccination Policy, which, Plaintiffs claim, is legislative in nature and requires the approval of the Chicago City Council. Once more, Plaintiffs have not articulated what, if any, procedural protections they should be afforded or exactly how the promulgation of the City's policy violated their procedural due process rights. Moreover, as the Court's previous order explained, strict separation-of-powers is not applicable to local governments, and it is certainly not enforceable as a federal right. *See Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992).

Alternatively, Plaintiffs argue that the City Vaccination Policy impermissibly alters their employment contracts. But again, they do not identify how these changes contravened procedural due process. In the same vein, Plaintiffs also fail to address how the City Vaccination Policy could unconstitutionally "alter" their employment contracts when those contracts are governed by collective bargaining agreements, which "can (and typically do) satisfy" the requirements of procedural due process for terminated public employees. *Calderone v. City of Chi.*, 979 F.3d 1156, 1166 (7th Cir. 2020) (quoting *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 630 (7th Cir. 1995)). Thus, the Court finds that Plaintiffs' procedural due process claims against the City are unlikely to succeed on the merits.

**C. Free Exercise**

Next, Plaintiffs bring a challenge under the Free Exercise Clause of the First Amendment. They argue that Defendants' policies unconstitutionally burden their exercise of sincerely held religious beliefs by forcing them either to be vaccinated in violation of those beliefs or lose their jobs. Additionally, they claim that the City violated the Free Exercise Clause by denying, or refusing to grant, religious exemptions. Based on the current record, the Court finds that neither of these claims are likely to succeed on the merits.

Under the Free Exercise Clause, a government action that burdens a plaintiff's exercise of a sincerely held religious belief generally receives strict scrutiny. *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021). The Supreme Court created an exception to this rule in *Employment Division v. Smith*, which held that a neutral law of general applicability that only incidentally burdens religion receives rational basis review. *Fulton*, 141 S. Ct. at 1876 (citing 494 U.S. at 878–82 (1993)); *Ill Bible Colls. Ass'n v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017).

The Court need not apply the *Smith* test to Defendants' policies at this stage because Plaintiffs have not stated a claim under the Free Exercise Clause on the current record. On the facts before the Court, no Plaintiffs have alleged that they have applied for an exemption from EO 2021-22, let alone have been denied one. And none of the Plaintiffs who have applied for and been denied an exemption from the City Vaccination Policy have made a good faith attempt to comply with the Policy's exemption process, which requires the applicant to fill out a form providing a reason

14

for the request and an explanation of the principle of the applicant's religion that conflicts with vaccination. *See* City Religious Exemption Form. Instead, rather than providing individualized facts, they have submitted formulaic recitations of the HCRCA's definition of a "sincerely held religious belief." *See* Def. City's Resp. TRO, Ex. B5 (collecting the denied applications); *see also* City Religious Exemption Request Form. This is in stark contrast to *Dahl v. Board of Trustees of Western Michigan University*, 15 F.4th 728 (6th Cir. 2021), where the plaintiffs pleaded individualized facts showing that the university disregarded their sincerely held religious beliefs. *See id.* at 733–34; *Dahl v. Bd. of Trs. of W. Mich. Univ.*, __ F. Supp. 3d __, 2021 WL 3891620, at *1 (W.D. Mich. Aug. 31, 2021), *aff'd*, 15 F.4th 728. Here too, Plaintiffs were given an opportunity to develop the factual record on this point, but they have not done so. Based upon the current record, the Court finds that they are unlikely to succeed on the merits of their free exercise claims.

### D.  Illinois Healthcare Right of Conscience Act (HCRCA)

Plaintiffs' final claims arise under the Illinois Healthcare Right of Conscience Act (HCRCA), 745 Ill. Comp. Stat. 70/1 *et seq*. Generally, this statute protects the rights of Illinoisans to refuse to provide, receive, or participate in the administration of health care services "contrary to [their] conscience." *Id.* § 70/2. The section of HCRCA relevant here prohibits "discrimination against any person in any manner . . . because of such person's conscientious refusal to receive . . . any particular form of health care services contrary to his or her conscience." *Id.* § 70/5. Plaintiffs' HCRCA claims against the Governor and the City are addressed in turn.

### 1. HCRCA Claims Against the Governor

Plaintiffs' HCRCA claims against the Governor cannot succeed because, as explained more fully above and in the Court's previous order, the Eleventh Amendment prevents Plaintiffs from suing the Governor in his official capacity for violations of state law. *See Pennhurst*, 465 U.S. at 106.

### 2. HCRCA Claim Against the City

Although the Eleventh Amendment does not bar the HCRCA claims against the City, the Court concludes that Plaintiffs are unlikely to succeed on the merits of these claims, because the City Vaccination Policy's religious exemption neatly tracks the definition of a protected religious belief under HCRCA. *Compare* City Religious Exemption Form (granting exemptions for individuals with "a sincerely held set of moral convictions arising from belief in and relation to religious beliefs"), *with* 745 Ill. Comp. Stat. 70/3 (protecting persons with "a sincerely held set of moral convictions arising from belief in and relation to God, or . . . from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths"). Plaintiffs' facial challenge[7] cannot succeed in light of this substantial overlap. *See Ezell v. City of Chi.*, 651 F.3d 684, 698–99 (7th Cir. 2011) (a successful facial challenge requires a law to be unconstitutional "in all its applications" (emphasis omitted)). And although it is unclear at this preliminary stage whether the City complies with HCRCA in administering the religious exemption, Plaintiffs have not adduced any facts

---

[7] Again, Plaintiffs do not specify whether they believe the City Vaccination Policy violates HCRCA on its face or as applied to their individual applications, but language in their TRO Motion suggests the former. *See* TRO Mot. at 13 ("The threatened suspension and subsequent termination here is squarely a violation of the [HCRCA].").

indicating that it does not. Accordingly, the Court finds that Plaintiffs' HCRCA claim against the City is unlikely to succeed on the merits.

In summary, the Court reaches the same conclusion as it did in its prior ruling—Plaintiffs have not established a likelihood of success as to any of their claims. This alone is enough to deny injunctive relief, *see GEFT Outdoors,* 922 F.3d at 366 ("If the plaintiff fails to meet any of the[] threshold requirements, the court must deny the injunction." (quoting *Girl Scouts of Manitou Council*, 549 F.3d at 1086)), but the Court will briefly discuss the other preliminary injunction factors for the sake of completeness.

## II.   Irreparable Harm

In order to show that they would suffer irreparable harm without injunctive relief, Plaintiffs must "demonstrate that irreparable injury is likely." *Winter*, 555 U.S. at 21 (emphasis omitted). Plaintiffs contend that the Court must find irreparable harm as a matter of law because Defendants' policies violate their constitutional rights. For the reasons stated above, the Court finds no constitutional violation arising out of Defendants' policies, so this argument is unavailing. But, even assuming *arguendo* that requiring Plaintiffs to be vaccinated as a condition of employment does inflict some degree of constitutional injury, the record in this case contains no evidence that any Plaintiffs were fired or disciplined because they refused to get the vaccine. And as the Court noted in its prior ruling, termination of employment is typically redressable through money damages. *See Bedrossian v. Northwestern Mem'l Hosp.*, 409 F.3d 840, 845 (7th Cir. 2005); *Garland v. N.Y. City*

17

*Fire Dep't*, 21-cv-6586, 2021 WL 5771687, at *8 (E.D.N.Y. Dec. 6, 2021) (rejecting argument that termination for refusing to comply with vaccine policy comprised irreparable harm because, even if plaintiffs alleged constitutional injuries, they could be made whole through damages and reinstatement). Therefore, on these facts, the Court finds that Plaintiffs have not demonstrated that they would suffer irreparable harm in the absence of injunctive relief.

### III. Balance of the Equities

Finally, the Court finds that the balance of the equities and the public interest, which are considered together when the government is the party opposing injunctive relief, *see Nken v. Holder*, 556 U.S. 418, 435 (2009), do not favor a preliminary injunction. The Court must evaluate this factor by weighing the degree of harm the nonmoving party would suffer if the injunction is granted against the degree of harm to the moving party if the injunction is denied. *See Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021). The analysis also should consider the public interest, or "the consequences of granting or denying the injunction to non-parties." *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)).

Here, the Court finds, as have numerous other courts, that the public's interest in reducing the transmission of COVID-19 weighs heavily against granting an injunction.[8] *See, e.g., Does 1–6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021), *cert denied*

---

[8] To the extent that developments since the Court's ruling on the TRO have impacted the balance of the countervailing interests, they only push the needle farther in Defendants' favor. Since that ruling was issued, the seven-day average of daily new COVID-19 cases reported in Illinois has increased more than fourfold. *See COVID-19 Home: Daily Cases Change Over Time*, ILL. DEP'T PUB. HEALTH, (Dec. 20, 2021, 12:00 PM) https://dph.illinois.gov/covid19.html (showing a seven-day average of 10,179 new cases per


*sub nom. Does 1–3 v. Mills*, No. 21A90, 142 S. Ct. 17 (mem.) (Oct. 29, 2021); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295–96 (2d Cir. 2021); *Doe v. San Diego Unified Sch. Dist.*, __ F.4th __, 2021 WL 5757397, at *6 (9th Cir. Dec. 4, 2021); *Garland*, 2021 WL 5771687, at *9–10; *Rydie*, 2021 WL 5416545, at *5–6. Conversely, Plaintiffs' interest in not being vaccinated is relatively weak, given the absence of a fundamental constitutional right to refuse vaccination during a pandemic such as the one facing us today. *See Klaassen*, 7 F.4th at 593. Indeed, when confronted with a widely contagious pandemic, "plaintiffs are not asking to be allowed to make a self-contained choice to risk only their own health," given that their refusal to be vaccinated "could sicken and even kill many others who did not consent" to their decisions. *Cassell*, 990 F.3d at 545. As a result, the Court finds that Plaintiffs have not shown that the balance of the equities favors the relief they seek.

---

day as of December 20, 2021, compared to 2,088 new cases per day on October 29, 2021). Additionally, the Omicron variant has emerged, *see Science Brief: Omicron (B.1.1.529) Variant*, CDC, (Dec. 2, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/scientific-brief-omicron-variant.html, and is currently "rapidly spreading" across the country. Nate Rattner, *Omicron Now the Dominant US Covid Strain at 73% of Cases, CDC Data Shows*, CNBC (Dec. 20, 2021, 6:46 PM), https://www.cnbc.com/2021/12/20/omicron-now-the-dominant-us-covid-strain-at-73percent-of-cases.html. And, although little is known about whether Omicron presents a greater risk of transmission or reinfection than previous variants, its emergence prompted the CDC to "strengthen[] its recommendation" on booster doses of the vaccine. Maggie Fox, *All Adults Should Get a COVID-19 Booster Shot Because of the Omicron Variant, CDC Says*, CNN (Nov. 29, 2021, 5:35 PM) https://www.cnn.com/2021/11/29/health/cdc-booster-guidance-omicron/index.html. This uncertainty, combined with the upswing in cases, makes Defendants' position regarding the balance of the equities and public interest factor even stronger than it was at the TRO stage.

## **Conclusion**

Because Plaintiffs have not satisfied any of the elements necessary to obtain preliminary injunctive relief, their motion for a preliminary injunction is denied.

**IT IS SO ORDERED.**  ENTERED: **12/21/21**

_____

**John Z. Lee**
**United States District Judge**